FILED
2008 AUG 22 A 10: 25
U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GARY L. TATUM, )
)
Plaintiff, )
)
v. )
)
MARY CHRISTINA OBERG, )
FORD, OBERG, MANION and HOUCK, PC., )
C. MICHAEL BUDLONG, )
BUDLONG & BARRETT, LLC, )
DONALD J. HIEBEL, )
)
Defendants. ) Case: 3:08CV1251

## PLAINTIFF'S RICO CASE STATEMENT

Plaintiff Gary Tatum hereby submits his RICO Case Statement and respectfully represents as follows:

**Case Statement Item #1.** The alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c) and (d). The complaint lists specific activities that involve the individual RICO Defendants' managing, conspiring, and participating in the operation of an enterprise that was designed to conceal critical evidence in order to unfairly affect the outcome of an official proceeding, and to allow the participants to unfairly profit from this deception. Defendant Ford, Oberg, Manion & Houck, P.C. continued to receive payments from the Plaintiff, and continued efforts to conceal evidence, after Plaintiff was forced to move to the state of Texas, thus affecting interstate commerce (18 U.S.C. § 1962(a)). The defendants' repeated acts of concealment of evidence and extortion that continued after Plaintiff relocated to Texas constitute a pattern of racketeering activity that affects interstate commerce (18 U.S.C. § 1962(b)). Defendants Oberg and Budlong directed control of the activities of their respective law firms, as well as control of the unlawful enterprise, in the repeated acts of concealment of evidence in order to continue

to unfairly obtain payments from the Plaintiff after he relocated to Texas, thus affecting interstate commerce (18 U.S.C. § 1962(c)). The Defendants conspired to repeatedly conceal the same specific financial and other records in order to protect each other's profits and conceal their involvement in the unlawful acts (18 U.S.C. § 1962(d)).

**Case Statement Item #2.** Defendant Mary Christina (Tina) Oberg created requests for production that were specifically and intentionally designed to conceal income tax and other financial records of Kathleen J. Murphy, PhD, for the tax years 2002 and 2003 in order to unfairly affect the outcome of an official proceeding. Defendant Oberg continued to conceal the records on multiple occasions after the Plaintiff pointed out their absence, directed others at the defendant firm of Ford, Oberg, Manion & Houck, P.C. to continue the concealment, and conspired with Defendant Budlong to continue the concealment of the same records in subsequent legal actions. Defendant Oberg also conspired with Defendant Hiebel to fabricate a psychological evaluation that would be sufficiently biased against the Plaintiff, to avoid either an equal custody recommendation or a recommendation of Plaintiff as primary custodian, in order to recommend Dr. Murphy for primary custody of the minor children. This concealment and inducement of the alteration of records by Defendant Oberg constitutes an obstruction of justice in violation of 18 U.S.C. § 1512.

The defendant firm of Ford, Oberg, Manion & Houck, P.C. was aware of the activities of Defendant Oberg, but rather than correct the unlawful activities, the firm instead participated in the creation of the requests for production and continued the concealment of Dr. Murphy's financial information. This participation in the concealment of records by Defendant Ford, Oberg, Manion & Houck, P.C. constitutes an obstruction of justice in violation of 18 U.S.C. § 1512.

Defendant C. Michael Budlong conspired with Defendant Oberg to conceal Dr. Murphy's 2002 and 2003 financial information in order to unfairly affect the outcome of an official proceeding. Defendant Budlong continued the concealment of the records by declining to comply with a legitimate request for production created by the Plaintiff that requested the missing records. Defendant Budlong continued to attempt to deceive the court into believing her earning capacity was less than the Plaintiff's by directing his client (Dr. Murphy) to temporarily sell her real estate to her parents and not disclose the asset again on her 2005 financial affidavit. Defendant Budlong further attempted to continue the concealment of Dr. Murphy's 2002 and 2003 income information by objecting to it's introduction during testimony by Dr. Murphy, when there was no basis for such an objection. Defendant Budlong subsequently used the implied threat of incarceration of the Plaintiff, knowing the Plaintiff had no means to pay a child support obligation, by offering to defer the child support obligation if Plaintiff would agree to settle the outstanding appeal without requiring the production of the missing financial records. This concealment of records and the corrupt influence by Defendant Budlong constitutes an obstruction of justice in violation of 18 U.S.C. § 1512 and extortion under the Hobbs Act.

The defendant firm of Budlong & Barrett, LLC was aware of the activities of Defendant Budlong, but rather than correct the unlawful activities, others at the firm instead participated in the withholding of Dr. Murphy's financial information. This participation in the concealment of records by Defendant Budlong & Barrett, LLC constitutes an obstruction of justice in violation of 18 U.S.C. § 1512.

Defendant Donald J. Hiebel, PhD, conspired with Defendant Oberg to fabricate a psychological evaluation that would be sufficiently biased against the Plaintiff, to avoid either an equal custody recommendation or a recommendation of Plaintiff as primary

custodian, in order to recommend Dr. Murphy for primary custody of the minor children. Dr. Hiebel knowingly omitted critical information from his report in order to justify his biased recommendation. Dr. Hiebel continued the concealment of the pertinent information by declining to comply with a valid request for production for those records. This fabrication and continued concealment of records with the intent to impair their integrity or availability for use in an official proceeding by Defendant Hiebel constitutes an obstruction of justice in violation of 18 U.S.C. § 1512.

**Case Statement Item #3.** In addition to the above defendants, Kathleen J. Murphy, PhD, was aware of the planned conspiracy to conceal her financial information for 2002 and 2003. She purchased real estate in 2002 to qualify to run for public office and chose to not disclose that asset (along with several bonds) on her 2004 financial affidavit, with the confidence that she would not be asked to provide financial information for that time period that would reveal the existence of the real estate. A finding of fraud was issued against Dr. Murphy for that concealment in 2004. When the Plaintiff appealed the court's decision to allow her to keep the fraudulently concealed assets, she subsequently retaliated against the Plaintiff by taking the children out of Connecticut and refusing to allow the children to be with him for the summer of 2005 and thereafter, in open violation of the court-ordered custody agreement. This retaliation may be an obstruction of a court order in violation of 18 U.S.C. § 1509. Dr. Murphy temporarily sold her real estate to her parents in a sham transaction so that she could again keep from disclosing the asset on her 2005 financial affidavit, in a continuing attempt to conceal her true financial picture from the court. The settlement agreement subsequent to the 2005 hearing prevents the Plaintiff from any additional legal action against Dr. Murphy with respect to those assets.

The paralegals at each Defendant law firm were knowledgeable about the concealment of Dr. Murphy's financial records, although the specific acts attributable to each person are not known at this time.

Discovery will be needed to determine if any of Dr. Murphy's prior attorneys were also involved in the concealment of her finances.

**Case Statement Item #4.** The Plaintiff was the targeted victim in this case, although Plaintiff's children were also indirect victims by being unfairly denied meaningful contact with their father, by depring Plaintiff of rightful share of marital assets that would have allowed him to remain in Connecticut. Plaintiff was denied his rightful share of marital assets during the dissolution of the marriage, and the loss of those financial assets forced the Plaintiff to leave the state of Connecticut, unnecessarily incurring moving expenses, and damaging the Plaintiff's credit rating, which in turn adversely affected employment and housing options for the Plaintiff.

**Case Statement Item #5a and b.**

In general terms, defendants Oberg and Budlong conspired and agreed not to produce the income tax returns of Kathleen Murphy for the years 2002 and 2003, contrary to the usual provisions of the Connecticut Practice Book regarding financial disclosure. They also agreed and conspired to not request or produce any other financial records that would show that Dr. Murphy's income during those years was greater than that of Plaintiff Tatum. Defendants Oberg and Hiebel conspired to produce a psychological evaluation that would recommend Kathleen Murphy for primary custody of the minor children, excluding any evidence that would be contrary to that recommendation. The specific details are as follows:

At some point prior to the February 6, 2003 date of the production request drafted by Defendant Oberg, she learned that the amount of Dr. Murphy's 2002 income was at least $138,000. Defendant Oberg knew that this amount was greater than the Plaintiff's maximum income in 2001 of approximately $60,000, and she believed that the local courts would prefer to give custody to the parent with the lower income, in order to maximize federal CSPIA payments to the state. However, Defendant Oberg did not want her client, the Plaintiff, to prevail on the future custody decision, despite the lack of any accusations of wrongdoing against the Plaintiff. She therefore intentionally omitted Dr. Murphy's 2002 income tax returns from the February 6, 2003 production request, contrary to the automatic 3-year provisions of the Connecticut Practice Book, in order to assist Dr. Murphy in obtaining primary custody of the children. This intentional concealment of a pertinent document constitutes obstruction of justice in violation of 18 U.S.C. § 1512.

Defendant Oberg knew that a custody decision would also be based on the results of a psychological evaluation, and did not want to risk that such an evaluation might recommend the Plaintiff for primary custody. On May 19, 2003, defendant Oberg therefore selected defendant Dr. Hiebel as the court-appointed psychologist for the purpose of conducting a psychological evaluation of parents Tatum and Murphy. Defendant Oberg knew that Dr. Hiebel would be willing to fabricate or conceal information as necessary in order to recommend Dr. Murphy as primary custodian of the children, though discovery will be necessary to determine specifically how she obtained that assurance.

During the latter part of 2003, defendant Hiebel conducted a few interviews with parents Tatum and Murphy, with and without the children, administered only one psychological test (the MMPI), and made approximately eight phone calls, in an attempt to give the

illusion of a thorough examination. He completed the report on or about November 3, 2003. However, Dr. Hiebel omitted several crucial facts from his report. Among the most pertinent, he omitted Dr. Murphy's statement that she did not believe in joint custody. He also omitted Dr. Murphy's admission during a joint meeting that her PhD. dissertation concerned the construction of the MMPI test, and that she used the test in her own evaluations as a psychologist in private practice. Dr. Hiebel therefore knew that Dr. Murphy already had the answers to that test. Plaintiff objected to Dr. Hiebel during the joint meeting that, since he had helped her with her dissertation, she knew that test well enough that "she'd be able to look like Mother Teresa" on that test's results. Dr. Hiebel ignored Plaintiff's concerns, did not mention them in his report, and administered only that one test to both parents. His report only states that Dr. Murphy's test results indicate she is a strong woman. Dr. Hiebel's report also omits any diagnosis and warnings from Texas psychologist Dr. Barbara D. Clark about the potential for abuse of the children in the Murphy household, based on her previous work with both parents. Dr. Hiebel could not have justified his pre-determined conclusion to recommend Dr. Murphy for primary custody had he included the above facts, therefore their omission constitutes obstruction of justice in violation of 18 U.S.C. § 1512.

Defendant Oberg learned that Dr. Murphy's 2003 income was also greater than the Plaintiff's 2001 maximum income. In order to continue to assist Dr. Murphy, the subpoena duces tecum dated January 21, 2004 that was prepared by Defendant Oberg specifically omitted both Dr. Murphy's 2002 and 2003 income tax returns, again in violation of 18 U.S.C. § 1512.

Plaintiff pointed out in an email dated April 4, 2004 that Dr. Murphy had still not provided sufficient financial information to determine an adequate property division. Defendant Oberg responded via email dated April 20, 2004 that plaintiff should be content with the

financial information already received, intentionally attempting to divert Plaintiff's attention away from obtaining the missing financial documents.

When Plaintiff discovered hidden assets after the April 22, 2004 divorce date, and after he had moved to Texas, Defendant Oberg was obligated to file a motion to reopen the property judgment. However, the subpoena duces tecum that was dated July 13, 2004 again did not request Dr. Murphy's 2002 income tax return, even though she knew at that time from information provided by the Plaintiff that the real estate was purchased in 2002. This continued omission of a pertinent document is again in violation of 18 U.S.C. § 1512. Plaintiff brought this omission to the attention of Oberg's paralegal, Charlene LeBlanc, and Defendant Oberg responded via email dated August 4, 2004 that she intended to only request Dr. Murphy's 2003 income tax return. Plaintiff replied via email that Dr. Murphy's 2002 return should be the one to request, but received no indication of any revision to the request.

Since there was no introduction of information from Dr. Murphy's 2002 or 2003 income tax returns at the October 22, 2004 hearing, and since paralegal LeBlanc was now undeniably knowledgeable about the missing information, the continued absence of the missing tax records indicates involvement of the defendant firm Ford, Oberg, Manion & Houck, P.C. in violation of 18 U.S.C. § 1512.

In 2005, Defendant Budlong and defendant firm Budlong & Barrett, LLC began to intentionally conceal the same information regarding Dr. Murphy's 2002 and 2003 finances by failing to comply with Plaintiff's request for production dated September 8, 2005. Defendant Budlong instructed Dr. Murphy to temporarily sell her real estate to her parents prior to the September 23, 2005 hearing so she could omit it from her updated financial affidavit. He reinforced his intention to continue to conceal the 2002 and 2003 income information by objecting to Plaintiff's questioning of Dr. Murphy about her

income for those years at the September 23, 2005 hearing. Since he had just asked the Plaintiff about his finances for the same time period, he had no reasonable expectation of being able to withhold that information. The continued attempts at concealment of the same specific pertinent information by defendants Oberg and Budlong is both evidence of a conspiracy and also constitutes a clear pattern of racketeering activity involving all defendants.

In the subsequent action described in complaint paragraphs 47-50 against Defendant Hiebel, Plaintiff submitted a request for production dated May 18, 2007 for the notes and other documents related to Dr. Hiebel's evaluation. The request for production was within the exceptions to the usual doctor-patient confidentiality restrictions. Defendant Hiebel did not provide the information requested, in violation of 18 U.S.C. § 1512, claiming absolute immunity that did not apply in his situation.

**Case Statement Item #5 c.** The predicate acts of the enterprise do not involve offenses of mail or wire fraud.

**Case Statement Item #5 d and e.** There has been no other litigation against the defendants except for the separate small claims civil action against Defendant Hiebel. Since that case was dismissed on grounds of absolute immunity, there has been no judgment for his acts of concealment of evidence in that case. The 2004 hearing on the motion to reopen the property settlement resulted in a finding of fraud against Dr. Murphy for her role in concealing the real estate from her April, 2004 financial affidavit.

**Case Statement Item #5 f and g.** The repeated acts of omission of pertinent financial information constitute the requisite patten of racketeering activity. The common plan was for the attorneys to decide in advance who would prevail in a custody determination, and then craft all production requests and expert testimony to solicit only the evidence that would support that predetermined conclusion.

**Case Statement Item #6.** Pending discovery, the only participants in the unlawful enterprise who have been identified thus far are the defendants named in the complaint:

Mary Christina Oberg

Ford, Oberg, Manion & Houck, P.C.

C. Michael Budlong

Budlong & Barrett, LLC

Donald J. Hiebel, PhD

Defendants Oberg and Budlong are clearly active participants in the unlawful enterprise, although discovery will be needed to determine the full extent of the enterprise and whether the defendant law firms are also perpetrators or passive instruments. The defendant law firms are otherwise legitimate business enterprises. The repeated predicate acts by the RICO defendants allowed the law firms to increase profits and avoid expenditures that would not have occurred thru the lawful practice of law.

**Case Statement Item #7.** Plaintiff contends that the pattern of repeated acts of concealment of the same specific information indicates the activity is integral to the operation of the enterprise and is thus one entity.

**Case Statement Item #8.** The racketeering activity does not differ from the usual and daily activities of the unlawful enterprise. The enterprise presumably carries out legitimate objectives in addition to the allegedly criminal actions set forth in the Complaint. The usual and daily activities of the enterprise involve the day-to-day lawful practice of law. Plaintiff's complaint alleges misuse of legitimate business enterprise operations through a series of unlawful acts for the purpose of receiving additional money from the repeated criminal activity.

**Case Statement Item #9.** The enterprise benefits from the pattern of racketeering activity by receiving profits and avoiding costs that would not be available to the

enterprise from the lawful practice of law and psychological examinations. Discovery will be necessary to determine if there are other kickback arrangements in place to share the additional profits.

**Case Statement Item #10.** The effect of the enterprise's activities on interstate commerce with respect to the Plaintiff is that the loss of an equitable share of marital assets forced the Plaintiff to leave his children and move to Texas to live with relatives, incurring moving expenses that would not have otherwise been necessary. After relocating to Texas, the defendants continued in the unlawful concealment of pertinent evidence, causing Plaintiff to incur travel, legal, and other expenses in efforts to lawfully obtain the concealed evidence, which affected interstate commerce. Defendants unfairly profited from the additional legal fees relative to the continued concealment of evidence after Plaintiff became an out-of-state resident, thus affecting interstate commerce. The effect on interstate commerce with respect to any other victims is unknown at this time.

**Case Statement Item #11.** The defendants listed above in Item #6 all received income from the racketeering activity, by fraudulently billing for services under the guise that they were part of an impartial process when in fact their services were integral to a process that was very biased almost from the outset against the Plaintiff. It is unknown at this time how the income was specifically used or invested.

**Case Statement Item #12.** Discovery will be needed to reveal the precise level of control of the enterprise and how that control was created and maintained.

**Case Statement Item #13.** Defendants Oberg, Budlong, and Hiebel are RICO persons as that term is defined by 18 USC 1962 (collectively, the RICO defendants) and are employed by or associated with the enterprise. The RICO defendants Oberg and Budlong hold senior management positions within their respective law firms, and in such capacity, conducted or participated in the conduct of the enterprise's affairs. RICO

defendant Hiebel was associated with and participated in the conduct of the enterprise. The RICO defendants are the liable "persons" and are distinguished from and separate from the enterprise, therefore, the same entity is not both the liable "person" and the "enterprise" under section 1962(c).

**Case Statement Item #14.** As set forth in case statement #5 above, the RICO defendants agreed and conspired to repeatedly conceal the same specific pertinent information regarding Dr. Murphy's 2002 and 2003 finances, and/or agreed to produce a psychological evaluation that would conceal pertinent information in order to insure that Dr. Murphy would prevail in any custody decision. The continued and repeated attempts at concealment of the same specific evidence by defendants Oberg and Budlong indicates a conspiracy in violation of 18 U.S.C. § 1962(d).

**Case Statement Item #15.** The injury to Plaintiff's property includes interference with property rights relative to the dissolution of marriage, unnecessary moving costs, unnecessary legal expenses, additional tax liability for withdrawals of IRA funds needed for living expenses, unnecessary and extensive damage to Plaintiff's credit rating, affecting his employment prospects and housing options.

**Case Statement Item #16.** The injury to the Plaintiff was directly related to the RICO defendants' racketeering activities involving the intentional concealment of evidence regarding pertinent financial information, which resulted in a much lower property settlement to the Plaintiff, as well as increased expenses for Plaintiff's efforts required to recover the rightful portion of the concealed assets and the concealed financial information.

**Case Statement Item #17.** Pending more definitive results from discovery, Plaintiff currently alleges that the RICO defendants are liable for actual damages as follows

(double, treble and/or punitive damages not included, potential civil rights award not included):

<u>Actual provable damages:</u>

| | |
|---|---:|
| Legal fees paid to Ford, Oberg, Manion, & Houck, P.C. | $17,402.50 |
| Cost of psychological evaluation paid to Hiebel | $ 3,000.00 |
| Cost of 2004 move to Texas | $ 3,658.64 |
| Connecticut storage costs 2004 thru 2007 | $ 3,603.22 |
| Identified property not awarded to Plaintiff upon Dr. Murphy's fraud conviction | $ 92,000.00 |
| Legal fees paid to Horton, Shields and Knox | $13,367.51 |
| Travel expenses to settlement hearing | 598.70 |

Costs of small claims action:

| | | |
|---|---:|---:|
| Filing fee | $ 25.00 | |
| Travel expenses to attend hearing | 713.09 | |
| Lost wages to attend hearing | 644.00 | $ 1,382.09 |

<u>Actual damages, not yet specifically identified or completely incurred:</u>

| | |
|---|---:|
| Additional property concealed by Dr. Murphy not yet identified (estimate based on concealed 2002 and 2003 income, cash withdrawals, value of new home purchased by Dr. Murphy) | $266,000.00 |
| Anticipated future legal & travel costs to restore Plaintiff's contact with children | $200,000.00 |
| Increased costs to Plaintiff from loss of previously excellent credit rating (estimate) | $200,000.00 |

Interest (to be determined)

Loss of parental consortium with children (amount to be determined)

| | |
|---|---:|
| Total | $801,012.66 |

13

**Case Statement Item #18.** The other federal causes of action in the complaint are as follows:

Violation of 42 U.S.C. § 1983 (against defendant Hiebel),

Conspiracy to violate civil rights relative to Plaintiff's Fourteenth Amendment right to due process and Plaintiff's Fifth Amendment right to liberty (against all defendants),

Plaintiff further claims that the Child Support Production Incentives Act of 1998 (42 U.S.C. § 658a, "Incentive Payments to States") is unconstitutional.

**Case Statement Item #19.**

The complaint lists the following state claims:

Fraud (against Oberg),

Fraud (against Ford, Oberg, Manion, & Houck, PC),

Breach of Contract (against Oberg),

Breach of Contract (against Ford, Oberg, Manion, & Houck, PC),

Malpractice/Negligence (against Oberg),

Malpractice/Negligence (against Ford, Oberg, Manion, & Houck, PC),

Violation of Connecticut Unfair Trade Practices Act, CGS § 42-110b (against Ford, Oberg, Manion, & Houck, PC), .

Conspiracy to Commit Fraud (against all defendants),

Wrongful Interference with Parental Rights (against all defendants),

Violation of Connecticut Equal Rights Amendment, Article 1, section 20

**Case Statement Item #20.** The unlawful enterprise operated by the defendants did not involve merely the misallocation of financial resources owed to the Plaintiff, but it also directly affected the minor children in an adverse manner. Allowing this type of enterprise to continue therefore puts children everywhere at similar risk.

To the extent that the Court requires additional information above and beyond what is contained herein, Plaintiff will promptly amend this case statement to provide any such information requested.

Respectfully submitted,

Dated: August 21, 2008

Plaintiff,
Pro Se

_____
Gary L. Tatum
P.O. Box 3000-70
Georgetown, TX 78626
(512) 879-6522
garytatum@earthlink.net