UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARY L. TATUM, Individually, | : | MOTION TO DISMISS |
| | : | |
| Plaintiff, | | |
| | | |
| v. | : | CASE NUMBER: 3:08CV1251 (JVH) |
| | | |
| MARY CHRISTINA OBERG, In her individual and professional capacity, and FORD, OBERG, MANION and HOUCK, PC. | : | |
| Defendants | | MARCH 2, 2009 |

## DEFENDANTS MARY CHRISTINA OBERG AND FORD, OBERG, MANION AND HOUCK, P.C.'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. Proc. Rules 12 (b)(1) and 12(b)(6), and D. Conn. L. Civ. Rule 7, the Defendants, Mary Christina Oberg and the law firm of Ford, Oberg, Manion and Houck, P.C. (the "Defendants"), hereby move to dismiss Plaintiff's Amended Complaint on the grounds that the court lacks subject matter jurisdiction over the Plaintiff's state law claims. Alternatively, the Defendants hereby move to dismiss the First, Second, and Fourth Counts of the Amended Complaint as Plaintiff has failed to state a claim upon which relief can be granted for these claims. Ford, Oberg, Manion & Houck, P.C. and Attorney Mary Christina Oberg rely on the accompanying Memorandum of Law as support for this Motion.

WHEREFORE, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint in its entirety.  In the alternative, Defendants respectfully request that the Court dismiss Counts One, Two, and Four of the Plaintiff's Amended Complaint and grant such other relief as the Court deems just.

THE DEFENDANTS,
MARY CHRISTINA OBERG AND
FORD, OBERG, MANION AND HOUCK, P.C.

BY_____/s/: Kristine R. Jones_____
    Robert Cassot  (CT24094)
    Kristine R. Jones (CT26976)
    Edward N. Storck III (CT27312)
MORRISON MAHONEY, LLP
    One Constitution Plaza, 10th Floor
    Hartford, CT 06106
    Phone:  (860) 616-4441
    Fax:  (860) 244-3800
    Her and Its Attorneys
    Email:    rcassot@morrisonmahoney.com
                kjones@morrisonmahoney.com
                estorck@morrisonmahoney.com

## CERTIFICATE OF SERVICE

I hereby certify that on, March 2, 2009 a copy of the foregoing Motion to Dismiss was filed and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Joseph N. DeFilippo, Esq.
Tracey Lane Russo, Esq.
DeFilippo & Russo LLC
4 Research Drive, Suite 402
Shelton, CT  06484
**Counsel for Plaintiff, Gary Tatum**

BY_____/s/: Kristine R. Jones_____
Robert Cassot  (CT24094)
Kristine R. Jones (CT26976)
Edward N. Storck III (CT27312)
MORRISON MAHONEY, LLP

One Constitution Plaza, 10th Floor
Hartford, CT 06106
Phone:  (860) 616-4441
Fax:  (860) 244-3800
Her and Its Attorneys
Email: rcassot@morrisonmahoney.com
         kjones@morrisonmahoney.com
         estorck@morrisonmahoney.com

## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARY L. TATUM, Individually,<br>Plaintiff, | : | MEMORANDUM OF LAW IN SUPPORT<br>OF MOTION TO DISMISS |
| | : | |
| | : | |
| v. | : | |
| | : | CASE NO.: 3:08CV1251 (JCH) |
| | : | |
| | : | |
| MARY CHRISTINA OBERG, In her | : | MARCH 2, 2009 |
| individual and professional capacity, and | : | |
| FORD, OBERG, MANION and HOUCK, | : | |
| PC. | : | |
| Defendants | : | |
| | : | |

**DEFENDANTS, MARY CHRISTINA OBERG AND FORD, OBERG, MANION AND HOUCK, P.C.'S, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

## I.   INTRODUCTION

Pursuant to Fed. R. Civ. Proc. Rules 12 (b)(1) and 12(b)(6), and D. Conn. L. Civ. Rule 7, the Defendants, Mary Christina Oberg and the law firm of Ford, Oberg, Manion and Houck, P.C. (the "Defendants"), hereby move to dismiss Plaintiff's Amended Complaint on the grounds that the court lacks subject matter jurisdiction over the Plaintiff's state law claims. Alternatively, the Defendants move to dismiss the First, Second, and Fourth Counts of the Amended Complaint as Plaintiff has failed to state a claim upon which relief can be granted for these claims. For the reasons set forth below, the Plaintiff's Amended Complaint should be dismissed.

## II.   BACKGROUND

The Plaintiff, a client clearly disappointed by the result of a domestic relations matter, has sued his former attorneys, Mary Christina Oberg and the law firm of Ford, Oberg, Manion & Houck, P.C., alleging fraud, breach of contract, professional negligence, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA").   Although Plaintiff sets out four separate claims for relief, the gravamen of his action against the Defendants is that they committed legal malpractice in the course of representing the Plaintiff in the dissolution of his marriage and property division.

On or about February 12, 2002, Plaintiff retained the Defendants to represent him in the dissolution of his marriage and property division.  (See Am. Compl. ¶10).  Plaintiff claims that he paid a retainer of four thousand five hundred dollars ($4,500) in reliance upon the Defendant's "implied and express representations that it would represent Plaintiff in accord with all applicable standards of professional care." (See Am. Compl. ¶11).

Plaintiff further claims that Attorney Oberg made several false representations to Plaintiff, including: (a) that Attorney Oberg had requested and received all relevant financial information from Plaintiff's former wife, Kathleen J. Murphy, PhD; (b) that Attorney Oberg had no ability to compel the production of information Plaintiff believed was missing, despite his concerns that his former wife would not disclose all relevant financial information; (c) that, Plaintiff could recover a fair share of any undisclosed discovered at a later date by filing a motion to reopen the judgment based on fraud; and (d) that Plaintiff would recover any undisclosed assets if the settlement agreement contained a clause providing that Tatum would

2

receive "all other property" not specifically set forth in the financial affidavits. (See Am. Compl. ¶12). Further, Plaintiff claims Attorney Oberg knowingly made false representations in order to induce Plaintiff to enter into a proposed settlement agreement with his former wife. (See Am. Compl. ¶13). Plaintiff also alleges that he relied on the representations of Attorney Oberg and sustained damages as a result of that reliance. (See Am. Compl. ¶¶14, 16). In particular, Plaintiff alleges the settlement agreement: (a) did not take into account nearly one hundred thousand dollars ($100,000) in assets allegedly concealed by Plaintiff's ex-wife; (b) failed to protect Plaintiff's legal right to a division of the concealed assets; and (c) adversely affected the amount of child support Plaintiff was required to pay. (See Am. Compl. ¶¶14, 15).

Plaintiff's Amended Complaint sets forth claims of fraud, breach of contract, malpractice, and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") predicated on the above allegations. Defendants now seek to dismiss Plaintiff's Complaint in its entirety because Plaintiff fails to set forth facts to support his claim that he sustained damages in excess of $75,000 as a result of Defendants' alleged wrongdoing. In the alternative, Defendants seek to dismiss Plaintiff's claims of fraud, breach of contract and CUTPA violation, on the grounds that Plaintiff's Amended Complaint fails to state a claim on these grounds.

## III.    LEGAL STANDARD

The Defendants move to dismiss this matter pursuant to 12(b)(1) of the Federal Rules of Civil Procedure, which provides for the dismissal of a case for lack of subject matter jurisdiction where the district court lacks statutory or constitutional power to adjudicate the claim. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The party attempting to show that subject

3

matter jurisdiction exists must do so by a preponderance of the evidence. <u>Lunney v. United States</u>, 319 F.3d 550, 554 (2d Cir. 2003) (citing <u>Makarova</u>, 201 F.3d at 113 (2d Cir. 2000); <u>Malik v. Meissner</u>, 82 F.3d 560, 562 (2d Cir. 1996)). Moreover, the existence of subject matter jurisdiction requires an affirmative showing by the party claiming it. <u>Shenandoah v. Halbritter</u>, 366 F.3d 89, 91 (2004); <u>Cargill Int'l. S.A. v. M/T Pavel, Dybenko</u>, 990 F.2d 1012, 1019 (2d Cir. 1993). A court may not draw any favorable inference related to Plaintiff's offerings to the court that subject matter jurisdiction exists. <u>Shenandoah</u>, 366 F.3d at 91. Further, when reviewing the jurisdictional issue under Rule 12(b)(1), a court may reference evidence outside the pleadings in support or in opposition to the jurisdictional issue. <u>Makarova</u>, <u>supra</u> 201 F.3d at 113; <u>see</u> <u>also</u>, <u>Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi</u>, 215 F.3d 247, 253 (2d Cir. 2000).

Alternatively, the Defendants have moved to dismiss certain counts of Plaintiff's Amended Complaint under Fed. R. Civ. Proc. Rule 12(b)(6), which requires the Court to "limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference . . . [and review all allegations] in the light most favorable to the nonmoving party." <u>Doe v. City of Hartford</u>, 2004 U.S. Dist. LEXIS 8545 *4-5 (D. Conn. 2004) (attached hereto as Exhibit A). However, "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. Rule 8 of the Federal Rules of Civil Procedure provides that a complaint 'shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2). <u>Id.</u> at *5. Thus, the present motion should be granted if the Plaintiff's allegations fail to establish a legally cognizable claim upon which relief may be granted. <u>Hishon v. King & Spalding</u>, 467 U.S. 69,

4

73 (1984); Frasier v. General Electric Co., 930 F.2d 1004, 1007 (2d Cir. 1991). A claim should be dismissed "where the Plaintiff cannot recover on the facts he has alleged." (citation omitted.) Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). Simply put, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." Constr. Laborers' Local Union No. 230 v. City of Hartford, 153 F. Supp. 2d 156, 159-160 (2001). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555;127 S. Ct. 1955, 1964-1965 (2007). A party offering a pleading cannot rest on pure speculation as to their conduct in relationship to a complaint. Twombly, 550 U.S. at 562-563. Such a defective complaint should be dismissed for failure to comply with Rules 8 and 12(b)(6).

## IV.    ARGUMENT

### A.    Plaintiff's Amended Complaint Should Be Dismissed Because The Amount In Controversy Does Not Exceed $75,000.

Pursuant to Fed. R. Civ. Proc. Rule 12(b)(1), Defendants move to dismiss Plaintiff's entire Amended Complaint for lack of jurisdiction. Here, the court lacks subject matter jurisdiction over Plaintiff's state law claims because Plaintiff has not shown that the amount in controversy exceeds $75,000. Title 28 United States Code, Section 1332 states in relevant part,

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs . . . .

5

For purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint. See Hall v. Earthlink Network, Inc., 396 F.3d 500, 506 (2d. Cir. 2005). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." Scherer v. the Equitable Life Assurance Society of the United States, 347 F.3d 394, 397 (2d. Cir. 2003); see also Fedor v. Amica Mut. Ins. Co., 2003 U.S. Dist. LEXIS 147, *2-3 (D. Conn. January 8, 2003) (attached hereto as Exhibit A). While "there is a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," the presumption can be overcome by a showing, "to a legal certainty," that the amount recoverable does not meet the jurisdictional threshold. See Katz v. Mogus, 538 F. Supp. 2d 538, 541 (E. D. N. Y. 2007) (citing Scherer, 347 F.3d at 397). Once jurisdictional facts are challenged, "the party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of the evidence." United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square, 30 F.3d 298, 301 (2d Cir. 1994); citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936). Furthermore, "when the pleadings are inconclusive as to the amount in controversy, the Court may look outside the pleadings to other evidence in the record." Fedor v. Amica Mut. Ins. Co., 2003 U.S. Dist. LEXIS 147, *3.

In the present matter, the amount in controversy is less than $75,000. First, Plaintiff's Amended Complaint fails to offer any facts from which this Court could conclude that the amount in controversy exceeds $75,000. While Plaintiff's Amended Complaint references one

6

hundred thousand dollars ($100,000) in assets concealed by his former wife, Plaintiff fails to show how he is entitled to any portion of those assets. Furthermore, Plaintiff fails to claim what portion of this amount he is entitled to. Though Connecticut's courts have the discretion to distribute marital property unevenly, Connecticut General Statute § 46b-81 provides guidelines for the distribution of marital property.[1]   See Farrell-Williams v. Williams, 99 Conn. App. 453 (2007); Werblood v. Birnbach, 41 Conn. App. 728, 735-36 (1996). Here, Plaintiff has plead no facts which would enable this Court to determine how those assets may have been divided. Further, the Plaintiff offers no allegation that enables this Court to determine if the distribution of the property in question would have been uneven. Assuming that Plaintiff would be entitled to *half* of the concealed assets (and there is no reason to assume otherwise), Plaintiff's damages could amount to no more than fifty thousand dollars ($50,000) which would have been his "share" of the assets had they been known at the time.

Second, this Court is entitled to review other evidence in the record where the pleadings are inconclusive with respect to the amount in controversy. As set forth in Paragraph 42 of the Plaintiff's Initial Complaint, Plaintiff entered into a settlement agreement on or about October 17, 2005, which effectively withdrew the appeal of his motion to reopen the prior judgment.

---

[1] C.G.S. § 46b-81 provides, in relevant part, "(a) At the time of entering a decree…dissolving marriage…pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all of any part of the estate of he other…(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the …dissolution of the marriage…the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

(See Pl.'s Compl., dated July 23, 2008, at ¶ 42).  Per the terms of that settlement agreement reached with his ex-wife during the appeal in the underlying matter, Plaintiff received $12,500 and was provided a one-year deferment in child support payments.  Id.  Plaintiff's acceptance of $12,500 in settlement of the underlying matter effectively reduces the amount of damages he can claim in the present matter.  Therefore, it is unlikely that Plaintiff can show to a 'reasonable probability' that his remaining damages in this case are in excess of the statutory jurisdictional amount.

Moreover, it is undisputed that Plaintiff has received an economic benefit from the deferment of child support payments.  On or about April 22, 2004, Plaintiff and his wife entered into a separation agreement with the following provision regarding child custody:

> The parties acknowledge that the Defendant has no earned income at this time.  From the date of this agreement until January 1, 2005 there shall be no order of child support.  Thereafter the Wife may seek an order of support based on the earning capacity of the Husband at that time…

(See Exhibit B at pp. 2-3, ¶ 6).  On March 17, 2005, counsel for Plaintiff's ex-wife sought an order of child support.  (See Exhibit C).  On June 29, 2005, counsel for Plaintiff's ex-wife again sought an order of child support.  (See Exhibit D).  On or about October 17, 2005, Plaintiff and his ex-wife entered into the settlement of his appeal which included a one year deferment of child support.  (See Pl.'s Compl., dated July 23, 2008, at ¶ 42).  At this time, it appears the Plaintiff still is not employed.  Thus, it is unlikely the Plaintiff has been required to pay *any* child support at all.  This extended deferment in child support further reduces any amount of damages

8

Plaintiff can claim in the present matter.[2]   As such, this court lacks subject matter jurisdiction over the Plaintiff's state law claims based upon Plaintiff's failure to show, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.

**B.      Plaintiff Fails To State A Claim For Fraud.**

Pursuant to Fed. R. Civ. Proc. Rule 12(b)(6), the Defendants also move to dismiss certain counts for which the Plaintiff has failed to allege facts sufficient to state a cause of action. Plaintiff's Amended Complaint alleges that Attorney Oberg made several false representations including: (a) that Attorney Oberg had requested and received all relevant financial information from Kathleen J. Murphy, PhD; (b) that Attorney Oberg had no ability to compel the production of information Tatum believed was missing, despite Plaintiff's concerns regarding the failure of Dr. Murphy to disclose all relevant financial information; (c) that, should undisclosed assets be discovered at a later date, Plaintiff could recover a fair share of those assets by way of a motion to reopen the judgment based on fraud; and (d) that a clause in the settlement agreement providing that Plaintiff would received "all other property" not specifically set forth in the financial affidavits would allow him to recover those assets entirely.   (See Am. Compl. ¶12). Furthermore, Count One of Plaintiff's Amended Complaint claims Attorney Oberg knowingly engaged in the above-described course of fraudulent conduct.   (See   Am. Compl., Count One ¶18).   Despite these allegations, a close reading of the Plaintiff's Amended Complaint reveal Plaintiff has failed to state a claim for fraud.

---

[2] Moreover, to the extent Plaintiff claims that his decision to enter into the April 22, 2004 settlement agreement adversely affected the amount of child support he would be required to pay, such a claim is without merit.   (See Am. Compl. ¶ 15(3)).

9

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

The four essential elements of fraud are (1) that a false representation of fact was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment. Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001); Weinstein v. Weinstein, 275 Conn. 671, 685 (2005).  Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  However, Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Even though malice, intent, knowledge, and other conditions of a person's mind may be generally referenced in the complaint itself, "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)  (internal quotation marks and citation omitted).  "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shield v. Citytrust Bancorp Inc., 25 F.3d 1124, 1128 (2d Cir. 1994); Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006).

Here, Plaintiff has wholly failed to allege any specific facts that give rise to a strong inference of fraudulent intent.  Plaintiff does not assert any factual basis for his allegations that either Attorney Oberg or Ford, Oberg, Manion & Houck knowingly made false representations.

10

The allegations asserted by the Plaintiff in support of his claim of fraud are merely conclusory and speculative.   For instance, Plaintiff presents no facts to support his theory that the Defendants intentionally acted falsely or deceptively in their requests for information regarding Dr. Murphy's financial assets.   (See Am. Compl., ¶¶12(a), 12(b)).   Under the Plaintiff's theory, every failure to serve discovery would be a fraud on a client.   The mere failure to serve certain discovery, without more, simply cannot meet the specificity requirement of Rule 9.

In addition, Plaintiff alleges Attorney Oberg assured that he would be able to recover "a fair share" of any undisclosed assets.   (See Am. Compl., ¶¶12(c), 12(d)).   Plaintiff further claims that Attorney Oberg made these assurances knowing them to be false. (See Am. Compl., ¶ 13). Yet, Plaintiff wholly fails to show that Attorney Oberg stated anything other than an accurate statement, or her truthful belief, regarding Plaintiff's options to recover concealed assets at a later date or the likely outcome of any such attempt.   Indeed, in this case, Attorney Oberg moved to open the settlement when the ex-wife's hidden assets were discovered.   The court found the ex-wife had committed fraud, but refused to open the settlement.   Further, although Attorney Oberg filed a Motion to Reargue, that motion was denied by the court.   This ultimately led to an appeal of the underlying matter.

Attorney Oberg cannot be held liable for fraud if she has made a statement she believes to be true but is later determined to be incorrect.   Plaintiff presents no facts to establish *either* the motive and opportunity to commit fraud, *or* strong circumstantial evidence of conscious misbehavior.   Plaintiff merely cites to representations by Attorney Oberg which he *suspects* were false, without presenting any facts that would tend to show Attorney Oberg had the motive to

11

make such false representations.  As such, Plaintiff's allegations in this regard are speculative and unfounded.  Accordingly, Count One of Plaintiff's Amended Complaint must fail as a matter of law.

### C.    Plaintiff Fails To State A Claim For Breach Of Contract.

The Second Count of Plaintiff's Amended Complaint sets forth claims for breach of contract against Attorney Oberg and Ford Oberg, Manion & Houck.   Specifically, Plaintiff alleges that the Defendants breached their contractual duty by:

> "(a) failing to provide Plaintiff with timely and correct legal advice; (b) failing to engage in discovery designed to ensure that Plaintiff's financial interests in the dissolution action were adequately protected; (c) billing Plaintiff for unnecessary research and drafting on issues Defendants were alleged to be experts causing Plaintiff to incur unnecessary legal fees; (d) failing to file appropriate motions to ensure that Plaintiff's former wife fully and fairly complied with discovery; and (e) [failing] to properly advise Plaintiff as to the costs and risks associated with relying upon a motion to open judgment based upon fraud."

(See Am. Compl., Count Two ¶19[3]).  Plaintiff further claims that Defendants breached their contractual duty and that he has suffered damages as a result.  (See Am. Compl., Count Two ¶19[sic]). Here, Plaintiff fails to set forth facts which support his claim that Defendants breached the contract between the parties.  Rather, Plaintiff's claim for breach of contract is simply a negligence claim set forth in contractual language.  The Supreme Court of Connecticut has held that "putting a contract tag on a tort claim will not change its essential character.  An action in contract is for breach of a duty arising out of a contract; an action in tort is for breach of duty

---

[3] The Second Claim for Relief of Plaintiff's Amended Complaint contains two paragraphs labeled 19.  Defendants cite to the first paragraph labeled 19 and subparts (a) through (e).

12

imposed by law." Gazo v. Stamford, 255 Conn. 245, 263 (2001).  Connecticut's courts have similarly stricken breach of contract claims when founded upon a claim that defendants have negligently performed legal services. For instance, in Caffery v. Stillman, 79 Conn. App. 192 (2003), plaintiff brought an action against his former attorney for legal malpractice and breach of contract on the basis of an alleged defective representation.  The trial court granted summary judgment, which was affirmed by the appellate court, on the basis that in an action against an attorney, one cannot bring an action for breach of contract merely by restating allegations premised upon a breach of the applicable standard of care. Caffery, 79 Conn. App. at 197.

More recently, Connecticut's Appellate Court rejected a plaintiff's effort to dress a malpractice claim as a breach of contract claim, finding plaintiff's allegation that the provision of legal services was an express or implied term of a contract was a "distinction without a difference." Weiner v. Clinton, 106 Conn. App. 379, 385 (2008).  "Where the plaintiff alleges that the defendant negligently performed legal services and failed to use due diligence the complaint sounds in negligence, even though he also alleges that he retained him or engaged his services." Shuster v. Buckley, 5 Conn. App. 473, 478 (1985); Alexandru v. Strong, 81 Conn. App. 68, 79 (2004) (internal citations omitted).  Similarly, in this case, Plaintiff's breach of contract claim merely restates Plaintiff's allegations of professional malpractice.

Significantly, the allegations set forth in Plaintiff's breach of contract claim are nearly identical to the allegations set forth in Plaintiff's malpractice claim.  (See Am. Compl., Count Two ¶19; see also Count Three ¶19).  In fact, the **only** difference between the two counts is that the breach of contract claim does not include subsections (f), (g), (h) and (i) of the malpractice

13

claim.  Plaintiff's breach of contract claim cannot be shown to be independent or distinct of his

professional malpractice claim.  As such, Plaintiff has failed to state a breach of contract claim

and Plaintiff's Second Count must fail.

**D.**      **Plaintiff Fails To State A Claim For CUTPA.**

 1. **Plaintiff's CUTPA claim is predicated upon professional malpractice.**

 In his Fourth Count, Plaintiff asserts claims against Defendants for violation of CUTPA.

It is well established that professional malpractice does not give rise to a cause of action pursuant

to  CUTPA.   Cooke v. Williams & Pattis, 2002 U.S. Dist. LEXIS 27412 (D. Conn. 2002)

(attached hereto as Exhibit A), *citing* Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff

& Kotkin, 247 Conn. 48 (1998).  When reviewing a plaintiff's CUTPA allegations, a court must

"look to the underlying nature of the claim to determine whether it is really a [professional

negligence] claim recast as a CUTPA claim." Haynes v. Yale-New Haven Hospital, 243 Conn.

17, 38 (1997).  The Connecticut Supreme Court has addressed the legitimacy of attempts to "pile

on" a CUTPA count in attorney malpractice cases holding that, "professional negligence -- that

is, malpractice -- does not fall under CUTPA." Haynes, *supra*, at 35-36.  In Beverly Hills

Concepts, Inc. v. Schatz and Schatz, Ribicoff & Kotkin, 247 Conn. 48, 79 (1998), the court

stated:

> We, therefore, take this opportunity to reaffirm our prior holding
> that professional malpractice does not give rise to a cause of action
> under CUTPA.  This court has stated that, in general, "CUTPA
> applies to the conduct of attorneys." Heslin v. Connecticut Law
> Clinic of Trantolo & Trantolo, 190 Conn. 510, 521, 461 A.2d 938
> (1983).  The statute's "regulation of the conduct of any trade or
> commerce does not totally exclude all conduct of the profession of

14

MORRISON MAHONEY LLP • COUNSELLORS AT LAW

ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103

(860) 616-4441 • JURIS NO. 404459

law." (Internal quotation marks omitted.) Id. Nevertheless, we have declined to hold that "every provision of CUTPA permits regulation of every aspect of the practice of law . . . ." Id., 520. We have stated, instead, that, "only the entrepreneurial aspects of the practice of law are covered by CUTPA." Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 34, 699 A.2d 964 (1997). Accordingly, as in the health care context, "we conclude that professional negligence -- that is, malpractice -- does not fall under CUTPA." Id. We conclude, therefore, that CUTPA does not apply to the facts of this case. We, therefore, affirm the judgment of the trial court on this issue.

Here, it is quite clear that the nature of Plaintiff's claims are predicated on allegations that Defendants failed to meet the appropriate standard of care. As such, Plaintiff's claim that Defendant violated CUTPA must fail.

Further, although an exception exists for the entrepreneurial aspects of the practice of law, entrepreneurial aspects are considered to include solicitation of business and billing practices rather than claims directed at the competence of and strategy employed by the defendants. Zimmerman v. Cohen, 2004 U.S. Dist. LEXIS 6947 (D. Conn. 2004) (attached hereto as Exhibit A). Here, Plaintiff purports to state a cause of action under CUTPA by adding to his professional negligence claim conclusory allegations. Nevertheless, Plaintiff does not set forth facts to support such claims.

## 2.     Plaintiff's claims do not satisfy the cigarette rule.

Plaintiff's Amended Complaint is insufficient to satisfy the requirements of the "cigarette" rule of the Federal Trade Commission, which have been adopted in determining whether certain conduct violates CUTPA. Jacobs v. Healey Ford-Subaru, 231 Conn. 707, 725 (1995). The cigarette rule examines:

15

(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy... (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers.... A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Id.

In order to succeed in a CUTPA claim, the complaint must plead with particularity, and the plaintiff must prove at least one prong of the rule. Bates v. Utica Mutual Ins. Co., 2003 Conn. Super. LEXIS 1622 (May 29, 2003) (attached hereto as Exhibit A). Isolated incidents of misconduct will not constitute a "practice," and therefore allegations of incidents that occur sporadically are equally insufficient to sustain a CUTPA claim. Jacobs v. Healey Ford-Subaru, 231 Conn. 707, 727-30 (1995). Further, "the question of whether an action or practice can be the basis of a CUTPA action depends upon all the circumstances of the particular case." Id. at 726. The Fourth Count of Plaintiff's Amended Complaint fails to properly state a claim under CUTPA, because it fails to sufficiently allege a course of conduct constituting a violation. Specifically, Plaintiff cannot show a practice or course of conduct by alleging that: (a) Defendants billed him for work which was not performed; or (b) that Defendants encouraged him to enter into a settlement agreement for the purpose of increasing their legal fees. Such allegations are of single or intermittent incidents and, therefore, are insufficient to state a CUTPA claim.

a. Plaintiff's claim that Defendants provided inaccurate billing statements does not satisfy the cigarette rule.

Plaintiff's claim that Defendants billed him for work which was not performed does not constitute a course of conduct within the parameters of the "cigarette" rule. First, in order to

16

meet the first prong of this rule, the Plaintiff must plead facts which support a finding of a violation of an *identifiable* public policy.    In Rose v. Lindholm, Docket No. FST-CV-07-5005353-S, 2008 Conn. Super. LEXIS 1226, Judicial District of Stamford-Norwalk at Stamford (May 19, 2008) (Tobin, J.) (attached hereto as Exhibit A), Connecticut's Superior Court granted a motion to strike a counterclaim setting forth a claim of CUTPA violation predicated upon allegations of over-billing against the former attorneys.    There, the court determined, in relevant part,

> The defendant's counterclaim fails to allege any wrongdoing on the plaintiff's part other than over-billing. There are no claims that the plaintiff's bill, for example, included time incurred in working for other clients, included time for work actually performed by associates or paralegals but billed at partner rates, or marked up or inflated billing for disbursements. Without such allegations claims of over-billing necessarily involve only the professional judgment of the plaintiff as to how to staff the defendant's case, what pleadings to file, which experts to retain, and how to develop and implement an effective strategy to pursue the defendant's claims. While such matters may be the basis of a claim of professional malpractice, they bear no relationship to the entrepreneurial aspects of professional practice and accordingly, cannot furnish a basis for a CUTPA claim. Id.

Plaintiff's claim is not that Defendants billed him for work provided to other clients, or billed him at a rate higher than the agreed-upon rate.    Rather, it appears that Plaintiff's claim is that Defendants allegedly did not perform *enough* discovery. Plaintiff's Amended Complaint is sufficiently ambiguous that it appears to be based upon a complaint that Defendants spent more time billing for discovery issues than anticipated by the Plaintiff.    However, such a claim relates to the professional judgment of the Defendants rather than to an identifiable violation of any public policy.

17

Second, Plaintiff's claim is clearly premised upon the same discovery issues alleged in his malpractice claim. Indeed, Paragraph 22 of Plaintiff's Amended Complaint refers to billing statements which represented that discovery had been "obtained, vetted, and reviewed when in fact it had not been." (See Am. Compl., Count Four, ¶ 22). These same allegations are noted throughout Plaintiff's Amended Complaint. In this instance, Plaintiff's allegations of improper conduct clearly arise from Defendants' representation of Plaintiff rather than any claimed entrepreneurial aspect of the practice of law. Accordingly, this conduct is not actionable under CUTPA.

Third, Plaintiff's Amended Complaint again fails to set forth facts to support his allegation that Defendants billed him for work which was not performed. Yet, Plaintiff does not set forth facts to show *how* the bills were allegedly inaccurate. Instead, Plaintiff has alleged mere conclusions which are unsupported by any facts. Because the Fourth Count of Plaintiff's Amended Complaint fails to sufficiently allege a course of conduct constituting a violation of CUTPA, the Fourth Count of Plaintiff's Amended Complaint must also fail as a mater of law.

> b.   Plaintiff's claim that Defendants encouraged Plaintiff to enter into a settlement agreement to increase their legal fees is not actionable under CUTPA.

In support of his claim of CUTPA violation, Plaintiff further alleges that Defendants encouraged him to enter into a settlement agreement for the purpose of increasing the amount of legal fees to be later obtained by the Defendants. (See Am. Compl., Count Four, ¶23). However, these allegations do not support a claim under CUTPA. Although attorneys are not exempt from CUTPA, the majority of the practice of law is exempt. See Haynes v. Yale-New Haven

18

Hospital, supra,  243 Conn. 34-35 (1997).  In fact, the entrepreneurial exception from CUTPA

immunity extends to only a limited set of activities.  See Suffield Dev. Assoc. Ltd. P'ship. V.

Nat'l. Loan Investors, L.P.,  260 Conn. 766 (2002), rev'd on other grounds, 97 Conn. App. 541

(2006), appeal denied, 280 Conn. 942 (2006).  Furthermore,

> [m]any decisions made by attorneys eventually involve personal profit as a
> factor, but are not considered part of the entrepreneurial aspect of
> practicing law....[f]or example, taking on a new client or discontinuing
> representation of a current one, setting a case, pursuing an appeal...are all
> decisions that may be made in the best interest of the client, and still,
> because the attorney's and client's interests are often aligned together, also
> properly may be in the attorney's financial interest as long as such actions
> do not have an adverse effect on the interests of the client.  The attorney's
> financial considerations do not place all of these actions into the category
> of entrepreneurial aspects of practicing law.  Using an attorney's financial
> considerations as a screening mechanism for separating professional
> actions from entrepreneurial ones would dissolve the distinction between
> the two, subjecting attorneys to CUTPA claims for any decision in which
> profit conceivably could have been a factor.  Id.

Here, Plaintiff's suggestion that Defendants purposefully advised him to enter into a

settlement agreement for the sole purpose of obtaining additional legal fees is ludicrous.  At the

time he entered into the settlement agreement, Plaintiff admits that he was concerned whether his

former wife had disclosed all assets.  (See Am. Compl., ¶ 12(b)).  Furthermore, Plaintiff freely,

and of his own volition, made the decision to enter into the settlement agreement in the

underlying matter.  Moreover, it was *Plaintiff's* decision whether to proceed with the filing of a

Motion to Open Judgment at a later date.  Defendants did not force Plaintiff to file the Motion to

Open.  Also, Plaintiff chose to request that Defendants assist him in filing the Motion to Open.

Nevertheless, Plaintiff now seeks to use the Defendant's professional advise regarding settlement

19

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

as a predicate for a claim of CUTPA violation.  Such a claim is unfounded and should therefore be dismissed.

      c.    <u>Plaintiff's claim that Defendants violated the Rules of Professional Ethics is not actionable under CUTPA.</u>

Plaintiff's claim that Defendants' actions constitute an unfair trade practice because they violated the Rules of Professional Conduct is similarly without merit.  Connecticut's court's have long recognized that a claimed violation of the ethics rules does not give rise to a cause of action under CUTPA.  <u>Noble v. Marshall</u>, 23 Conn. App. 227 (1990) (appellate court affirmed trial court's ruling which granted a motion to strike a claim of CUTPA violation predicated upon a claimed violation of the Rules of Professional Conduct).  Further, in this case, the Plaintiff has identified no ethics rule he believes has been breached.  Accordingly, this claim also fails to provide a basis for a CUTPA allegation.

20

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

## V.   CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court dismiss the Plaintiff's Amended Complaint on the grounds that the Court lacks subject matter jurisdiction over the Plaintiff's state law claims. Alternatively, Defendant's respectfully request that this Court dismiss the First, Second, and Fourth Counts of Plaintiff's Amended Complaint as Plaintiff has failed to state claims upon which relief can be granted.

THE DEFENDANTS,
MARY CHRISTINA OBERG AND
FORD, OBERG, MANION AND HOUCK, P.C.


:BY_____/s/: Kristine R. Jones_____
    Robert Cassot  (CT24094)
    Kristine R. Jones (CT26976)
    Edward N. Storck III (CT27312)
    MORRISON MAHONEY, LLP
    One Constitution Plaza, 10th Floor
    Hartford, CT 06106
    Phone:  (860) 616-4441
    Fax:  (860) 244-3800
    Her and Its Attorneys
    Email: rcassot@morrisonmahoney.com
        kjones@morrisonmahoney.com
        estorck@morrisonmahoney.com