UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARY L. TATUM : | |
| : | CIVIL ACTION NO. |
| Plaintiff, : | 3:08-CV-1251 (JCH) |
| : | |
| v. : | |
| : | |
| MARY CHRISTINA OBERG, ET AL., : | SEPTEMBER 3, 2009 |
| : | |
| Defendants. : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 78)**

## I.   INTRODUCTION

Plaintiff, Gary Tatum ("Tatum"), brings this action against defendants, Mary Christina Oberg ("Oberg") and Ford, Oberg, Manion & Houck, P.C. ("FOMH"), for damages he allegedly sustained from the defendants' representation of Tatum in an action to dissolve Tatum's marriage to Kathleen J. Murphy ("Murphy").  Tatum asserts state law causes of action for fraud, breach of contract and malpractice, and under the Connecticut Unfair Trade Practices Act ("CUTPA").  Oberg and FOMH move the court under Fed. R. Civ. P. 12(b)(1) to dismiss Tatum's claims on the ground that the court lacks subject matter jurisdiction to hear such claims.  In the alternative, Oberg and FOMH move the court under Fed. R. Civ. P. 12(b)(6) to dismiss Tatum's fraud, breach of contract, and CUTPA claims on the ground that Tatum has failed to state a claim upon which relief can be granted.  For the following reasons, the court DENIES the Motion to Dismiss on lack of subject-matter jurisdiction grounds.  The court GRANTS IN PART and DENIES IN PART the Motion to Dismiss on the ground of failure to state a

1

claim upon which relief can be granted.

## II.   FACTUAL BACKGROUND

On or about February 12, 2002, Tatum retained FOMH to represent him in an action to dissolve Tatum's marriage to Murphy.  Am. Comp. at ¶ 10.  At that time, Tatum paid FOMH a $4,500 retainer and entered into a written agreement for legal services.  Id. at ¶ 10.  FOMH then assigned the case to Oberg, a partner in the firm.  Id. at ¶ 12.  FOMH's representation of Tatum in matters related to the dissolution continued through July 2005.  Id. at ¶ 18.

Tatum contends that, between February 12, 2002, and July 2005, Oberg and FOMH engaged in a course of conduct that included both intentional and negligent misconduct.  Tatum alleges that Oberg intentionally made false statements to Tatum during this period for the purpose of inducing Tatum to agree to an unfavorable settlement agreement with Murphy.  Id. at ¶ 13.  These alleged false statements included that Oberg had requested and received all relevant information related to Murphy's finances, that Tatum could recover "a fair share" of any of Murphy's assets that were undisclosed at the time of settlement, and that Tatum, pursuant to a clause in the settlement agreement, would be able to recover all assets not specifically set forth in Murphy's financial affidavits.  Id. at ¶¶ 12(a)-12(d).[1]

More generally, Tatum alleges that Oberg and FOMH acted negligently by, inter alia, providing incorrect and untimely legal advice to Tatum, failing to engage in

---

[1] The court interprets Am. Comp. ¶ 12(e) as a statement that the alleged misrepresentations set forth in ¶¶ 12(a)-12(d) constitute a course of conduct designed to conceal misrepresentations of law and fact.  The court does not interpret ¶ 12(e) as a statement that Oberg falsely represented to Tatum that Oberg or FOMH engaged in such a course of conduct.  Such an interpretation would be inconsistent with the rest of the Amended Complaint.

adequate discovery, billing Tatum for both unnecessary and unperformed legal work, and failing to apprise Tatum of various costs and risks related to the representation. Id. at ¶¶ 19-25.

Tatum contends that Oberg and FOMH's conduct caused Tatum economic harm over the course of the representation. Notably, Tatum contends that, due to his reliance on Oberg's fraudulent statements, Tatum entered a settlement agreement that failed to account for $100,000 in assets that Murphy allegedly concealed during the dissolution proceeding. Id. at ¶ 15. Tatum also argues that his reliance on Oberg's misrepresentations adversely led to an increase in the amount of child support that Tatum was required to pay under the settlement agreement. Id.

### III. STANDARD OF REVIEW

In deciding this Motion to Dismiss, the court takes the allegations of Tatum's Amended Complaint as true and construes them in a manner favorable to Tatum. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984). The court must draw all reasonable inferences in Tatum's favor. See, e.g., Yung v. Lee, 432 F.3d 132, 146 (2d Cir. 2005) (discussing Rule 12(b)(6) motion to dismiss); Lunney v. United States, 319 F.3d 550, 554 (2d Cir.2003) (internal citations omitted) (discussing Rule 12(b)(1) motion to dismiss).

The court's analysis is guided by Fed. R. Civ. P. 8(a)(2) ("Rule 8(a)(2)"), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has recently articulated that Rule 8(a)(2) "requires factual

allegations sufficient 'to raise a right to relief above the speculative level.'" Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)).  This "plausibility standard" in Twombly "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly).

## IV.    DISCUSSION

### A.    Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

Because Tatum has presented only state law claims, jurisdiction in this case is premised on diversity of citizenship under 28 U.S.C. § 1332(a)(1).[2]  Am. Comp. ¶ 2. Oberg and FOMH do not contest that Tatum is a citizen of Texas and both Oberg and FOMH are citizens of Connecticut.  Am. Comp. ¶¶ 7-9.  Oberg and FOMH argue, however, that the court lacks subject matter jurisdiction because Tatum cannot recover the requisite minimum amount in controversy, which is $75,000.  See 28 U.S.C. § 1332(a); Def.'s Mem. in Supp. at ¶ 5.

Under the law of this Circuit, "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir.1994).  Once the party invoking jurisdiction alleges an amount exceeding the jurisdictional threshold, there exists "a rebuttable presumption that the face of the complaint is a good faith representation of the actual

---

[2] Tatum also asserts that jurisdiction in this action is proper under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1985, and 28 U.S.C. § 2201.  Am. Comp. ¶ 5.  Tatum's claims for relief, however, plainly fail to present a federal question.

4

amount in controversy." Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir.1999). The party opposing jurisdiction can overcome this presumption by demonstrating "to a legal certainty" that the plaintiff cannot recover the jurisdictional amount. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).

In this case, Tatum has claimed economic damages for fraud, breach of contract, malpractice, and CUTPA violations; punitive damages under CUTPA; statutory damages under CUTPA; and attorneys fees. While Tatum will be unable to recover on most of these claims as currently pleaded, see infra, he has nonetheless established a "reasonable probability" that his claims are for an amount in excess of $75,000. Tatum alleges that, due to promises made to him by Oberg, he is entitled to $100,000 worth of assets that Murphy fraudulently concealed from Tatum during the dissolution proceeding. See Am. Comp. at ¶¶ 12(d), 15. Despite the defendants' argument that Tatum's claim to the entire amount of the concealed assets is speculative, Tatum is entitled to the "face-of-the complaint presumption" that $100,000 is a good-faith representation of the actual amount in controversy. See Scherer v. Equitable Life Assurance Soc'y of the U.S., 347 F.3d 394, 397 (2d Cir. 2003). The defendants have failed to demonstrate to a legal certainty that Tatum's claim is really for less than $75,000.

The Defendants' motion to dismiss based on lack of subject-matter jurisdiction is thus DENIED.

> B. <u>Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted</u>

        1.       First Claim for Relief: Fraud

Oberg and FOMH first move to dismiss Tatum's fraud claim. Under Connecticut law, a fraud claim is established if "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." Weinstein v. Weinstein, 275 Conn. 671, 685 (Conn. 2005). In this case, Tatum alleges that Oberg and FOMH committed fraud because Oberg made numerous false statements of fact related to Tatum's dissolution action (see, supra section II); Oberg knew such statements to be untrue; Oberg intended to induce Tatum to rely on her statements; and Tatum relied on Oberg's statements to his detriment. Am. Comp. at ¶ 12-15.

Ordinarily, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiffs pleading fraud, however, are subject to the heightened requirements of Fed. R. Civ. P. 9(b) ("Rule 9(b)"). Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Under the law of this Circuit, a party pleading fraud must therefore "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

In this case, the first two requirements of Rule 9(b)'s heightened pleading standard are satisfied. Tatum's Amended Complaint clearly specifies the statements of fact he contends were fraudulent and identifies Oberg as the speaker.

The third requirement of Rule 9(b), however, is not satisfied. While Tatum indicates that Oberg made allegedly fraudulent statements between February 12, 2002, and July 2005, Tatum does not use sufficient precision in stating when and where Oberg made such statements. A span of approximately forty-one months is clearly insufficient to meet the particularity requirements of Rule 9(b). See, e.g., Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003) (finding a "four-month period of time . . . insufficient to satisfy the pleading standards of Rule 9(b)"); Skylon Corp. v. Guilford Mills, Inc., 1997 WL 88894, at *2 (S.D.N.Y. Mar.3, 1997) (finding that "a four-month window during which all of the misrepresentations occurred . . . does not satisfy the pleading standard of Rule 9(b)").

It is also worth noting that Tatum does not specify facts in support of his assertion that Oberg knew her allegedly fraudulent statements to be false and made them for the purpose of inducing Tatum to rely on them. While Rule 9(b) states that the scienter element of fraud "may be alleged generally," pleadings with respect to scienter must still comply with the requirements of Rule 8(a)(2). See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1954 (2009). As the Supreme Court has held, a pleading offering merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient to satisfy Rule 8(a)(2). Twombly, 550 U.S. at 555. In this case, Tatum's Amended Complaint contains merely a bare-bones assertion of scienter. It alleges no "facts that give rise to a strong inference of fraudulent intent," as is required by the law of this Circuit. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

For the foregoing reasons, the motion to dismiss Tatum's fraud claim is GRANTED. Tatum may move within 30 days for leave to replead a fraud claim, if he

7

has a factual and legal basis to do so.  A proposed amended complaint should be attached to any motion for leave to replead.

### 2. Second Claim for Relief: Breach of Contract

The defendants next move to dismiss Tatum's breach of contract claim.  Tatum contends that Oberg and FOMH had a contractual duty to provide Tatum with timely and correct legal advice, and breached this duty by, inter alia, failing to engage in adequate discovery, billing Tatum for unnecessary legal research, and failing to advise Tatum regarding certain costs and risks related to the representation.  Am. Comp. ¶ 19.  Tatum also argues that Oberg's alleged false statements to Tatum over the course of the representation constitute a breach of contract.  Am. Comp. ¶ 17.  In response, the defendants argue that Tatum's breach of contract claim is really a malpractice claim couched in contract language.  See Def.'s Mem. in Supp. at 12.

Under Connecticut law, the elements of a breach of contract are "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."  Rosato v. Mascardo, 82 Conn. App. 396, 411 (Conn. App. Ct. 2004) (quoting Bouchard v. Sundberg, 80 Conn. App. 180, 189 (Conn. App. Ct. 2003)).  In general, a client may sue his or her attorney for either breach of contract, negligence or both.  Conn. Educ. Ass'n, Inc. v. Milliman USA, Inc., 105 Conn. App. 446, 458 (Conn. App. Ct. 2008).  See also Mac's Car City, Inc. v. DeNigris, 18 Conn. App. 525, 529-30 (Conn. App. Ct. 1989).  The court must dismiss a claim for breach of contract, however, if the claim is in fact "a claim that one has breached a standard of care in the language of contract."  Caffery v. Stillman, 79 Conn. App. 192, 197 (Conn. Ct. App. 2003).  See also Gazo v. City of Stamford, 255 Conn. 245, 263 (Conn. 2001) ("[W]e look beyond

the language used in the complaint to determine what the plaintiff really seeks. . . . [P]utting a contract tag on a tort claim will not change its essential character.").

Tatum's breach of contract and malpractice claims are based largely on the same underlying facts. The only difference in this respect is that the malpractice claim, but not the breach of contract claim, rests in part on allegations that Oberg and FOMH "[c]onceal[ed] discovery and/or fail[ed] to obtain discovery that would have alerted Plaintiff to their failure to comply with the standard of care," and "[f]ail[ed] to respond to Plaintiff's request regarding the manner in which the case proceeded." Am. Comp. ¶ 19(f)-19(g).[3] Despite similar factual underpinnings, Tatum asserts that his breach of contract claim derives from Oberg and FOMH's "contractual duty to provide timely and correct legal advice to Plaintiff," and that his malpractice claim derives from the defendants' "duty to provide Plaintiff with professional services equal to the degree of skill and learning commonly applied under the circumstances then and there existing by a prudent member of the legal profession." Am. Comp. ¶¶ 18, 18.[4]

Under Connecticut law, where a plaintiff's complaint alleges that the defendant "negligently performed legal services and failed to use due diligence the complaint sounds in negligence." Shuster v. Buckley, 5 Conn. App. 473, 478 (Conn. App. Ct. 1985). A breach of contract claim will lie, however, if the plaintiff alleges that the defendant attorney failed to perform specific actions required of him or her; if the defendant affirmatively refused to perform certain actions; or if the defendant failed to

---

[3] This citation refers to the paragraph numbered 19 on page 6 of the Amended Complaint. There are three additional paragraphs numbered 19 on page 5.

[4] Tatum's Amended Complaint contains three paragraphs numbered 18; see pages 5-6. This citation refers to the second paragraph 18 on page 5, and paragraph 18 on page 6.

obtain a specific agreed-upon result.  Weiner v. Clinton, 106 Conn. App. 379, 385 (Conn. App. Ct. 2008).  See also Conn. Educ. Ass'n, Inc., 105 Conn. App. 446 (Conn. App. Ct. 2008) (denying a motion to dismiss a breach of contract claim against an attorney where "[t]he plaintiff's allegations refer to specific actions required by the plaintiff, that is, that the defendant maintain the pension plan in compliance with the Internal Revenue Service code and ERISA"); Hill v. Williams, 74 Conn. App. 654, 659-60 (Conn. App. Ct. 2003) (denying motion to dismiss a breach of contract claim against an attorney where attorney affirmatively refused to perform actions "in furtherance of the matters for which the defendant had been hired").

      Tatum's breach of contract claim is nearly identical to his malpractice claim. While Tatum's malpractice claimed is premised on two additional factual allegations, as noted above, this case is ultimately indistinguishable from Weiner, supra.  In that case, the Connecticut Appellate Court found that the trial court "properly pierced the pleading veil and concluded that the plaintiffs' claim was one sounding in malpractice masked in contract garb."  106 Conn. App. at 385-86.  In Weiner, as in this case, the plaintiffs' breach of contract claim alleged that the attorney-defendant failed to file the proper motions, conduct adequate discovery, and advise the plaintiff "of the status of the proceedings" at a particular stage of the litigation.  Id. at 386 n.5.  As in this case, the Weiner plaintiffs' malpractice allegation reiterated the breach of contract charge verbatim.  Id.  As in this case, the Weiner plaintiffs provided no written contract to the court.  Id. at 386 n.6.  Tatum has not alleged that Oberg or FOMH failed to perform specific actions required of them, affirmatively refused to perform any action, or breached an agreement to obtain a particular result.  The court thus finds that Tatum's

breach of contract claim amounts to an allegation that Oberg and FOMH were negligent in their representation of Tatum.

For the foregoing reasons, the motion to dismiss Tatum's breach of contract claim is GRANTED.  Tatum may move within 30 days for leave to replead a breach of contract claim, if he has a factual and legal basis to do so.  A proposed amended complaint should be attached to any motion for leave to replead.

### 3. Fourth Claim for Relief: CUTPA

Oberg and FOMH next move to dismiss Tatum's claims under CUTPA.  CUTPA, which regulates unfair competition and unfair or deceptive acts or practices taking place in Connecticut, provides that, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen.Stat. § 42-110b(a).  CUTPA defines "trade" and "commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."  Conn. Gen. Stat. § 42-110a(4).

It is well established that CUTPA regulates the "entrepreneurial or commercial aspects of the profession of law," but does not apply to claims of legal malpractice. Haynes v. Yale-New Haven Hosp., 243 Conn. 17, 34-35 (Conn. 1997).  See also Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Investors, L.P., 260 Conn. 766, 781 (Conn. 2002) ("Suffield").  Thus, the central question for the court in considering Tatum's CUTPA claim against Oberg and FOMH is whether the conduct underlying the CUTPA claim "is part of the attorney's professional representation of a client or is part

of the entrepreneurial aspect of practicing law." Id. at 782.

Tatum's Amended Complaint asserts that Oberg and FOMH engaged in conduct that constituted an unfair trade practice by, inter alia, sending Tatum billing statements that falsely represented that discovery had been obtained, vetted, and reviewed; encouraging Tatum to enter a settlement with Murphy to increase the amount of legal fees Tatum had to pay; making false statements over the course of the representation; and failing to provide timely and correct legal advice. Am. Comp. ¶¶ 22-24, 1,[5] 12, 19. Although the conduct Tatum alleges may be actionable as professional malpractice, the court concludes that such conduct relates to the defendants' representation of Tatum and is not part of the entrepreneurial aspect of legal practice.

To begin, some of the alleged conduct underlying Tatum's CUTPA claim must plainly be considered outside of the entrepreneurial aspects of practicing law. Informing a client of his rights in a proposed settlement, providing him with legal advice, and filing discovery motions are some of the core tasks of a lawyer hired to represent a client in a dissolution action. These actions, even if performed in an intentionally deceptive manner, do not fall within the ambit of CUTPA. The Connecticut Supreme Court has expressly rejected the argument that CUTPA applies per se to intentional misconduct designed to increase an attorney's profit or fees. Suffield, 260 Conn. at 782-83. Rather, the Connecticut Supreme Court has held that CUTPA's "'entrepreneurial' exception is . . . a specific exception from CUTPA immunity for a well-defined set of activities--advertising and bill collection, for example." Id. at 782

---

[5] This citation refers to the paragraph labeled "1." on page seven of the Amended Complaint, under the subheading for the Fourth Claim for Relief.

(citations omitted).

The only allegation in the Amended Complaint that might plausibly fall within this "well-defined set of activities" is that Oberg and FOMH billed Tatum for legal services that were never performed. The allegation is as follows:

> Defendants, in furtherance of their entrepreneurial aspects of law, sent Plaintiff billing statements that inaccurately represented that legal services had been rendered when, in fact, they had not. These included, but are not limited to, representations that discovery had been obtained, vetted, and reviewed when in fact it had not been.

Am. Comp. ¶ 22.

Oberg and FOMH argue that the claim set forth in paragraph 22 of the Amended Complaint must be dismissed because it fails to satisfy the Federal Trade Commission's "cigarette rule." Def.'s Mem. in Supp. at 16-17. In general, the Connecticut courts use the "cigarette rule" to determine whether CUTPA has been violated. See e.g., Am. Car Rental, Inc. v. Comm'r of Consumer Prot., 273 Conn. 296, 305-06 (Conn. 2005). When the plaintiff has brought allegations of a "deceptive" trade practice, as opposed to a trade practice that is merely "unfair," analysis under the "cigarette rule" is improper. See e.g., Lentini v. Fidelity Nat'l Title Ins. Co. Of N.Y., 479 F. Supp. 2d 292, 303 (D. Conn. 2007); R. Langer, J. Morgan & D. Belt, 12 Connecticut Practice Series: Unfair Trade Practices § 2.3, p. 25 (2003). In this case, Tatum claims that Oberg and FOMH billed him for legal services that were never performed. The court finds that this amounts to an allegation of a "deceptive" practice, as opposed to a practice that is merely "unfair." For this reason, analysis under the "cigarette rule" is inappropriate.

There is also a question of whether Tatum's failure to plead his CUTPA claims

with particularity must result in dismissal. Def.'s Mem. in Supp. at 16. Pursuant to Rule 8(a)(2), plaintiffs in federal court generally need not plead with particularity. Rule 9(b), which establishes the heightened pleading standard for fraud claims, is an exception. See supra. It is well established that CUTPA claims need not contain the elements of fraud. See e.g., Associated Inv. Co. Ltd. P'ship v. Williams Assocs. IV, 230 Conn. 148, 158 (Conn. 1994); Sportsmen's Boating Corp. v. Hensley, 192 Conn. 747, 755 (Conn. 1984). Thus, CUTPA claims brought in federal court only must satisfy Rule 9(b) if such claims are based on fraud allegations. See, e.g., U.S. ex rel Polied Envtl. Svcs., Inc. v. Incor Group, Inc., 238 F. Supp. 2d 456, 463 (D. Conn. 2002) ("[A]lthough the Connecticut courts have required CUTPA claims to be pled with particularity, this procedural requirement does not apply in federal court."). In this case, the court construes paragraph 22 of the Amended Complaint as alleging a deceptive practice short of fraud. Therefore, this claim need not satisfy Rule 9(b) and cannot be dismissed on the ground that it has not been pleaded with particularity.[6]

For the foregoing reasons, the Motion to Dismiss Tatum's CUTPA claim contained in Am. Comp. ¶ 22 is DENIED. The Motion to Dismiss the remainder of Tatum's CUTPA claims is GRANTED. Tatum may move within 30 days for leave to replead any of the dismissed claims, if he has a factual and legal basis to do so. A proposed amended complaint should be attached to any motion for leave to replead.

---

[6] As stated supra, Rule 9(b) requires a party pleading fraud to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach, 355 F.3d at 170. Tatum's Amended Complaint plainly does not meet these requirements. Therefore, if the allegation contained in Am. Comp. ¶ 22 is, in fact, based on deceptive acts amounting to fraud, then it must be dismissed under Rule 9(b). If this is the case, the court grants Tatum leave to replead such a claim in accordance with the dates provided infra.

**III.    CONCLUSION**

For the foregoing reasons, the court GRANTS the defendants' Motion to Dismiss Counts I and II of the plaintiff's Amended Complaint [Doc. No. 78], with the right to replead.  The court GRANTS IN PART and DENIES IN PART the defendants' Motion to Dismiss Count IV, with the right to replead all dismissed claims.


**SO ORDERED.**

Dated at Bridgeport, Connecticut this 3rd day of September, 2009.

                                              /s/ Janet C. Hall
                                              Janet C. Hall
                                              United States District Judge