UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARY L. TATUM | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:08-CV-1251 (JCH) |
| v. | : | |
| | : | |
| MARY CHRISTINA OBERG, ET AL., | : | DECEMBER 18, 2009 |
|     Defendants. | : | |

**RULING RE: PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (Doc. No. 107) AND MOTION FOR RULING ON MOTION TO AMEND COMPLAINT PRIOR TO RULING ON MOTION FOR SUMMARY JUDGMENT (Doc. No. 127)**

**I.    INTRODUCTION**

The plaintiff in this action, Gary L. Tatum ("Tatum"), brings this suit against defendants Mary Christina Oberg ("Oberg") and Ford, Oberg, Manion & Houck, P.C. ("FOMH"), for damages Tatum allegedly sustained from the defendants' representation of Tatum in a proceeding to dissolve Tatum's marriage to Kathleen J. Murphy ("Murphy").  Tatum alleges that the defendants committed fraud, breach of contract, professional malpractice, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA").  In a ruling dated September 3, 2009 (Doc. No. 98) (hereinafter "September 3 Ruling"), this court granted in part the defendants' Joint Motion to Dismiss (Doc. No. 78) Tatum's claims for fraud, breach of contract, and CUTPA violations contained in the Amended Complaint (Doc. No. 69) (hereinafter "First Amended Complaint").  The court granted defendants' Motion to Dismiss Tatum's fraud and breach of contract claims in their entirety.  In addition, the court granted the defendants' Motion to Dismiss all but

1

one of Tatum's claims under CUTPA.[1]

In the September 3 Ruling, the court held that Tatum could move to replead his dismissed claims for fraud, breach of contract and CUTPA violations, as long as he had a factual and legal basis to do so. Tatum so moved on October 2, 2009, filing a proposed Amended Complaint as an attachment (hereinafter "Proposed Second Amended Complaint" or "Second Amended Complaint") (Doc. No. 107). The defendants filed an Objection to Tatum's Motion for Leave to Replead on October 22, 2009 (Doc. No. 115), and oral argument was held on December 8, 2009. On December 9, 2009, the defendants moved the court to rule on Tatum's Motion for Leave to File a Second Amended Complaint prior to ruling on its own Motion for Summary Judgment (Doc. No. 127) (hereinafter "Motion for Ruling").

For the reasons contained herein, the court grants defendants' Motion for Ruling (Doc. No. 127). The court grants in part Tatum's Motion for Leave to File a Second Amended Complaint (Doc. No. 107).

## II.  MOTION FOR RULING ON MOTION TO AMEND COMPLAINT PRIOR TO RULING ON MOTION FOR SUMMARY JUDGMENT

The defendants move the court to rule on Tatum's Motion for Leave to Replead prior to ruling on the defendants' own Motion for Summary Judgment. The defendants state that, once this court rules on Tatum's Motion for Leave to Replead, they intend to file a new Motion for Summary Judgment "on any claims that are permitted under the Amended Complaint." See Motion for Ruling at 1. The defendants assert that "[t]his

---

[1] The CUTPA claim that was not dismissed, which was contained in paragraph 22 of Tatum's Amended Complaint (Doc. No. 69), alleged that the defendants billed Tatum for legal work that was never performed.

request is respectfully made in the interest of judicial economy. . . .  By proceeding in this manner, we will eliminate the need for two separate motions for summary judgment and will, therefore, preserve the Court's time."  Id.

Because the defendant has represented that the plaintiff's counsel has consented to the Motion for Ruling, the Motion is granted.

### III.     MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

A.     Standard of Review

Pursuant to Fed. R. Civ. P. 15(a)(2), Tatum may amend his complaint "only with the opposing party's written consent or the court's leave."  In general, "[a] district court has broad discretion to decide whether to grant leave to amend."  In re Tamoxifen Citrate Antitrust Litigation, 466 F.3d 187, 220 (2d Cir. 2006) (citing Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000)).  While Fed. R. Civ. P. 15(a) states that "[t]he court should freely give leave when justice so requires," the Second Circuit has held that "where amendment would be futile, denial of leave to amend is proper."  In re Tamoxifen, 466 F.3d at 220 (citing Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 91-92 (2d Cir. 2003)).  Denial of leave to amend may also be proper if it is based on "considerations of undue delay, bad faith, and prejudice to the opposing party."  Barrows v. Forest Laboratories, 742 F.2d 54, 58 (2d Cir.1984) (citing Foman v. Davis, 371 U.S. 178, 182 (1962))

Amendment of a complaint is futile where the proposed amended complaint would be unable to withstand a subsequent motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").  Ricciuti v. N.Y.C. Transit Authority, 941

F.2d 119, 123 (2d Cir. 1991). Under Rule 12(b)(6), the court accepts as true "all factual allegations in the complaint and constru[es] all reasonable inferences in the non-movant's favor." Staehr v. Hartford Financial Services Group, Inc., 547 F.3d 406, 424 (2d Cir. 2008). In determining whether permitting Tatum to amend his complaint would be futile, the court is also guided by Fed. R. Civ. P. 8(a)(2) ("Rule 8(a)(2)"), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court has recently articulated, Rule 8(a)(2) "requires factual allegations sufficient 'to raise a right to relief above the speculative level.'" Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)).

    B.    First Claim for Relief: Fraud

In its September 3 Ruling, this court granted the defendants' Motion to Dismiss Tatum's fraud claim on the ground that it failed to specify when and where the defendants made allegedly fraudulent representations.[2] In addition, the court held that the fraud claim contained in the First Amended Complaint was conclusory as to scienter, because it alleged no facts giving rise to "a strong inference of fraudulent

---

[2] As stated in the September 3 Ruling, to establish a prima facie case of fraud under Connecticut law, a plaintiff must allege "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." Weinstein v.Weinstein, 275 Conn. 671, 685 (Conn. 2005).
    While federal court pleadings generally need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," fraud plaintiffs are subject to the particularized pleading requirements of Fed R. Civ. P. 9(b) ("Rule 9(b)"). Under Rule 9(b), fraud plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

intent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).³ While the fraud claim contained in the Proposed Second Amended Complaint contains more detailed factual allegations than the fraud claim in the First Amended Complaint, the defendants argue that the fraud claim contained in the Proposed Second Amended Complaint nonetheless would not survive a motion to dismiss under Rule 12(b)(6). The court agrees.

The fraud allegations contained in Tatum's Proposed Second Amended Complaint center on Oberg's failure to obtain complete and accurate information about Murphy's finances at various times. Specifically, Tatum alleges that the following statements made by Oberg were fraudulent: (1) "Oberg's representations that all missing information [regarding Murphy's finances] had been obtained" in the discovery process prior to the execution of the settlement agreement between Tatum and Murphy;⁴ (2) Oberg's representation that "the deductions were related to property taxes";⁵ (3) Oberg's "verbal assur[ances]  . . . that she had obtained Murphy's financial information through the formal discovery process"; (4) Oberg's statement that Murphy's 2002 tax returns would be subpoenaed prior to a hearing on a Motion to Reopen filed

---

³ While the scienter element of fraud need not be pleaded with particularity under Rule 9(b), this element must still comply with the requirements of Rule 8(a)(2). See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1954 (2009).

⁴ While the Proposed Second Amended Complaint does not so specify, this apparently refers to the settlement agreement that was executed in April 2004 between Tatum and Murphy.

⁵ Tatum's Proposed Second Amended Complaint contains no information regarding the meaning of the phrase "the deductions." While paragraph 18(b) of the Proposed Second Amended Complaint discusses issues related to Murphy's 2001 federal tax return, that paragraph is vague, and the court finds it very difficult to understand.

by Oberg;[6] (5) Oberg's statement "that bonds were owned by Plaintiff's minor children, when the minor children were actually only the beneficiaries and Oberg had not seen the bonds."[7]  Sec. Am. Comp. at ¶ 18(a)-(e).[8]

First, Tatum has not alleged "facts that give rise to a strong inference of fraudulent intent." Shields, 25 F.3d at 1128.  This requisite " 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Id.  The Supreme Court has stated that a fraud complaint must contain an allegation of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007).[9]

Here, Tatum has alleged neither facts showing that Oberg had a motive to commit fraud, nor strong circumstantial evidence of Oberg's conscious misbehavior or

---

[6] The Proposed Second Amended Complaint contains no information regarding the factual or legal basis for Oberg's Motion to Reopen.  Evidence in the record, however, suggests that the Motion was filed in order to reopen the settlement agreement between Tatum and Murphy, in light of Murphy's failure to be forthcoming with complete financial information.

[7] The Proposed Second Amended Complaint contains no additional information about "the bonds."  Evidence in the record, however, indicates that Murphy failed to disclosed roughly $43,000 worth of savings bonds in the discovery process prior to the execution of the settlement agreement by Tatum and Murphy in April 2004.

[8] Tatum also contends that Oberg fraudulently "allowed Murphy to engage in a pattern of avoiding meeting with family relations . . . so that it would be necessary to retain the services of Dr. Heibel," and that Oberg fraudulently failed to "follow up with Dr. Heibel regarding his bias toward Murphy and further failed to seek additional options that would be supportive of Plaintiff's bid for custody."  Id. at ¶ 18(a). These allegations, if true, do not amount to fraud.  As stated supra, a fraud plaintiff must allege that the defendant made a false representation.

[9] While the Tellabs case concerned the meaning of "strong inference of fraudulent intent" within the context of the Private Securities Litigation Reform Act, district courts within this Circuit have applied its analysis to claims of common law fraud.  See, e.g., Glidepath Holding B.V. v. Spherion Corp., 590 F. Supp. 2d 435, 451 (S.D.N.Y. 2007).

recklessness.  The Proposed Second Amended Complaint alleges that Oberg made fraudulent statements for the purpose of inducing Tatum to agree to a settlement agreement, and for the purpose of concealing Oberg's own malpractice.  However, the facts Tatum alleges more plausibly support a professional malpractice claim than a fraud claim.  For example, Tatum provides no information as to why Oberg would have wanted to conceal the full extent of Murphy's finances from Tatum or to induce Tatum into an unfavorable settlement agreement.  For that reason, Tatum's assertion that Oberg intended to deceive him as to the amount to which he may have been entitled from Murphy in the dissolution is conclusory.[10]  Further, to the extent that Tatum alleges that Oberg committed fraud by concealing her own malpractice, the court is aware of no Connecticut case in which concealment of malpractice by an attorney, without more, gives rise to a cause of action in fraud.  Cf. La Brake v. Enzien, 562 N.Y.S.2d 1009, 1011 (N.Y. App. Div. 1990) (holding that concealment of legal malpractice, without more, does not constitute common law fraud in New York[11]).

Second, Tatum's Second Proposed Amended Complaint fails to specify when and where Oberg made three of the five statements alleged to be fraudulent.  In paragraph 18(b),[12] Tatum contends that Oberg fraudulently "represent[ed] that all missing information had been obtained" from Murphy, without stating when and where

---

[10] Moreover, the fact that Oberg filed a Motion to Reopen Judgment could plausibly indicate that Oberg did not, in fact, intend to induce Tatum into an unfavorable settlement agreement.

[11] The elements of common law fraud under New York law, which mirror the elements of fraud under Connecticut law, are "the representation of a material existing fact, falsity, scienter, deception and injury."  Browning Ave. Realty Corp. v. Rubin, 615 N.Y.S.2d 360, 363 (N.Y. App. Div. 1994).

[12] Unless stated otherwise, paragraph references contained herein are to the Second Proposed Amended Complaint.

that representation took place.[13]  In paragraph 18(c), Tatum alleges that Oberg made fraudulent misrepresentations "on several occasions in 2002 and 2003," a two year span that is insufficiently broad for purposes of Rule 9(b).  See, e.g., Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003).  In paragraph 18(d), Tatum fails to specify when and where Oberg made the allegedly fraudulent representations contained therein.[14]  In its September 3 Ruling, this court had advised Tatum that he could only establish a fraud cause of action by stating the time and place of the representations alleged to be fraudulent.

Third, the allegations contained in paragraph 18(d) do not constitute "false representations" as a matter of law.  Paragraph 18(d) alleges that Oberg fraudulently "assured" Tatum that Murphy's 2002 tax returns would be received prior to a hearing on Oberg's Motion to Reopen.  Under Connecticut law, "a promise to do an act in the future, when coupled with a present intent not to fulfill the promise, is a false representation" and can be grounds for fraud.  Paiva v. Vanech Heights Const. Co., 159 Conn. 512, 515 (1970).  In this case, however, Tatum has failed to allege that Oberg had the present intent, nor facts to support an inference that she had such present intent, not to fulfill her promise to obtain the necessary discovery from Murphy prior to the hearing on the Motion to Reopen.  Paragraph 18(d) merely alleges that Oberg never

---

[13]  While Tatum alleges in the same paragraph that he notified Oberg on July 10, 2002, that Murphy's 2001 federal tax return "was missing information," the complaint is ambiguous as to the date of Oberg's allegedly fraudulent representation regarding the completeness of information obtained from Murphy in discovery.  Sec. Am. Comp. at ¶ 18(b).

[14]  While the complaint specifies that Tatum advised Oberg on November 15, 2002 and December 9, 2002, that "Murphy was hiding assets," the complaint does not specify when or where Tatum "assured [Tatum] that the error would be corrected."  Sec. Am. Comp. at ¶ 18(d).

made good on her promise to obtain tax return information prior to the hearing on Oberg's Motion to Reopen; therefore, it does not allege a "false representation" under Connecticut law.

Fourth, with respect to the allegedly fraudulent representation contained in paragraph 18(e), Tatum has not alleged that Oberg knew such statement to be false. Paragraph 18(e) states that Oberg told Tatum that "the bonds were owned by Plaintiff's minor children, when the minor children were actually only the beneficiaries and Oberg had not seen the bonds." Paragraph 18(e) alleges neither that Oberg knew her statement about "the bonds" to be false, nor that Oberg made such statement for the purpose of inducing Tatum to rely on it.

For the foregoing reasons, the fraud claim contained in Tatum's Second Proposed Amended Complaint would be unable to survive a motion to dismiss under Rule 12(b)(6). Therefore, allowing Tatum to replead his fraud claim would be futile. Tatum's Motion for Leave to Amend his fraud claim is accordingly denied.

### C.    Second Claim for Relief: Breach of Contract

In its September 3 Ruling, this court dismissed Tatum's claim for breach of contract. While the claim was couched in the language of contract, the court concluded that it was, in fact, a claim of legal malpractice. The Second Proposed Amended Complaint repeats verbatim the breach of contract claim that was dismissed in the September 3 Ruling, with the exception of two added subparagraphs stating that the defendants "[p]romised plaintiff that if concealed assets were discovered that Plaintiff could recover all of those concealed assets to the exclusion of Murphy; and . . . [f]ailed to deliver the promised result in the Motion to Reopen." Sec. Am. Comp. at ¶ 19(f),

9

(g).[15]  The defendants argue that allowing Tatum to replead his breach of contract claim would be futile, because "the plaintiff's claim is still a legal malpractice claim clothed in contract language." Mem. in Opp. at 10.  In other words, the defendants maintain that Tatum's breach of contract "claim is simply that Attorney Oberg negligently performed legal services in connection with the Motion to Reopen such that she did not achieve the plaintiff's desired result." Id.

To the extent that Tatum's Second Proposed Amended Complaint reiterates the breach of contract claim contained in the First Amended Complaint, Tatum's Motion for Leave to Replead is denied.  As this court held in its September 3 Ruling, the breach of contract claim contained in Tatum's First Amended Complaint "amount[ed] to an allegation that Oberg and FOMH were negligent in their representation of Tatum." Subparagraphs 19(a)-19(e) of the Proposed Second Amended Complaint repeat verbatim the breach of contract allegations that were dismissed in the September 3 Ruling.  Because this court has already dismissed those allegations for the reason stated supra, the court will not allow Tatum to replead them.  See Shuster v. Buckley, 5 Conn. App. 473, 478 (1985) (where a complaint alleges that an attorney "negligently performed legal services and failed to use due diligence the complaint sounds in negligence").

The next question for the court is whether Tatum's new allegation, that Oberg breached her promise regarding Tatum's recovery of concealed assets, could survive a Rule 12(b)(6) motion to dismiss. Sec. Am. Comp. at ¶¶ 19(f)-(g).  Under Connecticut

---

[15] The Proposed Second Amended Complaint contains four paragraphs labeled "19." This citation refers to the first paragraph 19 on page 10.

law, an actionable contract claim against a lawyer exists where the lawyer "breached an agreement to obtain a specific result." Caffery v. Stillman, 79 Conn. App. 192, 197 (2003) (citing Rumbin v. Baez, 52 Conn. App. 487, 491 (1999)).  The court finds that, construing the Second Amended Complaint in Tatum's favor, the allegations contained in subparagraphs 19(f) and (g) satisfy the "specific result" standard.  If Tatum did, in fact, enter into a binding agreement with the defendants to obtain the specific result described in subparagraph 19(f), and the defendants subsequently breached their obligations under that agreement, then it appears that Tatum can recover for breach of contract.  Caffery, 79 Conn. App. at 197.

The court concludes that the allegations contained in subparagraphs 19(f) and (g) amount to an actionable breach of contract claim that would survive a Rule 12(b)(6) motion to dismiss.  Thus, Tatum's Motion for Leave to Replead is granted as to those two subparagraphs.  The Motion for Leave to Replead is denied as to the remainder of Tatum's breach of contract claim.

        D.      Third Claim for Relief: Legal Malpractice

The defendants argue that Tatum's Motion for Leave to Replead his malpractice claim should be denied because (1) the malpractice claim contained in the Proposed Second Amended Complaint is identical to that contained in the First Amended Complaint; (2) a Motion for Summary Judgment has already been filed as to that claim (Doc. No. 100); and (3) discovery has already been conducted.

However, the defendants' opposition to the plaintiff's Motion for Leave to Replead (Doc. No. 115) was filed prior to the defendants' recent Motion for Ruling (Doc. No. 127).  That Motion for Ruling has been granted.  See Section II, supra.  In the

Motion for Ruling, the defendants have represented that they intend to file a new Motion for Summary Judgment, once this court rules on the scope of the claims for fraud and breach of contract that may be included in Tatum's Second Amended Complaint. Id.

Given the defendants' preference that the court rule only on the Motion for Summary Judgment that will presumably be filed after Tatum dockets his Second Amended Complaint (i.e., their preference that the court not rule on the Motion for Summary Judgment that has already been filed), it is clear that allowing Tatum to replead his malpractice claim will no longer prejudice the defendants. Tatum's Motion for Leave to Replead is thus granted as to his claim of malpractice.

### E. Fourth Claim for Relief: CUTPA

At oral argument, the plaintiff agreed to withdraw his claim for a CUTPA violation, as contained in Count Four of the Proposed Second Amended Complaint. The plaintiff's Motion for Leave to Replead is therefore denied as to that claim.

## VII. CONCLUSION

The defendants' Motion for Ruling (Doc. No. 127) is **GRANTED**. Tatum's Motion for Leave to Replead (Doc. No. 107) is **GRANTED IN PART**. Tatum's Second Amended Complaint may contain: (1) the breach of contract claim contained in ¶¶ 19(f) and 19(g) of Count Two of the Proposed Second Amended Complaint; and (2) the claim for legal malpractice contained in Count Three of the Proposed Second Amended Complaint. Tatum's Motion to for Leave to Replead is denied as to all other claims.

The defendants are given leave to file a new Motion for Summary Judgment, no later than January 21, 2010. If the defendants file such a Motion, the court intends to

terminate the pending Motion for Summary Judgment (Doc. No. 100).  However, the defendants can incorporate their Memorandum supporting the pending Motion for Summary Judgment (Doc. No. 101) into their support for any new Motion for Summary Judgment, if they so clearly indicate that they are relying on that Memorandum in part or in whole.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 18th day of December, 2009.

                                       /s/ Janet C. Hall
                                       Janet C. Hall
                                       United States District Judge