# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARY L. TATUM, Individually,<br>Plaintiff, | : | CASE NO.: 3:08CV1251 (JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARY CHRISTINA OBERG, In her<br>individual and professional capacity, and<br>FORD, OBERG, MANION and HOUCK,<br>PC.<br>      Defendants | : | JANUARY 4, 2010 |

## DEFENDANTS, MARY CHRISTINA OBERG AND FORD, OBERG, MANION AND HOUCK, P.C.'S, REPLY TO THE COURT'S ORDER TO SHOW CAUSE

The defendants, Mary Christina Oberg and Ford, Oberg, Manion and Houck, PC, respectfully object to the Court appointing an expert pursuant to Federal Rule of Evidence 706(a) for the purpose of resolving the claim of legal malpractice, as set forth in the Court's Order to Show Cause, dated December 21, 2009. Specifically, the Defendants assert that the appointing of an expert in this case is an extraordinary measure that should not be used in a case such as this where the issues are uncomplicated and the Plaintiff allowed the time for disclosing an expert to pass without requesting an extension of time in which to disclose his expert. Furthermore, appointing an expert in this case would be tantamount to the Court assisting the Plaintiff in proving his case and would unfairly shift the costs of hiring an expert to the Defendants. Therefore, for the reasons more fully set forth below, the court should not appoint an expert pursuant to Federal Rules of Evidence 706(a).

I.    **Argument**

1.    **Appointment of an Expert Pursuant to Rule 706(a) Should Occur Only Under Compelling Circumstances**

Although, the decision to appoint an expert is within the discretion of the court, this case does not present any compelling circumstances such that that appointment of an expert, pursuant to Rule 706(a), would be warranted.    See Gold v. Dalkon Shield Claimants Trust, 1998 U.S. Dist. LEXIS 22414, *3 (D. Conn. 1998) (A copy is attached as Exhibit A[1]).    The use of Rule 706(a) is infrequent and "usually only in cases where there is complex scientific evidence involved, when the parties' experts are diametrically opposed and when the adversarial system fails to provide information needed for the just resolution of a case. Gold, 1998 U.S. Dist. Lexis 22414, *3.    Moreover, "the appointment of an expert pursuant to Rule 706 is not intended to further partisan interests of any party, but to aid the Court, through the services of an impartial expert in its assessment of technical issues." Haskins v. Senior Chief Officer Luplow, et al, 2009 U.S. Dist. LEXIS 81500, 6 (W.D.N.Y. 2009) (A copy is attached).    In other words, "Rule 706 allows the court to appoint an expert witness to assist the court, not to assist a party." Carranza v. Fraas, 471 F. Supp. 2d 8, 10 (D. D.C. 2007).

As stated above, the party moving for appointment of an expert pursuant to Rule 706, must present the court with compelling reasons to do so otherwise appointment of an expert would not be appropriate. see Applegate v. Dobrovir, Oakes & Gebhardt, 628 F. Supp. 378, 383 (D. D.C. 1985) (Plaintiff's claim that he was acting pro se and was representing an unpopular

---

[1] All unreported cases cited herein shall be attached collectively as Exhibit A

2

cause was not compelling circumstance such that appointment of expert would be warranted in legal malpractice case); Carranza v. Fraas, 471 F. Supp. 2d at10 (Appointment of an expert in a legal malpractice case is unwarranted as the plaintiff have made no showing that their claims are so complex or the circumstances are so compelling).

Furthermore, considerations of cost become a factor in determining whether an expert should be appointed, as Rule 706(b) can shift the cost of paying for the expert to the non-moving party. See Haskins v. Senior Chief Officer Luplow, et al, 2009 U.S. Dist. LEXIS 81500, *6 (Appointment of expert medical witness for plaintiff permitted to proceed in forma pauperis is unwarranted due to expense associated with appointment.) (A copy is attached).  These factors weigh heavily in the determination of whether to appoint an expert pursuant to Rule 706. For example, in Gold v. Dalkon Shield Claimants Trust, 1998 U.S. Dist. LEXIS 22414, the plaintiff moved, pursuant to Rule 706, for the appointment of an expert due to her financial inability to obtain one on her own.  Gold, 1998 U.S. Dist. LEXIS 22414, *2.  The plaintiff brought suit against a company for personal injury caused by an intrauterine contraceptive device the company manufactured.  The Bankruptcy Court allowed the plaintiff to re-open her lawsuit after the company declared bankruptcy and the plaintiff's claim was not resolved through the claims process.  In denying the Plaintiff's request, the court mentioned that, "Respect for the adversarial process is a reason often cited by judges for a decision not to appoint an expert. This Court also holds great respect for the adversarial process and would not lightly interfere in its operation." Id. at *4.  The court, found that, "the circumstances of this case do not warrant such judicial intervention. The nature of the evidence involved is not so highly technical that the Court

3

requires independent expert guidance." Id. at *4. The Court also found that cost issues presented a second justification for denying the Plaintiff's motion. Id. at *4. The court noted that "although the indigence of one party need not prevent a court from appointing an expert, judges have expressed reluctance to charge all of the costs to one party, unless the non-indigent party agrees to pay." Id. at *4-5. Because, the Plaintiff indicated that she could not pay for the expert, the burden would have fallen on the defendant. Id. at *5. The court stated that it was unwilling to place the financial burden on the defendant. Id. at *5. The court held that it would be unfair to require the defendant "to pay the expense of court-appointed experts in this action, especially since this litigation does not raise any complex scientific issues which the Court needs expert guidance to understand." Id.

Further, in Carranza v. Fraas, 471 F. Supp. 2d 8 (D. D.C. 2007), a case similar to the instant matter, the court denied the plaintiffs' motion to appoint an expert in a legal malpractice case. The plaintiffs argued that their attorney failed to meet certain deadlines set by the U.S. Department of Agriculture ("USDA") to pursue settlement in their underlying case. Carranza 471 F. Supp. 2d at 9. The plaintiffs argued that "compelling circumstances" existed warranting the appointment of an expert in that the case presented demanding evidentiary issues regarding agricultural law and USDA rules and regulations. Id., at 10. In denying the Plaintiffs' motion, the court found that, "despite their characterization of this case's issues, the plaintiffs have made no showing that their malpractice claims are so complex, or that their case presents circumstances so compelling that the appointment of an expert would aid the court." Id. The court further held that "this court is no stranger to the application of administrative rules and

4

regulations or to the general rigors of litigation." <u>Id</u>. Therefore, the court held, "no expert is needed to assist the court's navigation through this case." <u>Id</u>.

The court further noted that in order for the plaintiffs to prove their legal malpractice claim, they were required to produce an expert witness. <u>Id</u>. However, the court noted that "the deadline for filing a designation of an expert witness came and went without the plaintiffs either designating a witness or filing for an extension of time to do so." <u>Id</u>. Therefore, the court held, "for the court to appoint them an expert witness under Rule 706 would be tantamount to the court assisting the plaintiffs in proving their case." (internal quotation marks omitted) <u>Id</u>. The court further noted that, "this action would be doubly inappropriate considering that the plaintiffs missed the deadline to perform the very action they are now requesting the court to take. <u>Id</u>.

The court should not appoint an expert witness in the instant matter as there are no compelling circumstances that would warrant such an extraordinary action. The issues involved in the legal malpractice claim are not so complex such that the court would require assistance in evaluating the issues. The Plaintiff's legal malpractice claim merely alleges that the Defendants were negligent in the representation of the Plaintiff during his domestic relations matter. The issue presented by the Plaintiff is whether the Defendants breached the applicable standard of care by failing to make appropriate discovery requests and failing to provide timely and accurate legal advice. These are not complex issues such that the court would require an expert to assist in "navigating through the case." <u>Carranza</u> 471 F. Supp. 2d at 10. Furthermore, if the Plaintiff cannot truly afford to pay for an expert, the responsibility for the cost hiring an expert would fall on the Defendants. As the court in <u>Gold</u> stated, it would be unfair to shift the costs entirely onto

5

the Defendants especially in a case that does not present any complex scientific issues which the court would require expert guidance to understand. See Gold 1998 U.S. Dist. LEXIS 22414, *5.

Moreover, appointment of an expert in this case would also be inappropriate as the Plaintiff allowed the time for designating an expert to come and go without requesting an extension of time. On February 13, 2009, the Court, *Hall, J.*, entered a scheduling order. (See Document No. 77). Pursuant to the Scheduling Order, plaintiff was required to disclose any and all expert witnesses and reports therefrom on June 1, 2009. (Id.) In addition, the plaintiff's experts were to be deposed on or before July 1, 2009. (Id.) As of the time of the filing of this Reply, Plaintiff has not disclosed an expert witness, nor has plaintiff requested additional time to disclose an expert witness. Therefore, if the court were to appoint an expert at this time, it would truly be "tantamount to the court assisting [the plaintiff] in proving [his] case." See Carranza, 471 F. Supp. 2d at 10. Therefore, the Defendants respectfully object to the court appointing an expert witness, pursuant to Rule 706(a), for the purpose of resolving the claim of legal malpractice.

## 2.     In the Alternative, The Defendants Request an Evidentiary Hearing to Determine the Plaintiff's Indigency

In the event, the court finds that this case does present "compelling circumstances" such that the appointment of an expert is warranted, the Defendants respectfully request an evidentiary hearing to determine the Plaintiff's actual indigency. The undersigned understands that the Court's show cause order may be due to representations by the Plaintiff's counsel that he was taking this matter pro bono. Further, Plaintiff's counsel has represented that he contacted other

6

attorneys to conduct expert reviews but that none were willing to take the matter on a similar pro bono basis.

Before the court take the extraordinary step of appointing an expert for a party represented by counsel, the undersigned respectfully asks the Court to order the Plaintiff to produce a copy of the retainer agreement entered into between the Plaintiff and his current counsel. Further, the Defendants request that the Court order the Plaintiff to produce affidavits from those attorneys who were contacted to conduct these reviews as to why they were not willing to act as experts in this matter. Finally, the undersigned asks this Court to order the Plaintiff to produce sufficient evidence of his financial condition from which this Court can determine whether the need for such appointment being contemplated exists. Finally, the defendants respectfully request an evidentiary hearing at which the evidence can be fully examined so the Court can make a determination for the need for such an appointment.

## III.    CONCLUSION

WHEREFORE, the Defendants respectfully object to the court appointing an expert pursuant to Rule 706(a) for the purpose of resolving the claim of legal malpractice. In the alternative, should the court find compelling circumstances exist, the Defendants request an

7

evidentiary hearing at which the Plaintiff would be required to produce the above requested documents.

THE DEFENDANTS,
MARY CHRISTINA OBERG AND
FORD, OBERG, MANION AND HOUCK, P.C.

/s/: Robert Cassot
Robert Cassot  (CT24094)
Stephen O. Clancy (CT27617)
Edward N. Storck III (CT27312)
MORRISON MAHONEY, LLP
One Constitution Plaza, 10th Floor
Hartford, CT 06106
Phone:  (860) 616-4441
Fax:  (860) 244-3800
Her and Its Attorneys
Email: rcassot@morrisonmahoney.com
        sclancy@morrisonmahoney.com
        estorck@morrisonmahoney.com

8

## CERTIFICATION

I hereby certify that on January 4, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court 's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Joseph N. DeFilippo, Esq.
Tracey Lane Russo, Esq.
DeFilippo & Russo LLC
4 Research Drive, Suite 402
Shelton, CT  06484
**Counsel for Plaintiff, Gary Tatum**

/s/: Robert Cassot
Robert Cassot  (CT24094)
Stephen O. Clancy (CT27617)
Edward N. Storck III (CT27312)
MORRISON MAHONEY, LLP
One Constitution Plaza, 10th Floor
Hartford, CT 06106
Phone:  (860) 616-4441
Fax:  (860) 244-3800
Her and Its Attorneys
Email: rcassot@morrisonmahoney.com
         sclancy@morrisonmahoney.com
         estorck@morrisonmahoney.com

# EXHIBIT A

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

# EXHIBIT A

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

LEXSEE



Positive
As of: Jan 04, 2010

## LYNN GOLD v. DALKON SHIELD CLAIMANTS TRUST

### No. B-82-383 (EBB)

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

### 1998 U.S. Dist. LEXIS 22414

### June 3, 1998, Decided
### June 3, 1998, Filed

**DISPOSITION:** [*1] Plaintiff's Petition to Have Court Appoint Expert Witnesses (Doc. No. 71) DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff consumer brought an action against defendant trust alleging personal injury caused by an intrauterine contraceptive device (IUD). After the manufacturer of the IUD declared bankruptcy, a reorganization plan created the trust to handle the many claims against the manufacturer. The consumer reopened her litigation after her case was not settled and sought to have expert witnesses appointed pursuant to Fed. R. Evid. 706.

**OVERVIEW:** The consumer represented that she was unable to obtain the services of an expert witness due to the financial expense involved. The defendant objected to the court appointment of experts, contending that Rule 706 should have been used only in extraordinary circumstances. The court held that the appointment of an expert was inappropriate under the circumstances of the case. The decision whether or not to appoint an expert was discretionary with the trial court. Appointment of an expert under Rule 706 was not commonplace, usually occurring only under compelling circumstances. The court determined that the nature of the evidence involved was not so highly technical that the court required independent expert guidance. Cost issues constituted a second reason the court declined the consumer's invitation to appoint experts. In the instant case, the defendant was a trust that held a fiduciary responsibility to all of the

claimants who had obtained a right to a share in the trust's funds. The court deemed it unfair to those persons to require the trust to pay the expense of court-appointed experts in the consumer's action.

**OUTCOME:** The consumer's petition to have court appointed expert witnesses was denied.

**CORE TERMS:** appoint, expert witnesses, court-appointed, appointment, scientific, adversarial process, settlement, invitation, claimants

**LexisNexis(R) Headnotes**

*Evidence > Scientific Evidence > General Overview*
*Evidence > Testimony > Experts > Court-Appointed Experts > General Overview*
[HN1]The decision whether or not to appoint an expert is discretionary with the trial court. Appointment of an expert under Fed. R. Evid. 706 is not commonplace, usually occurring only under compelling circumstances. Judges appoint experts infrequently and usually only when there is complex scientific evidence involved, when the parties' experts are diametrically opposed, and when the adversarial system fails to provide information needed for the just resolution of a case.

*Evidence > Testimony > Experts > Court-Appointed Experts > Appointment Disclosures*
*Evidence > Testimony > Experts > Court-Appointed Experts > Compensation*

[HN2]Court-appointed experts in civil cases, other than those cases implicating the just compensation clause of the Fifth Amendment, must be paid by the parties. Fed. R. Evid. 706(c). Courts have broad discretion in determining how to allocate the costs of a court-appointed expert between the parties. Although the indigence of one party need not prevent a court from appointing an expert, judges have expressed reluctance to charge all of the costs to one party, unless the non-indigent party agrees to pay.

**COUNSEL:** LYNN GOLD, plaintiff, Pro se, Southport, CT.

For DALKON SHEILD CLAIMANTS TRUST, defendant: R. Cornelius Danaher, Jr., Nancy K. Roux, Danaher, Tedford, Lagnese & Neal, Hartford, CT.

For DALKON SHEILD CLAIMANTS TRUST, defendant: Paul F. Strain, Elizabeth C. Honeywell, Venable, Baetjer & Howard, Baltimore, MD.

**JUDGES:** ELLEN BREE BURNS, SENIOR JUDGE, UNITED STATES DISTRICT COURT.

**OPINION BY:** ELLEN BREE BURNS

**OPINION**

*RULING ON PLAINTIFF'S PETITION TO HAVE THE COURT APPOINT EXPERT WITNESSES*

In 1982, the plaintiff, Lynn Gold, brought an action against A.H. Robins Company, alleging personal injury caused by the Dalkon Shield, an intrauterine contraceptive device ("IUD"), designed, manufactured, and sold by the defendant company. After A.H. Robins Company declared bankruptcy, a Plan of Reorganization ("Plan") was created in 1988 that established the Dalkon Shield Claimants' Trust ("Trust") to handle the many claims filed against the company in relation to the Dalkon Shield. Ms. Gold attempted to resolve her claim through the settlement procedure detailed in the Plan. When this process failed to resolve [*2] the matter to her satisfaction, the plaintiff was certified on December 13, 1996 by the United States Bankruptcy Court for the Eastern District of Virginia to reopen her previous litigation, filed in this court. On January 30, 1998, the plaintiff filed her second amended complaint in the reopened litigation. Now the plaintiff moves the Court to appoint expert witnesses pursuant to FED.R.EVID. 706. For the reasons set forth below, the plaintiff's petition (Doc. No. 71) is **DENIED**.

**Discussion**

The plaintiff represents that she is unable to obtain the services of an expert witness due to the financial expense involved. She argues that the Court should appoint expert witnesses because FED.R.EVID. 706 was promulgated to promote fairness when one party to a lawsuit is disadvantaged. Mem. in Supp. of Petition at 1.

The defendant objects to the court appointment of experts, contending that Rule 706 should be used only in extraordinary circumstances. Mem. in Opp'n at 4. According to the defendant, the plaintiff has failed to establish any circumstances meriting the appointment of experts and is merely utilizing her petition as a delaying tactic. Id. at 3. While the Court [*3] does not believe Ms. Gold is attempting to delay, the Court agrees with the defendant that the appointment of an expert is inappropriate under these circumstances.

[HN1]The decision whether or not to appoint an expert is discretionary with the trial court. *Applegate v. Dobrovir, Oakes & Gebhardt*, 628 F. Supp. 378, 383 (D.D.C. 1985). Appointment of an expert under Rule 706 is not commonplace, usually occurring only under compelling circumstances. *In re Joint Eastern and Southern Districts Asbestos Litigation*, 830 F. Supp. 686, 693 (E.& S.D.N.Y 1993); *Applegate*, 628 F. Supp. at 383 (citing *United States Marshals Service v. Means*, 741 F.2d 1053 (8th Cir. 1984)).

A study of federal district court judges discovered that judges appoint experts infrequently and usually only when there is complex scientific evidence involved, when the parties' experts are diametrically opposed and when the adversarial system fails to provide information needed for the just resolution of a case. Joe S. Cecil & Thomas E. Willging, *Accepting Daubert's Invitation: Defining a Role for Court-Appointed Experts in Assessing Scientific Validity*, [*4] 43 Emory L.J. 995, 1060 (1994).

Respect for the adversarial process is a reason often cited by judges for a decision not to appoint an expert. *Id.* at 1015. This Court also holds great respect for the adversarial process and would not lightly interfere in its operation. The circumstances of this case do not warrant such judicial intervention. The nature of the evidence involved is not so highly technical that the Court requires independent expert guidance.

Cost issues constitute a second reason the Court declines the plaintiff's invitation to appoint experts. [HN2]Court-appointed experts in civil cases, other than those cases implicating the just compensation clause of the fifth amendment, must be paid by the parties. FED.R.EVID. 706(c). Courts have broad discretion in determining how to allocate the costs of a court-appointed expert between the parties. Cecil and Willging, at 1045. Although the indigence of one party need not

prevent a court from appointing an expert, *see McKinney v. Anderson,* 924 F.2d 1500, 1511 (9th Cir. 1990), judges have expressed reluctance to charge all of the costs to one party, unless the non-indigent party agrees [*5] to pay. Cecil & Willging, at 1051.

In the instant case, the defendant, far from offering to pay for a court-appointed expert, objects to the appointment. Even were the Court to direct both parties to pay for the expert, the plaintiff has indicated that she cannot do so. Therefore, the burden would fall on the defendant. The Court is unwilling to place this financial burden on the defendant. The defendant is a trust which holds a fiduciary responsibility to all of the claimants who have obtained a right to a share in the trust's funds, either through litigation, arbitration, or settlement. The Court deems it unfair to those persons to require the trust to pay the expense of court-appointed experts in this ac-

tion, especially since this litigation does not raise any complex scientific issues which the Court needs expert guidance to understand.

**Conclusion**

For the foregoing reasons, the plaintiff's Petition to Have the Court Appoint Expert Witnesses (Doc. No. 71) is **DENIED.**

SO ORDERED

ELLEN BREE BURNS, SENIOR JUDGE

UNITED STATES DISTRICT COURT

Dated at New Haven, Connecticut, this 3rd day of June, 1998.

LEXSEE



Positive
As of: Jan 04, 2010

## RICHARD MILLS and DAVID P. HASKINS, Plaintiffs, v. SENIOR CHIEF OFFICER LUPLOW, et al., Defendants.

### 04-CV-00005(A)(M)

### UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

### 2009 U.S. Dist. LEXIS 81500

### March 31, 2009, Decided

**SUBSEQUENT HISTORY:** Adopted by, Summary judgment granted, in part, summary judgment denied, in part by Mills v. Luplow, 2009 U.S. Dist. LEXIS 73946 (W.D.N.Y., Aug. 20, 2009)

**PRIOR HISTORY:** Mills v. Luplow, 2009 U.S. Dist. LEXIS 81459 (W.D.N.Y., Mar. 30, 2009)

**CORE TERMS:** grievance, cause of action, declaration, county jail, inmate, summary judgment, recommend, prisoner's, prison, retaliation, mental health, jail, mental health, mental health services, appointment, recreation, isolation, compensatory, confinement, injunctive relief, punitive damages, recommendation, deprivation, involvement, therapy, Memorandum of Law, entitled to recover, deliberate indifference, psychiatric, appendices

**COUNSEL:** [*1] Richard F. Mills, Plaintiff, Pro se, Romulus, NY.

For David Haskins, Plaintiff: Brian P. Fitzgerald, LEAD ATTORNEY, Napier, Fitzgerald and Kirby LLP, Buffalo, NY.

For Luplow, Officer, Hoy, Officer, R. J. Greer, Superintendent, Mangefrida, Officer, Zipfel, Officer, Zchler, Officer, Sage, Officer, Auatin, Officer, Kelly Kozak, Wolff, Officer, Klometz, Officer, Gary Maha, Sheriff, Manley, Officer, Ridder, Officer, Klein, Officer, Mattice, Officer, Captain Conway, Officer, Stack, Officer, Itijen, Officer, Smith, Officer, Agusta Welsh, Ted Miller, Genesee County Mental Health Services, Genesee County Jail, County of Genesee, Jane Doe, John Doe 1,

John Doe 2, John Doe 3, John Doe 4, John Doe 5, John Doe, Terese Bryan, Officer Aratari, Officer Renz, Officer Creegan, Officer Cawkins, Officer Lindsay, Doctor G. Smith, P.A. Greg Groth, Defendants: Shawn P. Martin, LEAD ATTORNEY, Hurwitz & Fine, P.C., Buffalo, NY.

For Olsen, Officer, John Doe, Officer (Transport, Fred Rarick, David B. Barry, Nicole Desmond, R. P. Singh, Defendants: Shawn P. Martin, Hurwitz & Fine, P.C., Buffalo, NY.

**JUDGES:** JEREMIAH J. MCCARTHY, United States Magistrate Judge.

**OPINION BY:** JEREMIAH J. MCCARTHY

**OPINION**

**REPORT, RECOMMENDATION AND ORDER**

1

> 1    Although [*2] much of the discovery in this case has been filed under seal, this was done so to protect from public disclosure any medical records that pertain to conditions that Mills did not put into issue in this suit. Because my Report, Recommendation and Order only addresses the medical conditions Mills has placed into issue, it is not being filed under seal.

This case was referred to me by Hon. Richard J. Arcara in accordance with 28 U.S.C. § 636(b) for all pre-

trial matters (Dkt. # 208). Before me are defendants' motion for summary judgment directed at plaintiff Richard Mills ("Mills") (Dkt. # 376), and Mills' motions for appointment of counsel (Dkt. ## 449 and 467), to strike defendants' reply (Dkt. # 455), and for reconsideration (Dkt. # 456). For the following reasons, I recommend that defendants' motion for summary judgment be DENIED in part and GRANTED in part, and order that Mills' motions for appointment of counsel be DENIED, to strike be DENIED, and for reconsideration be GRANTED.

## BACKGROUND

Mills initially commenced this 42 U.S.C. § 1983 action *pro se* by complaint filed January 6, 2004 (Dkt. # 1). His claims arise from his incarceration at the Genesee County Jail from October 2003 through [*3] December 2004.

In July 2004 the complaint was amended to add plaintiff David Haskins (Dkt. # 11). Thereafter, plaintiffs were granted leave to file a second amended complaint (Dkt. # 14, 18), and a supplemental complaint (Dkt. # 31). In June 2006, they moved for leave to file a third amended complaint, which *inter alia*, sought to join the second amended and supplemental complaints and to add certain defendants to the sixteenth cause of action (Dkt. # 86). On February 8, 2007, Hon. H. Kenneth Schroeder, Jr. granted plaintiffs' motion for leave to file a third amended complaint, stating that "the proposed third amended complaint shall be accepted as the third amended complaint insofar as it seeks to name Dr. Singh and Dr. Barry as defendants. Nicole Desmond shall be added as a defendant . . ." (Dkt. # 196). The Third Amended Complaint was filed that day (Dkt. # 204).

Mills previously moved for summary judgment (Dkt. # 346). This motion was denied (Dkt. ## 415 and 441).

## DISCUSSION AND ANALYSIS

### A. Mills' Motions for Appointment of Counsel and Experts

#### 1. Appointment of Counsel

Mills requests appointed counsel because of the large number of defendants, witnesses and documents, the complexity of [*4] the dental, medical and psychiatric issues, the complexity of his claims, and his psychological disability, which prevents him from competently litigating his claims. Mills' Declaration (Dkt. # 449), P12. Mills' prior motions for appointment of counsel have been denied (Dkt. ## 23 & 28).

There is no constitutional right to appointed counsel in civil cases. However, under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See* Sears Roebuck & Co. v. Charles W. Sears Real Estate, Inc., 865 F. 2d 22, 23 (2d Cir. 1988). The decision as to whether or not to assign counsel lies clearly within the court's discretion. *See* In re Martin-Trigona, 737 F. 2d 1254, 1260 (2d Cir. 1984). The factors to be considered by the court include the following: (1) whether the indigent's claims seem likely to be of substance; (2) whether the indigent is able to investigate the crucial facts concerning his claim; (3) whether conflicting evidence implicating the need for cross-examination is the major proof presented to the fact finder; (4) whether the legal issues involved are complex; and (5) whether there are any special reasons why appointment of counsel would be more likely [*5] to lead to a just determination. *See* Hendricks v. Coughlin, 114 F. 3d 390, 392 (2d Cir. 1997). *See also* Carmona v. United States Bureau of Prisons, 243 F. 3d 629, 632 (2d Cir. 2001).

I must consider the issue of appointment of counsel carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." Cooper v. A. Sargenti Co., Inc., 877 F. 2d 170, 172 (2d Cir. 1989).

Mills has made no showing that he is incapable of investigating the facts of this case or conducting discovery. He has ably pursued discovery by filing several motions to compel (Dkt. ## 91, 158, 244) and complying the voluminous discovery exchanged into well organized appendices. Mills has demonstrated his ability to present his legal theories in his motions to strike (Dkt. ## 189, 357), for summary judgment (Dkt. ## 184 and 193, 346), and for injunctive relief (Dkt. # 25). Although Mills' claims may not be frivolous, nor is there an indication that they are necessarily likely to have merit.

While Mills indicates that he has asked his court appointed counsel in another civil matter he has pending in this District to act as his appointed [*6] counsel in this case (Dkt. # 467), Mills has failed to establish that appointment of counsel is necessary in this case. Therefore, Mills' motions for appointment of counsel are denied without prejudice. It remains Mills' responsibility to retain an attorney or to prosecute this action *pro se*. 28 U.S.C. § 1654.

#### 2. Appointment of Experts

Mills also requests court-appointed medical experts to assist in the prosecution of his action. Mills' Motion (Dkt. # 449), P2. "Pursuant to Fed. R. Evid. 706, a court may, on its own motion or on a motion by any party, appoint an expert witness. The determination to appoint an expert rests solely in the Court's discretion and is to be

informed by such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view. The appointment of an expert pursuant to Rule 706 is not intended to further partisan interests of any party, but to aid the Court, through the services of an impartial expert in its assessment of technical issues." Byng v. Campbell, 2008 U.S. Dist. LEXIS 83656, 2008 WL 4662349, *7 (N.D.N.Y. 2008).

"The Court must . . . be concerned with the substantial expense associated with appointing experts. In this regard, the mere fact that [*7] [plaintiff] has been permitted to proceed with this action in forma pauperis entitles him only to the right to proceed without prepayment of filing fees and the cost of service. . . . Under the circumstances, the Court is unable to find, at this time, that the appointment of an expert medical witness is warranted pursuant to Rule 706(a). 'As a general matter, such measures should be taken sparingly, particularly given the large volume of cases in which indigent prisoners allege the improper deprivation of medical care, and the substantial expense that defendants may have to bear if the Court does appoint an expert.'" Id. Therefore, Mills' motion for appointment of medical experts is denied, without prejudice.

**B. Mills' Motion to Strike**

Mills argues that defendants' reply in further support of their motion for summary judgment was untimely. Mills' Declaration (Dkt. # 455). In response, defendants argue that they complied with my November 10, 2008 order (Dkt. # 447) giving them until December 15, 2008, to file their reply. Declaration of Shawn Martin, Esq. (Dkt. # 459).

After defendants' motions for summary judgment were filed against Mills and Haskins, I ordered that "plaintiffs' responses [*8] to defendants' motions for summary judgment (Dkt. ## 376, 389) shall be served and filed on or before August 1, 2008; replies, if any, shall be served and filed on or before August 11, 2008." Text Order dated July 1, 2008 (Dkt. # 400) (emphasis added). Thereafter, I granted Haskins' motion (Dkt. # 419) for an extension of time to respond to defendants' motion for summary judgment and, in an effort to keep both motions on a single briefing schedule, I directed that "plaintiffs' responses to defendants' motions for summary judgment (Dkt. ## 0376, 389) shall be served and filed on or before September 1, 2008; replies, if any, shall be served and filed on or before September 15, 2008, after which time the motions (Dkt. ## 0376, 389) will be taken under advisement." Text Order dated July 24, 2008 (Dkt. # 420) (emphasis added).

Mills' response to defendant's motion for summary judgment was docketed on July 29, 2008. Consequently,

when Haskins moved for an additional extension of time to file his response, I ordered that his "response to defendants' motion for summary judgment [389] shall be served and filed on or before September 30, 2008; a reply, if any, shall be served and filed on or [*9] before October 15, 2008, after which time the motion [389] will be taken under advisement." August 21, 2008 Text Order (Dkt. # 439) (emphasis added). Several additional extensions were requested by Haskins, which were granted by similar orders, including my November 10, 2008 order which gave defendants until December 15, 2008 to file their reply to Haskins' opposition (Dkt. ## 443, 445, 447). However, the deadline for defendants' reply to Mills' opposition to their motion for summary judgment was never extended beyond September 15, 2008.

Although it is evident that defendants did not timely file their reply, Mills has failed to allege any prejudice as a result of late filing. Therefore, I deny Mills motion to strike. See Minitti v. Speiser, Krause, Nolan & Granito, P.C., 2006 U.S. Dist. LEXIS 91986, 2006 WL 3740847, *11 n.6 (S.D.N.Y. 2006) (denying motion to strike untimely reply papers because "Guimaraes does not claim any prejudice as a result of the delay, and it is unclear why any would result from the late filing of reply papers to which Guimaraes had no right of rejoinder").

**C. Mills' Motion for Reconsideration**

By Decision and Order dated December 11, 2008, I denied Mills' motion to strike Anthony Racaniello [*10] M.D.'s affidavit on the basis that it was untimely, believing that he was seeking to strike the materials submitted in opposition to his motion for summary judgment. Decision and Order dated December 11, 2008 (Dkt. # 450). To the extent that Mills is moving to strike Dr. Racaniello's affidavit submitted in support of defendants' motion for summary judgment (Dkt. # 435), I grant his motion for reconsideration. Nevertheless, I deny his motion to strike.

Mills' initial motion requested me to "screen" the affidavit of Dr. Racaniello, who was his "treating psychiatrist in August 2004." Mills' Declaration (Dkt. # 421), P14. He argued that "Doctor Racaniello is not a party to this action and has not been identified as a experct [sic] witness by the defendants nor the plaintiff. . . . Plaintiff as pro se question[s] if this affidavit of his treatment provider who was only 'contracted' to Genesee County Mental Health is proper." Id. at PP15 and 16.

Giving Mills every possible favorable inference as a pro se litigant, I will consider this a motion to strike Dr. Racaniello's affidavit. Dr. Racaniello's affidavit merely attaches his various medical records from his treatment of Mills and offers [*11] no medical opinions (Dkt. # 435). Because Dr. Racaniello was Mills' treating psychia-

trist and he offers no opinions concerning Mills' condition beyond what is contained in his medical records, I find no basis to strike Dr. Racaniello's affidavit. "Caselaw within this district provides that an expert report is not required unless [the doctor] will testify as to matters outside the scope of treatment provided." Abdul-Jabbar v. West, 2008 U.S. Dist. LEXIS 15753, 2008 WL 596884, *2 n. 3 (W.D.N.Y. 2008) (Foschio, M.J.). Therefore, upon reconsideration, I affirm my denial of Mills' motion to strike Dr. Racaniello's affidavit.

Mills also seeks reconsideration of my December 11, 2008 Decision and Order denying his request "for permission to exceed any page limits as needed in this instant proceeding." Mills' Declaration (Dkt. # 421), P10. In denying this request, I noted that "I cannot grant Mills blanket authority to exceed the page limits in this case. However, I will consider any specific future request." Decision and Order dated December 11, 2008 (Dkt. # 450), p. 4.

Mills concedes that his initial request was "admittedly vague and inartfully pled", and now clarifies that he is seeking permission to exceed the page limitations [*12] for his memorandum of law in opposition to defendants' motion for summary judgment (Dkt. # 422), which is 43 pages. [2] Mills' Declaration (Dkt. # 456), P17. Therefore, upon reconsideration, this request is granted.

> [2] Mills also seeks permission to exceed the page limitations for his declaration submitted in opposition to defendants' motion for summary judgment (Dkt. # 423). However, Local Rule 7.1 only sets page limitations for briefs or memoranda.

Mills also seeks a ruling on his request for sanctions for defendants' failure to timely provide their exhibits in support of their motion for summary judgment, which was not addressed in my December 11, 2008 Decision and Order (Dkt. # 450). According to Mills, although all summary judgment motions were to be filed by June 30, 2008, defendants sent him their exhibits a day later on July 1, 2008. Mills' Declaration (Dkt. # 421), P13. [3] Mills' alleges no prejudice from this delay.

> [3] In seeking sanctions, Mills also alleges that he received "two separate sets of exhibits for Augusta Welsh all numbered the same." Mills' Declaration (Dkt. # 421), P13. He invites the court to conduct an *in-camera* inspection of these documents. Id. I find no reason to [*13] conduct an *in-camera* review or to sanction defendants for their oversight.

Absent any showing of prejudice from Mills having received the defendants' exhibits a day late, I find no

basis to sanction defendants. Therefore, upon reconsideration, I deny Mills' request for sanctions.

### D. Defendants' Motion for Summary Judgment

#### 1. Summary Judgment Standard

"Summary judgment is a drastic procedural weapon." Garza v. Marine Transport Lines, Inc., 861 F. 2d 23, 26 (2d Cir. 1988). It is warranted "only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party." Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003).

However, [*14] while the moving party must demonstrate the absence of any genuine factual dispute, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

#### 2. Mills' Claims against the Genesee County Jail

Defendants argue that Genesee County Jail is not a proper defendant and should be dismissed. Defendants' Memorandum of Law (Dkt. # 378), p. 18. I agree. "It is well settled that, under New York law, 'departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" Pierce v. Chautauqua County, 2007 U.S. Dist. LEXIS 72960, 2007 WL 2902954, *3 (W.D.N.Y. 2007) (Curtin, J.); Latona v. Chautauqua County Jail, 2004 WL 2457797, *3 (W.D.N.Y. 2004) (Scott, M.J.) ("In [*15] New York, departments like the [Chautauqua County Jail], which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the municipality and cannot be sued"). Therefore, I recommend that defendant Genesee County Jail be dismissed from the case.

#### 3. Mills' Claims under the Americans With Disability Act and Rehabilitation Act

Mills asserts a number of claims pursuant to the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12132 and 12203, and Rehabilitation Act, 28 U.S.C. § 794. Defendants argue that these claims should be dismissed against the individual defendants as such claims are not authorized by the ADA or Rehabilitation Act. Defendants' Memorandum of Law (Dkt. # 378), Point VII. I agree. "Because the ADA and Rehabilitation Act do not provide for liability against individual defendants, plaintiff's claims under these statutes are dismissed against [the individual] defendants". Allah v. Goord, 405 F.Supp.2d 265, 279 (S.D.N.Y. 2005). See also Menes v. CUNY University of New York, 92 F. Supp. 2d 294, 306 (S.D.N.Y. 2000) ("Nor can individuals be named in their official or representative capacities as defendants in ADA or Rehabilitation [*16] Act suits.").

I also recommend that Mills' remaining claims against Genesee County and Genesee County Mental Health Services for violations of the ADA and Rehabilitation Act be dismissed. "The requirements for stating a claim under the ADA are virtually identical to those under § 504 of the Rehabilitation Act." Stated in the ADA's terms, a plaintiff is expected to show that (1) he or she is a qualified individual with a disability; (2) he or she is being excluded from participation in, or being denied the benefits of some service program, or activity by reason of his or her disability; and (3) the entity which provides the service, program or activity is a public entity." Smith v. Masterson, 538 F. Supp. 653, 657 (S.D.N.Y. 2008). "The ADA applies to state prison . . . and local law enforcement agencies." Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001). Mills has not established that he suffers from a qualifying mental impairment which substantially limits a major life activity, or that he was denied the benefits of a service, program or activity by reason of a disability.

Mills argues that he qualifies as disabled under the ADA "based upon chronic/major depression . [*17] . . as well as Bi Polar disorder." Mills' Memorandum of Law (Dkt. # 422), p. 13. "However, '[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" Menes v. City University of New York Hunter College, 578 F.Supp.2d 598, 618 (S.D.N.Y. 2008). Mills has offered no evidence indicating that his depression, or any other condition limited any "major life activity."

Mills also argues that he was denied access to mail, the law library, the commissary, the law library, and the legal program on the basis of his disability. Mills' Memo-

randum of Law (Dkt. # 422), pp. 13-14. "Quite simply, the ADA's broad language brings within its scope 'anything a public entity does.' . . . This includes programs or services provided at jails, prisons, and any other 'custodial or correctional institution.' . . . '[A]lthough [i]ncarceration itself is hardly a 'program' or 'activity' to [*18] which a disabled person might wish access,' mental health services and other activities or services undertaken by law enforcement and provided by correctional facilities to those incarcerated are 'services, programs, or activities of a public entity' within the meaning of the ADA.'" Lee, supra, 250 F.3d at 691. However, as discussed infra, Mills has failed to establish that he was denied these services. Therefore, I recommend that Mills' ADA and Rehabilitation Act claims be dismissed.

## 4. Mills' Claims Under 18 U.S.C. §§ 241, 242, 245, 1503 and 1505

Mills asserts a number of claims pursuant to 18 U.S.C. §§ 241, 242, 245, 1503 and 1505. Defendants argue that these are criminal statutes under which Mills cannot assert a private right of action. Declaration of Shawn Martin, Esq. (Dkt. # 377), P12. I agree. See Bacon v. Suffolk Legislature, 2007 U.S. Dist. LEXIS 57925, 2007 WL 2288044, *1 n.1 (E.D.N.Y. 2007) ("The Court notes that 18 U.S.C. §§ 241 and 242 are criminal statutes; thus, plaintiff has no private right of action under these laws."); The United States of America ex rel. Farmer v. Kaufman, 750 F. Supp. 106, 108 (S.D.N.Y. 1990) ("There is no explicit authority for private citizens to bring suit under [18 U.S.C. § 1503], [*19] nor will the courts imply such authority."); Dorman v. Zavatsky, 1995 U.S. Dist. LEXIS 22287, 1995 WL 451018, *3 (E.D.N.Y. 1995) (no private right of action under 18 U.S.C. § 1505); John's Insulation, Inc. v. Siska Constr. Co., 774 F. Supp. 156, 163 (S.D.N.Y. 1991) ("This federal criminal statute, 18 U.S.C.A. § 245, which permits federal prosecution for interference with a list of federally protected activities, confers neither substantive rights nor a private right of action for damages.").

## 5. Mills' Damage Claims

Defendants argue that "Mills has failed to identify any physical injury as outlined in 42 U.S.C. § 1997e(e) and thus is not entitled to the relief that he requests." Defendants' Memorandum of Law (Dkt. # 378), Point III.

"Section 1997e(e) of Title 42 provides that '[n]o federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.' That provision bars recovery of compensatory damages for mental and emotional injuries, absent physical injury, in § 1983 actions."

Nash v. Mc Ginnis, 585 F. Supp. 2d 455, 2008 WL 4898999, *6 (W.D.N.Y. 2008) (Larimer, J.). "'Courts have strictly [*20] construed this requirement, barring claims by prisoners who demonstrate solely emotional or mental injury and barring physical injury claims where the injury alleged is de minimis.'" Abdur-Raqiyb v. Erie County Medical Center, 536 F. Supp. 2d 299, 304 (W.D.N.Y. 2008) (Larimer, J.). "Section 1997e(e) applies to all federal civil actions including claims alleging constitutional violations. Because Section 1997e(e) is a limitation on recovery of damages for mental and emotional injury in the absence of or showing of physical injury, it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." Thompson v. Carter, 284 F. 3d 411, 416 (2d Cir. 2002) (emphasis added). "Section 1997e(e) purports only to limit recovery for emotional and mental injury, not entire lawsuits." Id. at 418.

Thus, even if I were to conclude that Mills had not sustained a physical injury, it would not follow that his claims must be dismissed in their entirety.

## 6. Mills' First Cause of Action: Placement in Solitary Confinement

Mills contends that Genesee County Jail Superintendent Ronald Greer, Corrections Officers Hoy, [*21] Randy Luplow and Philip Mangefrida, and Sheriff Gary Maha [4] placed him in solitary confinement on October 15, 2003 "to intimidate, harass and cause severe mental trauma in retaliation for [his] civil suit of 03-cv-00196." Third Amended Complaint (Dkt. # 204, P131). He further alleges that although he has a history of mental illness, he remained in solitary confinement until October 21, 2003 without being seen by a mental health professional, and without a hearing or any notice of charges warranting his placement in isolation (Id. at PP42, 132-139). He claims that during this time frame he was denied numerous services "such as law library, recreation, phones, date rooms and T.V., mental health treatment - rehabilitation, access to grievance protocol" (Id. at P140).

4    All of the individual defendants with the exception of defendant David Barry, M.D. (Third Amended Complaint (Dkt. # 204), P37), are sued in their individual and official capacities.

As a result of this conduct, Mills claims that he is entitled to recover under the First, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§ 241, 242, 1503 and 1505, 42 U.S.C. §§ 12132 and 12203 (ADA), [*22] 29 U.S.C. § 794 (Rehabilitation Act), 28 C.F.R. part 35, and New York

State law. Id. at P142. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at P143.

Defendants argue that Mills failed to exhaust his administrative remedies for this claim. Defendants' Memorandum of Law (Dkt. # 378), Point II. "Prisoners may not sue under Section 1983, or any other federal law, to challenge prison conditions unless they first exhaust their administrative remedies." Black v. Goord, 2007 U.S. Dist. LEXIS 77781, 2007 WL 3076998, *4 (W.D.N.Y. 2007) (Siragusa, J.). To properly exhaust a claim, "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." Johnson v. Testman, 380 F. 3d 691, 697 (2d Cir. 2004). New York has established grievance procedures for county jail inmates. See 9 N.Y.C.R.R. § 7032.4.

After filing a grievance request on November 24, 2003 (Appendix D, Vol. 1 (Dkt. # 105), p. 33; Mills' Declaration (Dkt. # 423), P5(D)), Mills' mental health grievance (# 2004-10) was filed on July 27, 2004. In it, he complained that "it has been about 10 months now and I only have a counselor for mental health", which [*23] arguably encompasses the claim at issue. Appendix D, Vol, 1 (Dkt. # 105), p. 7. According to defendants, this grievance was denied at the lower level and unsuccessfully appealed to the Commission of Corrections. Declaration of Shawn Martin, Esq. (Dkt. # 381), p. 7. Therefore, I find that Mills did exhaust his administrative remedies with respect to this claim. Nevertheless, I find that defendants are entitled to summary judgment on the merits of his claim.

Defendants argue that Mills' placement in isolation was necessary for institutional security - a legitimate penological objective - due to his suicidal statements, his history of suicidal behavior, and his refusal to allow representatives from the Genesee County Jail to contact Five Points Correctional Facility (his prior facility) regarding his mental health history and medication. Id. at Point IV(1); Affidavit of Augusta Welsh (Dkt. # 432), PP3-5; Affidavit of Ronald Greer (Dkt. # 431), P3; Affidavit of Philip Mangefrida (Dkt. # 384), Ex. 3. Defendants also argue that "Mills has not established the state of mind of jail officials to warrant relief" and that his "discomfort, if any, was not cruel and unusual and did not extend beyond [*24] what should be considered routine discomfort." Affidavit of Shawn Martin (Dkt. # 377), P20; Defendants' Memorandum of Law (Dkt. # 378), p. 10. Defendants further argue that the six days Mills remained in isolation pending his mental health evaluation does not constitute an atypical, significant hardship implicating a protected liberty interest. Defendants' Memorandum of Law (Dkt. # 378), p. 10. Moreover, they argue that Mills failed to allege that he sus-

tained an actual injury as required by 42 U.S.C. § 1997e(e).

Mills was transferred to the Genesee County Jail on October 15, 2008, from the Five Points Correctional Facility. At that time, Five Points provided the Genesee County Jail with a Health Transfer Information form which indicated that Mills was receiving mental health treatment, had previously been on suicide watch, and had attempted to commit suicide while at Five Points. Affidavit of Ronald Greer (Dkt. # 431), Ex. 6. Consistent with this history, Mills made suicidal comments during the booking process. Affidavit of Philip Mangefrida (Dkt. # 384), Ex. 3. Therefore, Mills was placed in isolation. Affidavit of Ronald Greer (Dkt. # 431), P3.

In accordance with 9 N.Y.C.R.R. § 7013.7(a), [*25] which provides that "each inmate upon admission to a facility shall undergo an initial screening and risk assessment which shall consist of a screening interview, visual assessment and review of commitment documents", Kelly Kozak, MS. Ed, a mental health clinical therapist, performed a mental health consultation with Mills on October 17, 2003. Affidavit of Augusta Welsh (Dkt. # 432), Ex. 1.

At that time, Mills refused to sign a release for his mental health records from Five Points or to disclose what medication or treatment he had been receiving. Affidavit of Augusta Welsh (Dkt. # 432), P4. Upon signing a consent for the release of his confidential information and a contract for safety wherein he indicated that he would not harm himself or anyone else, Mills was released from isolation on October 21, 2003. Id. at PP5-6.

The threshold issue on any of procedural due process claim involving an inmate "is always whether the plaintiff has a property or liberty interest protected by the Constitution". Narumanchi v. The Board of Trustees of the Connecticut State University, 850 F. 2d 70, 72 (2d Cir. 1988). "An inmate has a protected liberty interest in not being confined only if 'the deprivation [*26] . . . is atypical and significant *and* the state has created the liberty interest by statute or regulation.'" Durran v. Selsky, 251 F. Supp. 2d 1208, 1214 (W.D.N.Y. 2003) (Larimer, J.) (emphasis added). "Although determining whether a particular confinement 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' . . . will involve factual determinations. . . 'the ultimate issue of atypicality is one of law.' Among the factors to be considered are '(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement.'" Id.

(quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)).

Mills cannot establish that this six-day period in isolation constituted an "atypical and significant" deprivation of a protected liberty interest. See Johnston v. Maha, 584 F. Supp. 2d 612, 2008 WL 4823607, *2 (W.D.N.Y. 2008) (Larimer, J.) (Where plaintiff was placed in isolation for 3 or 4 days the court concluded that "although it appears that Johnston lost [*27] some privileges during his brief period of isolation, there is no basis upon which one could reasonably conclude that his conditions of confinement were unusually harsh."); Schmelzer v. Norfleet, 903 F. Supp. 632, 634 (S.D.N.Y. 1995) (holding that an "eleven day confinement in keeplock does not constitute an atypical, significant hardship implicating a protected liberty interest").

Mills argues that "the keep lock or SHU cases used by the defendants . . . are not a case in point and have no legal meaning to the law or facts of the case at bar." Mills' Memorandum of Law (Dkt. # 422), p. 8. However, the Second Circuit has made clear that Sandin's "atypical and significant hardship" standard is not limited to claims contesting conditions of disciplinary segregation: "In applying the Sandin analysis, we will not impose a novel distinction between prison restraints imposed for disciplinary and administrative purposes." Arce v. Walker, 139 F.3d 329, 335 (2d Cir. 1998). Therefore, Mills' procedural due process claim must fail.

Mills has also failed to establish an Eighth Amendment violation. [5] Although the Eighth Amendment's prohibition against cruel and unusual punishment "does not mandate [*28] comfortable prisons", Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981), the conditions of confinement must be at least "humane". Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). In order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that is "objectively, sufficiently serious" such that he was denied "the minimal civilized measure of life's necessities," and (2) a "sufficiently culpable state of mind" on the part of the defendant official, such as deliberate indifference to inmate health or safety. Id. at 834.

    5   It is undisputed that Mills was a pretrial detainee at the Genesee County Jail from October 15, 2003 until his conviction on November 17, 2004. Third Amended Complaint (Dkt. # 204), P47; Report and Recommendation of Hon. Victor E. Bianchini in Mills v. Poole, et al (06-cv-842), p. 11. "Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment rather than by the Eighth Amendment's prohibition on cruel and unusual punishment, which ap-

2009 U.S. Dist. LEXIS 81500, *

plies only to convicted prisoners. Lloyd v. Lee, 570 F. Supp. 2d 556, 570 (S.D.N.Y. 2008). Nevertheless, "because 'an unconvicted detainee's rights are at least as great as those of [*29] a convicted prisoner,' . . . courts apply the same 'deliberate indifference' test developed under the Eighth Amendment to Fourteenth Amendment claims." Id.

Contrary to Mills' allegations, he was not denied mental health treatment while in isolation. As discussed *supra*, mental health consultations were performed by Kelly Kozak, MS.Ed, a mental health clinical therapist, on October 17, 2003 and October 21, 2003. Affidavit of Augusta Welsh (Dkt. # 432), Exs. 1 and 3.

Even accepting Mills' remaining allegations that during this six-day period of isolation he was denied law library services, recreation, television and access to grievance protocols (Third Amended Complaint (Dkt. # 204), P140), I find that such deprivations over this brief period and under these circumstances do not violate contemporary standards of decency.

Additionally, the record does not establish that defendants acted with deliberate indifference to Mills' health and safety. In fact, Mills' confinement arose at least in part from his own refusals to provide the consent and information necessary for defendants to assess whether he posed a danger to himself or others. *See* Jackson v. Johnson, 15 F. Supp. 2d 341, 363 (S.D.N.Y. 1998) [*30] (plaintiff "does not allege or provide any evidence as to how 99 days of keeplock deprived him of 'the minimal civilized measure of life's necessities,' or that defendants acted with 'deliberate indifference' to his health and safety.").

Mills' first cause of action also alleges First and Sixth Amendment violations, which are not addressed in defendants' motion. "However, notwithstanding that omission, under 28 U.S.C. § 1915(e)(2)(B)(ii), [6] this Court has the power to review Plaintiffs Complaint for failure to state a claim *at any time*." Ochoa v. DeSimone, 2008 U.S. Dist. LEXIS 76256, 2008 WL 4517806, *4 (N.D.N.Y. 2008) (emphasis in original).

> 6  Mills was granted *in forma pauperis* status in this case. *See* August 20, 2004 Decision and Order by Hon. David Larimer (Dkt. # 14).

The allegations of the claim, which pertain to Mills' treatment while in jail, do not support a Sixth Amendment violation. *See* Green v. Bock Laundry Machine Co., 490 U.S. 504, 510, 109 S. Ct. 1981, 104 L. Ed. 2d 557 (1989) ("The Sixth Amendment to the Constitution guarantees a criminal defendant certain fair trial rights not enjoyed by the prosecution.").

However, Mills' First Amendment retaliation claims cannot be dismissed at this time. "A plaintiff alleging retaliatory punishment [*31] 'bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff.'" Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002). "To survive a motion to dismiss on a retaliation claim, the prisoner must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Abascal v. Fleckenstein, 2008 U.S. Dist. LEXIS 60322, 2008 WL 3286353, *7 (W.D.N.Y. 2008) (Skretny, J.). Mills alleges that he was placed in solitary confinement "to intimidate, harass and cause severe mental trauma in retaliation for [his] civil suit of 03-cv-00196." Third Amended Complaint (Dkt. # 204, P131).

"Plaintiff undisputedly has a constitutionally - protected right of access to courts." Abascal, *supra*, 2008 U.S. Dist. LEXIS 60322, 2008 WL 3286353, at *8. He also alleges that an adverse action was taken against him for exercising this right. Consequently, I find that Mills' has stated a First Amendment retaliation claim. [7] I recognize that "because of the 'ease with which [*32] a retaliation claim may be fabricated,' . . . courts 'approach prisoner claims of retaliation with skepticism and particular care.'" Colon v. Furlani, 2008 U.S. Dist. LEXIS 94154, 2008 WL 5000521, *5 (W.D.N.Y. 2008) (Larimer, J.). However, since Mills has alleged a facially sufficient claim for retaliation, and absent any attempt by defendants to address this claim in their motion for summary judgment, I recommend that Mills' claim for retaliation not be dismissed, but that the balance of his first cause of action be dismissed.

> 7  "There is an exception to the. . . PLRA preclusion of compensatory damages in the absence of physical injury that is applicable to cases where in the constitutional right that is alleged, violation arises under the First Amendment." Lipton v. County of Orange, 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004).

**7. Mills' Second Cause of Action: Denial of Access to Legal Materials**

Mills alleges that Superintendent Greer, Sheriff Maha, and corrections officers Luplow, Zipfel, Zehler, Hoy, Sage, Wolff, Klometz and Austin failed to return his legal materials until November 11, 2003. Third Amended Complaint (Dkt. # 204), PP144-15. As a result of this conduct, Mills alleges that he is entitled to recover under [*33] the First, Fifth, Sixth, Eighth and Fourteenth

Amendments to the United States Constitution, 18 U.S.C. §§ 241, 242, 1503 and 1505, 42 U.S.C. §§ 12132 and 12203, 29 U.S.C. § 794,28 C.F.R. part 35, and New York State law. Id. at P154. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at P155.

Defendants argue that Mills failed to exhaust his administrative remedies for this claim, which is otherwise meritless. Defendants' Memorandum of Law (Dkt. # 378), Point II, pp. 11-12. There is no complaint, grievance or other indication in the record suggesting that Mills complied or attempted to comply with the exhaustion requirements of the Genesee County Jail. See 9 N.Y.C.R.R. § 7032.4. However, Mills alleges that "no grievances were issued, no informal slips were completed as [he] had nothing to write with or the slips went missing in action once completed, only until about March or April of 2004 when Mills made his own carbon paper out of pencil did he obtain grievances or the slips back." Mills' Declaration (Dkt. # 423), P41.

Despite Mills' allegations, "he has presented no evidence, other than that one unsubstantiated assertion, that defendants in any way interfered [*34] with his ability to file grievances. The evidence shows, to the contrary, that [he] was able to make ample use of the grievance system, and that he filed numerous grievances, apparently without undue difficulty, during his stay at the Genesee County Jail." Johnston, supra, 584 F. Supp. 2d 612, 2008 WL 4823607 at *2. "During his period of confinement at the Genesee County Jail. . . Mills filed 16 grievances. In addition to the grievances, Mr. Mills filed a significant number of Genesee County Jail Inmate Request/Informal Complaint Forms." See Affidavit of Ronald Greer (Dkt. # 431), P12. Therefore, I find that Mills has failed to exhaust his administrative remedies with respect to this cause of action, and his second cause of action should be dismissed on this basis.

Moreover, these claims are without merit in any event. Defendants allege that on October 17, 2003 they received a request from Mills' attorney that Mills' materials be provided to him. Affidavit of Ronald Greer (Dkt. # 431), P6, Ex. 3. Mills' attorney was provided with Mills' legal documents on October 20, 2003, after Mills executed an authorization permitting defendants to release these materials to his attorney. Id. at P6, Exs. 4 and 5. Defendants [*35] argue that Mills has failed to demonstrate that any of their conduct hindered his efforts at pursuing a legal claim. Defendants' Memorandum of Law (Dkt. # 378), p. 11.

In response, Mills argues that while in isolation from October 15, 2003 to October 21, 2003, he was denied access to his personal property, legal materials (which were impermissibly confiscated), the law library, mail, paper, attorney, and writing utensils. Mills' Declaration (Dkt. # 423), PP39-46.

"Prisoners, including pretrial detainees, 'have a constitutional right of access to the courts'". Bourdon v. Loughren, 386 F. 3d 88, 92 (2d Cir. 2004). "The right, which is grounded in the guarantees of the First, Fifth, and Fourteenth Amendments, 'requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'" Wesley v. City of New York, 2006 U.S. Dist. LEXIS 73270, 2006 WL 2882972, *2 (S.D.N.Y. 2006). However, "the mere limitation of access to legal materials, without more, does not state a constitutional claim, 'as the Constitution requires no more than reasonable access to the courts.'. . . [I]n order to [*36] state a constitutional claim, a plaintiff must make a showing that []he has suffered, or will imminently suffer, actual harm; that is, that []he was 'hindered in h[is] efforts to pursue a legal claim.'" Nolley v. County of Erie, 2008 U.S. Dist. LEXIS 27686, 2008 WL 859165, *4 (W.D.N.Y. 2008) (Skretny, J.). "Thus, Plaintiff must show that []he has suffered an actual injury traceable to the challenged conduct of jail officials. A plaintiff has not shown actual injury unless []he shows that a 'nonfrivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials." Id.

Mills has not alleged, much less introduced evidence, that the alleged denial of access to courts during his brief confinement in isolation hindered his efforts to pursue any legal claim. Therefore, I recommend that his First, Fifth, and Fourteenth Amendment claims be dismissed.

Mills' second cause of action also alleges Sixth and Eighth Amendment violations, which are not addressed in defendants' motion. Notwithstanding this omission, I may review Mills' complaint for failure to state a claim. See Ochoa, supra, 2008 U.S. Dist. LEXIS 76256, 2008 WL 4517806, at *4. The allegations of the claim, which pertain to Mills' treatment while in jail, do [*37] not support a Sixth Amendment violation. See Green, supra, 490 U.S. at 510. Likewise, as discussed supra, these allegations do not support an Eighth Amendment cruel and unusual punishment claim. Therefore, I recommend that Mills' second cause of action be dismissed in its entirety.

## 8. Mills' Third Cause of Action: Failure to Protect and Supervisory Liability

Mills alleges that defendants Wolf, Manley, Ridder, Klometz, Klein, Mattice, Conway, Stack, Itijen, Smith, Aratari, Lindsey, and Cawkins "knew that he was being deprived of his legal/correspondence materials, his liberty, and failed to interveen [sic] and assist [him]." Third

Amended Complaint (Dkt. # 204), P157. He also alleges that these defendants "created serious danger to the plaintiff by failing to protect plaintiff Mills from the intentional discriminatory acts of there superiors as well as Genesee County Mental Health Workers." Id. at P159, and that "defendants failed to protect plaintiff Mills from the substantial deprivation of his rights to be free from cruel and unusual punishment, free from retaliation." Id. at P160.

As a result of this conduct, Mills claims that he is entitled to recover under the First and Fourteenth [8] Amendments to the United States Constitution, [*38] 18 U.S.C. §§ 241, 242, and 245, 42 U.S.C. §§ 12133 and 12203, 28 C.F.R. part 35, and New York State law. Id. at P154. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at P155.

      8    Presumably, Mills cites the Fourteenth Amendment as a jurisdictional basis for his Eighth Amendment claim.

Defendants argue that Mills has failed to exhaust his administrative remedies with respect to this claim. Defendants' Memorandum of Law (Dkt. # 378), Point II. Defendants also argue that this claim "merely summarizes the first two and alleges that various other defendant other Defendants were aware of the allegations contained in the first two causes of action and failed to correct them and were otherwise liable under the doctrine of respondeat superior", Declaration of Shawn Martin, Esq. (Dkt. # 381), P30, and that Mills' "conclusory allegations are insufficient to support personal liability of a supervisory defendant in an action brought under 42 U.S.C. Section 1983." Defendants' Memorandum of Law (Dkt. # 378), p. 12. In response, Mills argues that "there are two potential claims in the third cause of action, failure to protect and supervisory liability." Mills' Memorandum of [*39] Law (Dkt. # 422), p. 14.

Even if Mills could establish that he exhausted his administrative remedies for this claim, or that his failure to exhaust should be excused, defendants are entitled to summary judgment on the merits of his claim. Mills' failure to protect and supervisory liability claims arise only from the conduct alleged in the first and second causes of action. Therefore, to the extent I recommend that first and second causes of action be dismissed, I likewise recommend that Mills' third cause of action be dismissed.

With respect to Mills' surviving retaliation claim, I find that he has failed to establish defendants' personal involvement. "Personal involvement of a named defendant in any alleged constitutional deprivation is a prerequisite to an award of damages against that individual under section 1983. . . . In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. . . . As is true of other types of claims, this principle applies to causes of action claiming unlawful retaliation." Amaker v. Kelley, 2009 U.S. Dist. LEXIS 9942, 2009 WL 385413, *17 (N.D.N.Y. 2009).

Although [*40] defendants argue that the allegations are insufficient to support personal liability of these supervisory defendants because a supervisor cannot be held liable based solely upon a theory of respondeat superior, a number of the defendants are alleged to be corrections officers at the Genesee County Jail, rather than supervisory officials (see, e.g., defendant officers Wolf, Conway, Klometz, Klein, Ridder, Manley, Klometz, Mattice, Stack, Itijen, Smith, and Aratari (Third Amended Complaint (Dkt. # 204), PP14-15, 17, 20-25, 35)). In fact, Mills alleges that these defendants "knew that their superior officers and colleagues created danger to plaintiff." Third Amended Complaint (Dkt. # 204), P158 (emphasis added).

Nevertheless, the only basis for the personal involvement of these defendants in Mills' retaliation claim appears to be that they were "assinged [sic] to or working Mills housing floors." Mills' Memorandum of Law (Dkt. # 422), p. 14. "Because plaintiff has failed to make the requisite showing [of personal involvement], summary judgment in favor of [these] defendants is appropriate." Taylor v. Santana, 2007 U.S. Dist. LEXIS 18438, 2007 WL 737485, *7 (S.D.N.Y. 2007).

The only supervisory defendant alleged by [*41] Mills to have personal involvement in the constitutional deprivations appears to be defendant Cawkins. "Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring." Cicio v. Graham, 2009 U.S. Dist. LEXIS 16675, 2009 WL 537534, *7 (N.D.N.Y. 2009).

To establish Cawkins' personal involvement, Mills relies on the Genesee County Jail's log book, which states "Mills banging head on was SPRCO Calkins advised", to argue that he was on "direct notice" that he was banging his head on the wall while he was in isolation. Mills' Memorandum of Law (Dkt. # 422), p. 14. Although this may be sufficient to establish Cawkins'

personal involvement in Mills' Eighth Amendment or Due Process claims arising from his [*42] confinement in isolation from October 17, 2003 through October 21, 2003 (which I recommend be dismissed), it does not establish his personal involvement in Mills' retaliation claim. Therefore, I recommend that the third cause of action be dismissed in its entirety.

### 9. Mills' Fourth and Fifth Causes of Action: Denial of Mental Health Treatment

Mills alleges that Ted Miller, Community Services Director of Genesee County Mental Health Services, Augusta Welsh, Clinical Director of Genesee County Mental Health Services, Nicole Desmond, M.S. Forensic Coordinator at Genesee County Mental Health Services, Superintendent Greer, Sheriff Maha, Genesee County, and Genesee County Mental Health deliberately denied him mental health treatment from October 15, 2003 through September 2004. Third Amended Complaint (Dkt. # 204), P164. Mills alleges that he was only treated by social workers and not a psychologist or psychiatrist. Id. at PP165-171. He also alleges the defendants knew that he "requires alternative methods of care and treatment due to adverse medication reactions . . . . Psychotherapy is required." Id. at P172. Moreover, Mills' alleges that he was "denied. . . all mental health services other [*43] than routine checks for lethality" Id. at P177.

As a result of this conduct, Mills claims that he is entitled to recover under the Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§ 241, 242, and 245,42 U.S.C. §§ 12132 and 12203, 29 U.S.C. § 794,28 C.F.R. part 35, and New York law. Id. at PP173, 180. He seeks compensatory and punitive damages, as well as injunctive relief, and reimbursement of all medical and mental health expenses. Id. at PP174 and 181.

To establish a violation of the Eighth Amendment arising out of inadequate medical treatment, a prisoner is required to prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The "deliberate indifference" standard consists of both objective and subjective components. Hathaway v. Coughlin, 37 F. 3d 63, 66 (2d Cir. 1994), cert. denied, 513 U.S. 1154, 115 S. Ct. 1108, 130 L. Ed. 2d 1074 (1995). Under the objective component, the alleged medical need must be "sufficiently serious." Id. A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Id. "Factors that have been considered include the existence of an injury that a reasonable [*44] doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and sub-

stantial pain." Chance v. Armstrong, 143 F. 3d 698, 702 (2d Cir. 1998). "The medical condition does not have to occur immediately; it suffices if the condition presents itself in the next week or month or year." Moore v. McGinnis, 2004 U.S. Dist. LEXIS 29767, 2004 WL 2958471, *6 (W.D.N.Y. 2004) (Siragusa, J.).

Under the subjective component, the prisoner must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving the prisoner of adequate medical treatment. Hathaway v. Coughlin, 99 F. 3d 550, 553 (2d Cir. 1996). "The subjective element of deliberate indifference 'entails something more than mere negligence . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id.; see also Hernandez v. Keane, 341 F. 3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093, 125 S. Ct. 971, 160 L. Ed. 2d 905 (2005) (likening the necessary state of mind to "the equivalent of criminal recklessness"). In order to be found "sufficiently culpable," the [*45] official must "know[] of and disregard[] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837.

"If sufficiently serious, the denial of mental health care may constitute a violation of the Eighth Amendment." Selah v. N.Y.S. DOCS Commissioner, 2006 U.S. Dist. LEXIS 51051, 2006 WL 2051402, *5 (S.D.N.Y. 2006). "Here, however, there is no allegation, as required, of 'pain, discomfort or risk to health'". Id. Even assuming that Mills' mental health condition rises to the level of a serious medical need, the record is devoid of evidence from which a reasonable fact finder could conclude that defendants were indifferent to that need. As ppreviously discussed, mental health consultations were performed by Kelly Kozak, MS.Ed, a mental health clinical therapist, on October 17, 2003 and October 21, 2003, while Mills was in isolation. Affidavit of Augusta Welsh (Dkt. # 432), Exs. 1 and 3. On October 21, 2003, Mills advised Ms. Kozak that Steve Benjamin, CSW, had assisted him with eye movement desensitization reprocessing ("EMDR") therapy while [*46] he was incarcerated at Five Points. Id. at Ex. 3 Five Points reported to Ms. Kozak that Mills "did well" at their facility with EMDR therapy. Id.

On October 28, 2003, Mills declined a psychiatric assessment by a doctor because he was unable to take medications and reported that he was doing "okay". Id. at Ex. 4. Shortly thereafter, on October 30, 2003, Mills requested to be seen by mental health and was promptly seen by Ms. Kozack on October 31, 2003. Id. at Ex. 5. On November 12, 2003, Mills requested EMDR therapy and threatened to sue Genesee County if he did not. Id. at

Ex. 6. At that time Ms. Kozak advised him that Genesee County Jail provides "MH services. . . for lethality issues + to arrange psychotropic med consultations. We do not provide EMDR therapy or ongoing therapy in jail." Id. A week later, Mills made a similar demand for EMDR therapy, and at that time was informed by Ms. Kozak that "clinical directors are researching GCMH/Jail responsibility to provide EMDR therapy." Id. at Ex. 7. On November 25, 2003, Mills was evaluated by Ms. Kozak after he complained that he was having a "bad spell[]." Id. at Ex. 8. At that time he was informed by Ms. Kozak that she would keep him [*47] updated about the possibility of EMDR therapy. Id.

On December 16, 2003, Mills agreed to receive an updated psychiatric evaluation to determine whether he continued to be in need of EMDR therapy. Id. at Ex. 9. However, on January 6, 2004, Mills advised that he wanted to see Dr. Sam Adegbite to complete his psychiatric evaluation. Id. at Ex. 10. On January 23, 2004, a psychiatric evaluation was performed by Dr. Rancaniello, a consulting psychiatrist with the Genesee County Mental Health Department. Affidavit of Anthony Racaniello, M.D. (Dkt. # 435), P1, Ex. 1. As a result of his evaluation, Dr. Racaniello concluded that "EDMR Therapy was not warranted for Mr. Mills' condition." Id. D Racaniello recommended that Mills receive an "independent evaluation by a psychiatrist not connected to his current or past treatment." Id. at Ex. 1.

Despite Dr. Racaniello's recommendation, Mills was seen at the Genesee County Jail by Steven Benjamin for EMDR therapy (albeit at his own expense, see Third Amended Complaint (Dkt. # 204), P 178) on January 23, 2004, February 6 and 20, 2004, March 5 and 19, 2004, April 2, 16, and 30, 2004, May 17 and 28, 2004, June 11 and 25, 2004, July 13 and 30, 2004, August [*48] 13 and 30, 2004, October 5, 15, and 29, 2004, November 12 and 19, 2004 and December 8, 2004. Affidavit of Ronald Greer (Dkt. # 431), Ex. 8; Affidavit of Nicole Desmond (Dkt. # 433), Ex. 4 (Mills "currently seeing Steven Benjamin for EMDR").

On April 6 and June 1, 2004, Mill was scheduled to be seen by Genesee County Mental Health Services at the Genesee County Jail, but he refused. Affidavit of Augusta Welsh (Dkt. # 432), PP14 and 15, Exs. 11 and 12. On June 8, 2004, he was evaluated by Scott R.W. Grefrath, CSW, of Genesee County Mental Health Services on June 8, 2004. Id. at Ex. 13.

A chemical dependency evaluation of Mills was conducted at the Parkridge Mental Health Clinic on July 15, 2004. Affidavit of Therese Bryan (Dkt. # 434), Ex. 1. Mills was treated by Dr. Racaniello on August 18, 2004 and prescribed medication. Affidavit of Anthony Racaniello (Dkt. # 435), P3, Ex. 2. Mills was kept on medi-

cation and seen by Dr. Racaniello on September 1 and 15, 2004, October 25, 2004, and December 14, 2004. Id. at PP4-6, 8, Exs. 3-5, 7.

Mills was also seen by Nicole Desmond, MS, a Mental Health Clinical Therapist Forensic Coordinator with Genesee County Mental Health, on August 10, 17 and 24, [*49] 2004, September 17 and 21, 2004, and November 9, 2004. Affidavit of Nicole Desmond (Dkt. # 433), 3-8, Exs. 1-6.

The record demonstrates that Mills received adequate care for his mental health condition while incarcerated at the Genesee County Jail. Mills was seen by the prison's mental health staff each time he requested. As a result, "it does not appear here that plaintiff suffered any serious adverse effects as a result of the temporal gap between his request for mental health care . . . and his psychiatric examination. . . ." Swift v. Tweddell, 582 F.Supp.2d 437, 445 (W.D.N.Y. 2008) (Larimer, J.) (approximate three month gap in receiving a psychiatric examination from December 2004 through February 2005). "Although plaintiff may subjectively believe that his care was not adequate or correct, that difference of opinion does not demonstrate deliberate indifference and does not give rise to an Eighth Amendment claim." Flemming v. Wurzberger, 490 F. Supp. 2d 320, 324 (W.D.N.Y. 2007) (Larimer, J.) (finding no Eighth Amendment violation where the plaintiff was transferred to a special housing unit where there was no on-site psychiatric coverage). "Negligence, even if it constitutes medical [*50] malpractice, does not, without more, engender a constitutional claim." Chance, supra, 143 F. 3d at 703.

Mills argues that despite Dr. Racaniello's recommendation that he undergo an independent evaluation by a psychiatrist, this never occurred. Mills' Memorandum of Law (Dkt. # 422), p. 17. Although no independent psychiatric evaluation occurred, Mills continued to treat with Dr. Racaniello following his initial evaluation.

Defendants' denial of Mills' requests for EMDR therapy was based on Dr. Racaniello's opinion that it was unwarranted. Although Mills argues that EMDR therapy was warranted, "the question of what diagnostic techniques and treatments should be administered to an inmate is a 'classic example of a matter for medical judgment'; accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients." Smith v. Woods, 2008 U.S. Dist. LEXIS 22191, 2008 WL 788573, *8 (N.D.N.Y. 2008). Moreover, defendants did not prevent Mills from treating with Mr. Benjamin, albeit at his own expense. Under these circumstances, I recommend that Mills' fourth and fifth causes of action be dismissed.

2009 U.S. Dist. LEXIS 81500, *

**10. Mills' Sixth Cause of Action: Access to Courts**

Mills [*51] alleges that Superintendent Greer, Sheriff Maha, Genesee County, and Genesee County Jail have denied him sufficient legal materials and assistance. His specific complaints include that the books in the law library are "insufficient by title nine NYCRR standard", there was no free legal mail, paper or pens, no trained personnel to provide legal assistance. Third Amended Complaint (Dkt. # 204), PP183, 184, and 186. Mills alleges that these deficiencies "caused huge delays and complications on a regular basis" in his pursuit of "several state civil routes of action such as Article 78, writ of habeas corpus, and this federal matter herein", prevented him from appealing "this Court's decision herein . . . to dismiss certain causes of action of the First Amended Complaint." Id. at PP187-191.

As a result of this conduct, Mills alleges that he is entitled to recover under the First, Fifth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§ 241 and 242, and New York State law. Id. at P196. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at P197.

Defendants argue that the filing of 9 lawsuits in the past five years by Mills, and the fact that [*52] he was represented by counsel in his criminal case, demonstrate that his rights to access to the law library were not infringed. Defendants' Memorandum of Law (Dkt. # 378), pp. 15-16. Moreover, defendants argue that there is no evidence that Mills sustained any actual injury from the alleged deprivations. Id.

In opposition to defendants' motion, Mills has submitted a declaration detailing, *inter alia*, various alleged injuries as a result of the defendants' conduct. He alleges that the lack of access to case law deprived him of the opportunity to "properly asist [*sic*] counsel when there was problems with CPL 730 evals in Genesee County Court" because "counsel was completely lost with the 'appropriate law'" Mills' Declaration (Dkt. # 423), P134.

In Mills' criminal case in Genesee County Court before Hon. Robert Noonan, he was provided appointed counsel, whom he fired on December 17, 2003, when he retained his own counsel. *See* May 14, 2008 Report and Recommendation of Hon. Victor E. Bianchini in Mills v. Poole, et al (06-cv-842) (Dkt. # 83), pp. 3-4, *adopted by* Judge Arcara's Order dated June 30, 2008 (Dkt. # 93). [9] After his retained attorney was discharged on September 7, 2004, Mills [*53] was assigned counsel. Id. at p. 6.

[9]    "The Court takes judicial notice of the proceedings discussed herein and the legal documents filed in connection with those proceedings." D.A. Elia Constr. Corp. v. Damon &

Morey, LLP, 389 B.R. 314, 315 (W.D.N.Y. 2008) (Arcara, J.).

"The Second Circuit has held that 'the appointment of counsel can be a valid means of fully satisfying a state's constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts' in conformity with constitutional requirements . . . . In other words, if a state supplies an inmate with 'adequate assistance from persons trained in the law' through the provision of a court-appointed lawyer . . . , it is not also obligated to give the inmate access to a legal library." Wesley, *supra*, 2006 U.S. Dist. LEXIS 73270, 2006 WL 2882972 at *3.

Mills also alleges that "an order was issued on 8/23/04 to file an second amended complaint . . . and an order which cited numerous cases to look up an [*sic*] research. A second amended complaint was filed on 9/15/04. . . Right in the middle of all this Superintendent Ronald Greer . . . tels [*sic*] plaintiff Mills 'I will no longer be doing any research for any of the requested law cased in   [*54] my possession or any future request.'" Mills' Declaration (Dkt. # 423), P135.

Mills' allegations fail to demonstrate how he suffered any injury from defendant Greer's conduct. *See* Nolley, *supra*, 2008 U.S. Dist. LEXIS 27686, 2008 WL 859165 at *4. In fact, even if Greer's conduct did hinder his ability to file his second amended complaint, Mills was permitted to file a third amended complaint, which he does not allege was impeded by defendants' conduct.

Mills further alleges that he "filed two state court habeas corpus actions, attempted to proceed with an state court article 78, and was filing pro se motion in the State Criminal case to preserve appellate issues. Just ruled in 06-CV-00842 is that Mills did not file his Speedy trial pro se motion in time, nor did he articulate such motion right thus losing his Federal Habeas Corpus action. Further in 06-cv-00842 ruled that Mills waived insufficient trial evidence for the failure to properly preserve such at trial." Mills' Declaration (Dkt. # 423), P136.

However, in denying Mills' habeas claims arising from the alleged denial of his right to a speedy trial, the court nevertheless concluded that the delay was not "extraordinary or presumptively prejudicial." (May 14, [*55] 2008 Report and Recommendation of Magistrate Judge Bianchini, in Mills v. Poole (6-CV-842), supra, at p. 40). [10] Thus, Mills has failed to demonstrate that he sustained an actual injury by establishing that "a 'non-frivolous' legal claim had been frustrated or was being impeded' due to the actions of prison officials." Nolley, *supra*, 2008 U.S. Dist. LEXIS 27686, 2008 WL 859165, at *4.

10    Mills has appealed the Decision and Order. *See* Dkt. # 101 (6-cv-842).

Likewise, while the court concluded that Mills' insufficiency of the evidence claim was procedurally barred, "in the alternative, [it found that] the legal insufficiency claim may be dismissed on the merits." (May 14, 2008 Report and Recommendation of the Judge Bianchini, in Mills v. Poole (6-cv-842), *supra*, p. 23). Thus, Mills has failed to establish an actual injury. See Nolley, *supra*, 2008 U.S. Dist. LEXIS 27686, 2008 WL 859165, at *4.

Mills also alleges that "at one point in the State Criminal Case in 2004 [he] considered proceeding pro se but due to the alck [*sic*] of proper law research materials at the Genesee County jail [he] was unable to intellignetly [*sic*] make a decision like this in fear of not haveing [*sic*] access to case law." Mills' Declaration (Dkt. # 423), P137. "The Second Circuit [*56] . . . . has previously expressed deep skepticism about the proposition that 'even if the state provides adequate legal services to prisoners, complete libraries must still be maintained to serve those who do not wish to be represented by counsel.' . . . Although the circuit recognized 'that the right to represent oneself in criminal proceedings is protected by the Sixth Amendment,' it stated that 'the right does not carry with it a right to state-financed library resources where state-financed legal assistance is available.' . . . This view accords with those of most other circuits, which have found that defendants who voluntarily decline publicly funded counsel and choose to represent themselves have no constitutional right of access to a law library". Wesley, *supra*, 2006 U.S. Dist. LEXIS 73270, 2006 WL 2882972 at *3.

Because Mills would not have a constitutional right to access to a law library even if he had decided to decline appointed counsel and proceed *pro se* in his criminal case, this claim fails. Therefore, I recommend that Mills' sixth cause of action be dismissed.

## 11. Mills' Seventh Cause of Action: Release of Confidential Medical Information

Mills alleges that the Genesee County Jail lacks a written protocol [*57] for sick call and mental health care visits, and that it was the official policy of Sheriff Maha and Superintendent Greer that inmates disclose to their floor officers their confidential medical and mental health issues in order to receive treatment. Third Amended Complaint (Dkt. # 204), PP199-201. He also alleges that there were an insufficient number of doctors available, which led to him being denied medical attention for days. Id. at P203.

As a result of this conduct, Mills alleges that he is entitled to recover under the Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§ 241 and 242, 42 U.S.C. §§ 12132; and New York State law. Id. at P204. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at P205.

There is no complaint, grievance or other indication in the record that Mills complied or attempted to comply with the exhaustion requirements of the Genesee County Jail for this claim. *See* 9 N.Y.C.R.R. § 7032.4. Mills alleges that he "attempted to file a grievance on the issue of medical confidentiality but none was received, the slips went missing, or point blank were not issued." Mills' Declaration (Dkt. # 423), P138.

Despite [*58] Mills' allegations, "he has presented no evidence, other than that one unsubstantiated assertion, that defendants in any way interfered with his ability to file grievances. The evidence shows, to the contrary, that [he] was able to make ample use of the grievance system, and that he filed numerous grievances, apparently without undue difficulty, during his stay at the Genesee County Jail." Johnston, *supra*, 584 F. Supp. 2d 612, 2008 WL 4823607 at *2. See Affidavit of Ronald Greer (Dkt. # 431), P12 ("During his period of confinement at the Genesee County Jail . . . Mills filed 16 grievances. In addition to the grievances, Mr. Mills filed a significant number of Genesee County Jail Inmate Request/Informal Complaint Forms."). Therefore, I recommend that Mills' seventh cause of action be dismissed on this basis.

However, if Mills *had* properly exhausted this claim, I would recommend denying defendants' motion insofar as it seeks to dismiss Mills' Fourteenth Amendment claim that his confidential medical information was impermissibly disclosed. [11] Defendants argue that the right to privacy of medical records is neither fundamental nor absolute and that Mills waived his right to privacy by instituting a suit against [*59] the state (Mills v. Duyssen (03-cv-11096(A)(S)) where he put his medical condition at issue. Defendants' Memorandum of Law (Dkt. # 378), p. 17. I disagree with defendants. Unlike the situation in Crawford v. Manion, 1997 U.S. Dist. LEXIS 4237, 1997 WL 148066, *1 (S.D.N.Y. 1997) (relied upon by defendants), the medical information at issue in Mills' complaint was not released in connection with a pending suit. Rather, he complains of the sick call procedures at the Genesee County Jail, which required inmates to disclose their confidential medical issue. Third Amended Complaint (Dkt. # 204), PP199-202.

11    To the extent that this cause of action alleges that Mills was denied adequate medical treatment (Eighth Amendment claim), this claim is addressed in the fourth, fifth and ninth causes of action, and will not be repeated herein.

Defendants also argue that "when an inmate requests to see the doctor or mental health he places his name on a list. Nothing more is required and no confidential information need be disclosed to the floor officers." Declaration of Shawn Martin, Esq. (Dkt. # 381), P50, Ex. C, Deposition Transcript of Terese Bryan, p. 316 ("Q. . . . If any -- inmate wanted to be seen by mental health, how -- [*60] how did that take place? A. They filled out a slip saying I want to be seen by mental health. And the corrections officer would put it in the mental health mailbox."). However, defendants' argument is belied by their own rules, which provide that "if you wish to see the Jail Medical Staff give your name to the duty officer, and explain to him the nature of your illness. He will place your name on the 'Sick Call' list." Mills' Declaration (Dkt. # 423), P139; Appendix F, Volume 1 (Dkt. # 117), Ex. 4.

Defendants argue that to the extent the procedure impinged upon Mills' rights of privacy, their actions were reasonably related to penological interests: "If an inmate did not request to see the jail medical there would be no indication that they would need to be brought to the medical unit. Simply requesting to see the doctor is not an infringement of any right of privacy." Defendants' Memorandum of Law (Dkt. # 378), p. 18. While inmates have a constitutional right to privacy against disclosure of their medical records and condition, "prison officials can impinge on that right . . . to the extent that their actions are 'reasonably related to legitimate penological interests'". Powell v. Schriver, 175 F. 3d 107, 112 (2d Cir. 1999); [*61] see Nolley v. County of Erie, 776 F. Supp. 715, 729, 731 (W.D.N.Y. 1991) (Curtin, J.). "Courts must evaluate four factors in making the reasonableness determination: whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests." Salahuddin v. Goord, 467 F. 3d 263, 274 (2d Cir. 2006).

"Prison authorities cannot rely on general or conclusory assertions to support their policies. Rather, they must first identify the specific penological interests involved and then demonstrate both that those specific interests are the actual bases for their policies and that the policies are reasonably related to the furtherance of the identified interests. An evidentiary showing is required as to each point." Nolley, supra, 776 F. Supp. at 732 (emphasis added).

Because defendants have introduced nothing other than an attorney affidavit, they [*62] have not satisfied

their burden of establishing the reasonableness of their sick call procedure. Therefore, if this claim had been properly exhausted, I would recommend that it not be dismissed.

### 12. Mills' Ninth Cause of Action: Denial of Adequate Dental Care

Mills alleges that defendants Sheriff Maha, Superintendent Greer, Corrections Officers Zipfel, Luplow and Zehler, Genesee County and Terese Bryan repeatedly denied him access to a dentist for extended periods of time, which resulted in him being left in severe pain and discomfort for weeks and months. Third Amended Complaint (Dkt. # 204), PP215-226.

As a result of this conduct, Mills alleges that he is entitled to recover uunder the Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§ 241 and 242, 42 U.S.C. §§ 12132, and New York State law. Id. at 11227. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at P228.

Defendants argue that there is no evidence that they acted with deliberate indifference to Mills' dental condition. Defendants' Memorandum of Law (Dkt. # 378), pp. 18-20. In response, Mills argues that "to be fair, Plaintiff needed some filing [sic] work done, due to [*63] inattention by the Jail Staff from 10/16/2003 to at least mid to late 2004 caused Mills teeth to break down to the gums." Mills' Declaration (Dkt. # 423), P147(D).

On April 2, 2004, 2004, Mills informed Nurse Bryan that he broke a tooth while eating, but stated that it was relieved by Excedrin Migraine tabs. Affidavit of Terese Bryan (Dkt. # 434), P4. As a result, Mills was placed on a list to see the dentist. Id.

On June 11, 2004 Nurse Bryan saw Mills for a complaint that he had broken another tooth while eating. Id. at P5, Ex. 4. Mills was given Motrin and theragesic cream and advised to see medical staff if he felt that something stronger was needed. Id. Mills was seen by a dentist on June 28, 2004, and was given new fillings on August 31, 2008, on his second visit to the dentist. Id. at PP6 and 7, Ex. 5.

"'[M]edical officers have wide discretion in treating prisoners, and Section 1983 is not designated to permit federal courts to interfere in the ordinary medical practices of state prisons.' . . . Federal courts are generally hesitant to second guess medical judgments and to constitutionalize claims which sound in state tort law. . . . So strong is this view that determinations of [*64] medical providers concerning the care and safety of patients are given a 'presumption of correctness.'" Smith, supra, 2008 U.S. Dist. LEXIS 22191, 2008 WL 788573 at *9. Even assuming that Mills' tooth condition constitutes suffi-

ciently serious medical condition, I find that Mills has not overcome the presumption of correctness defendants actions are entitled to.

Although Mills argues that he "is entitled to caps, filings [*sic*], and the like as a matter of law" (Mills' Declaration (Dkt. # 423), P158), "the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance, supra*, 143 F. 3d at 703.

I find that Mills has failed to raise a triable issue of fact as to defendants' deliberate indifference. Deliberate "indifference is manifested by . . . by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle, supra*, 429 U.S. at 104. Although there was an approximately two month delay between Mills' initial complaint and him being seen by a dentist, I do not find that Mills could establish that defendants were deliberately indifferent to his dental needs. [12] Mills was placed on [*65] a list and given the first available dental appointment at the time he identified the problem. Affidavit of Terese Bryan (Dkt. # 434), P4. In the interim, he was given pain relievers. Mills was advised to contact the medical staff if his pain was not alleviated by the pain relievers. Id. at Ex. 4. However, he informed Nurse Bryan that his pain was relieved by the pain relievers. Id. at P4.

> [12] Mills argues that defendants' delay in treating his dental condition began when the initial health form was completed on October 16, 2003, which indicated that his "teeth were in good condition" but also stated "broken tooth lower right jaw". Mills' Declaration (Dkt. # 423), PP147(C), 156; Appendix C, Volume 19 (Dkt. # 271), Ex. 1. However, he concedes that his first request for dental care was on May 28, 2004. Id. at P147.

Mills further argues that defendants "have not produced any written sick call procedure or policy for dental, and the defendants have no documentation at all that dental appointments were made, or who they were made by." Mills' Declaration (Dkt. # 423), P157. However, the record establishes that Mills was treated on two occasions by an outside dentist.

Therefore, I recommend that [*66] Mills' ninth cause of action be dismissed.

### 13. Mills' Tenth Cause of Action: Denial of Access to Grievance Forms

Mills alleges that Superintendent Luplow and corrections officers Maha, Zehler, Zipfel, and Cawkins denied him access to the Genesee County Jail's grievance procedure by denying him access to grievance forms.

Third Amended Complaint (Dkt. # 204), PP230-237. In response, defendants argue that Mills has failed to exhaust his administrative remedies for this claim, and that in any event, there is no constitutional right to a grievance procedure. Defendants' Memorandum of Law (Dkt. # 378), Point II, pp. 20-21.

As a result of this conduct, Mills alleges he is entitled to recover under the First, Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§ 241 and 242, 42 U.S.C. §§ 12132, 28 CFR part 35 [13]; and New York State law. Id. at P238. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at P239.

> [13] "28 CFR, Part 35 was adopted for the purpose of effectuating subtitle A of title II of the ADA, which is what is involved in this case and which prohibits discrimination on the basis of disability by public entities." [*67] Outlaw v. City of Dothan, Alabama, 1993 U.S. Dist. LEXIS 21063, 1993 WL 735802, *4 (M.D.Ala. 1993).

There is varying authority on whether there is a constitutional right to a grievance procedure. *Compare* Chadwick v. Mondoux, 2007 U.S. Dist. LEXIS 72881, 2007 WL 2891655, *6 (N.D.N.Y. 2007) ("Courts have consistently held that because grievances procedures are undertaken voluntarily by the New York and other states, they are not constitutionally required. Because the grievance procedures are not constitutionally required, a violation of those procedures or the failure to enforce them does not give rise to a claim under section 1983"), Nolley, supra, 2008 U.S. Dist. LEXIS 27686, 2008 WL 859165 at *3 ("The 'occasional failure of prison personnel to provide plaintiff with grievance forms does not constitute a cognizable claim under § 1983'"), Harnett v. Barr, 538 F. Supp. 2d 511, 522 (N.D.N.Y. 2008) ("It has been held that because grievance procedures are undertaken voluntarily by the State, refusal to process a grievance or the improper handling of a grievance does not by itself rise to the level of a constitutional violation"), Johnson v. New York City Department of Health, 2008 U.S. Dist. LEXIS 104065, 2008 WL 5378124, *3 (S.D.N.Y. 2008) ("even if Jenkins is correct that inmate medical complaints are knowingly excluded [*68] from the institutional grievance process at Rikers Island, that allegation does not state a constitutional claim,"), Liggins v. Parker, 2007 U.S. Dist. LEXIS 71054, 2007 WL 2815630, *17 (N.D.N.Y. 2007) ("The plaintiff's allegations regarding the lack of a meaningful grievance procedure. . do not rise to a level of constitutional significance"), *with* Benitez v. Locastro, 2008 U.S. Dist. LEXIS 87452, 2008 WL 4767439, *11 (N.D.N.Y. 2008) ("Notwithstanding some recent District Court caselaw suggesting otherwise, the Second Circuit in [Franco v.

Kelly, 854 F. 2d 584 (2d Cir.1988)] was clearly placing a prisoner's right of redress of administrative grievances on par with a prisoner's right to seek redress in judicial forums when it held that '[l]ike the right of access to the courts, the right to petition is substantive rather than procedural and therefore 'cannot be obstructed regardless of the procedural means applied.'" . . . and further noting that 'intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that . . . section 1983[is] intended to remedy.'")

Even accepting the court's rationale in Benitez, supra, "to establish standing for a claim for denial of right of access, an inmate must [*69] show that he has suffered an actual injury traceable to the challenged conduct of prison officials-that is, that a 'nonfrivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials." Benitez, supra, 2008 U.S. Dist. LEXIS 87452, 2008 WL 4767439 at *12. Mills has failed to establish that defendants' alleged refusal to process his grievances resulted in some prejudice to his filing a nonfrivolous legal action.

While Mills argues that the denial of access to grievance forms has prevented him from exhausting his claims in the this suit, at his deposition Mills only specifically identified several claims he was prohibited from grieving, including recreation, cold lunches at lunchtime, and insufficient heat. Declaration of Shawn Martin, Esq. (Dkt. # 381), Ex. B, pp. 163-164. However, Mills does not assert claims for cold lunches and insufficient heat in this case. Further, as argued by defendants (Declaration of Shawn Martin, Esq. (Dkt. # 381), P62), Mills' claim for cold lunches in Mills v. Bryan, 06-CV-751 was dismissed with prejudice by Judge Skretny, who found that "the provision of cold food is not, by itself, a violation of the Eighth Amendment." February 8, 2008 Decision [*70] and Order (Dkt. # 6), p. 21. Moreover, although Mills alleges that he was prohibited from filing a grievance regarding his complaints about recreation, he did file a grievance concerning at least one of his complaints about recreation. See Grievance No. 2004-21, Appendix C, Volume 2 (Dkt. # 90), pp. 206-207 (complaining of being stripped searched during recreation).

Mills also alleged that the filing of his mental health grievance was delayed for four or five months. Declaration of Shawn Martin, Esq. (Dkt. # 381), Ex. B, pp. 163-164. However, defendants do not challenge his lack of mental health care claims (fourth and fifth causes of action) as being unexhausted. Therefore, I recommend that Mills' tenth cause of action be dismissed.

**14. Mills' Eleventh Cause of Action: Retaliation**

Mills alleges that defendants Miller and Welsh have retaliated against him by denying him mental health services for the filing of this action and a prior action (03-

CV-00196). Third Amended Complaint (Dkt. # 204), PP241-242. He alleges that he was left with no "treating psychologist or psychiatrist for over nine (9) months, had to get private care, this continued until plaintiff won a grievance some eight [*71] months later, in August or September of 2004". Id. at P244.

As a result of this conduct, Mills alleges that he is entitled to recover under the Eighth and Fourteenth Amendments to the United States Constitution, [14] 18 U.S.C. §§ 241 and 242, 42 U.S.C. §§ 12132 and 12203, 29 U.S.C. § 794,28 CFR part 35, and New York State law. Id. at P247. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at P248.

> 14 Reading Mills' Third Amendment Complaint liberally as a pro se litigant, I will interpret it as asserting a First Amendment retaliation claim.

Defendants argue that "Mills makes bare assertions that he was retaliated against for his previous lawsuit. However, these allegations are not supported by the facts or the law." Defendants' Memorandum of Law (Dkt. # 378), P. 22. "To survive summary judgment, 'a plaintiff asserting First Amendment retaliation claims must demonstrate the existence of a question of fact that (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Suarez v. Kremer, 2008 U.S. Dist. LEXIS 73753, 2008 WL 4239214, *9 (W.D.N.Y. 2008) [*72] (Scott, M.J./Arcara, J.).

"A prisoner's retaliation claim must also be examined with 'skepticism and particular care.' The Second Circuit has cautioned that retaliation claims by prisoners are 'prone to abuse' as '[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes.' Thus, a prisoner's claim of retaliation must be supported by specific and detailed factual allegations. . . and must demonstrate that challenged conduct was a substantial or motivating factor in adverse actions taken by the prison officials. The alleged retaliation must be more than de minimis; that is, it must be sufficient to deter a similarly situated person of ordinary firmness from exercising his or her rights." Id.

"The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." Suarez, supra, 2008 U.S. Dist. LEXIS 73753, 2008 WL 4239214 at *10. However, Mills has failed to submit any evidence of a causal connection between the filing of his suits and the denial of mental health care treatment. Instead, he merely relies on the allegations in the second, fourth, and fifth causes of action, and on an undated e-mail from Terese [*73] Bryan to an individual identified as Scooter in which she

states: "Where did the decision end up concerning Mr. Mills and an 'outside' psych eval? . . . . I know that Tony doesn't care to get involved with this mess, but we need some guidance as to where else we can have him evaluated." Appendix G, Volume 1 (Dkt. # 142), P. 120. As previously discussed, the mental health treatment provided to Mills while incarcerated in the Genesee County Jail was not deficient.

Therefore, I recommend that Mills' eleventh cause of action be dismissed.

### 15. Mills' Twelfth Cause of Action: Denial of Recreation

Mills alleges that Genesee County Jail denied him sufficient recreation while he was incarcerated. Third Amended Complaint (Dkt. # 204), P250. He claims that "there is a indoor room with nothing to do at all. There is a SWUARE [sic] room with mats on a small part of the floor and said room has no more than one 400 square foot", that the windows in this room "are usually closed in the winter months", that he did not receive outdoor clothing to wear in this room which is not heated, and that he was strip searched before entering this room. Id. at PP 250-255. He also alleges that he "did not go to recreation [*74] because he] can do more in his cell, [he] can at least do pull ups on the bars for the showerrod [sic]." Id. at P253.

As a result of this conduct, Mills alleges that he is entitled to recover under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, [15] 18 U.S.C. §§ 241 and 242, and New York State law. Id. at P256. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at P257.

15   Reading Mills' Third Amendment Complaint liberally as a *pro se* litigant, I will interpret it as asserting a First Amendment retaliation claim.

While Mills did file complaints concerning this claim (Dkt. # 110 (Appendix D, Vol. 3), pp. 1-3), he contends that defendants failed to provide him grievance forms to pursue it (Dkt. # 184, Affidavit, P6). However, Mills did file a grievance concerning being strip searched during recreation. *See* Appendix C, Volume 2 (Dkt. # 90), pp. 206-207. Nevertheless, even assuming that Mills had exhausted this claim, I would recommend dismissing it on its merits.

"Exercise is a basic human need protected by the Eighth Amendment to the United States Constitution." Dabney v. McGinnis, 2006 U.S. Dist. LEXIS 27667, 2006 WL 1285625, *4 (W.D.N.Y. 2006) (Arcara, J.). [*75] "However, not every deprivation of exercise amounts to a constitutional violation. Rather, a plaintiff must show that he was denied all meaningful exercise for

a substantial period of time. Factors to consider in making this determination are: (1) the duration of the deprivation; (2) the extent of the deprivation; (3) the availability of other out-of-cell activities; (4) the opportunity for in-cell exercise; and (5) the justification for the deprivation." Id.

Defendants argue that this cause of action should be dismissed because it is brought against the Genesee County Jail which is not a proper defendant. Affidavit of Shawn Martin, Esq. (Dkt. # 381), P73. I agree, for reasons previously discussed. Therefore, I recommend dismissal of Mills' twelfth cause of action on this basis.

Defendants also argue that by his own admission, Mills was offered recreation, but chose not to participate. Id. at P72. Mills does not argue that he was denied access to recreation. In fact, he concedes that he is able to exercise in his cell. Third Amended Complaint (Dkt. # 204), P253). Rather, his claim appears to center on the lack of outdoor recreation (Mills' Declaration (Dkt. # 423), PP164 and 166), but [*76] he has failed to establish that this rises to the level of an Eighth Amendment violation. *See* Liggins, *supra*, 2007 U.S. Dist. LEXIS 71054, 2007 WL 2815630 at *19 ("While it is true that inmates at the HCJ are not provided with an outdoor exercise area, in light of practical constraints, they are free to exercise both in their cells and anywhere else in the jail facility during the sixteen hours that they were permitted to remain outside of their cells.").

Mills relies on 9 N.Y.C.R.R § 7028.2(a), governing the operation of county jails (Mills' Memorandum of Law (Dkt. # 422), p. 29), which provides that "all exercise periods shall be held in the outdoor exercise area, except during inclement weather when exercise must be held in the indoor exercise area. . ." "The violation of a state law regulation, standing alone, however, does not arise to a level of constitutional significance actionable under section 1983." Liggins, *supra*, 2007 U.S. Dist. LEXIS 71054, 2007 WL 2815630 at *20. Therefore, I find that no reasonable factfinder could conclude that Mills' Eighth Amendment rights were violated in this regard.

Moreover, as argued by defendants (Affidavit of Shawn Martin, Esq. (Dkt. # 381), P70), Mills fails to allege that he suffered any injury as [*77] a result of the denial of outdoor recreation. He only broadly alleges that "inmates suffer medical issues related to the denial of recreation such as those listed in the Cases cited in the Memorandum of Law." Mills' Declaration (Dkt. # 423), PP167. Because Mills has not alleged an actual physical as required by 42 U.S.C. § 1997e(e), I also recommend that this cause of action be dismissed to the extent that it seeks monetary relief for any mental or emotional injury. *See* Nash, *supra*, 585 F. Supp. 2d 455, 2008 WL

4898999 at *6. Therefore, I recommend that Mills' twelfth cause of action motion be dismissed.

**16. Mills' Sixteenth Cause of Action: Release of Mills' Medical Records** [16]

> 16  The thirteenth cause of action is asserted only by Haskins. The fourteenth and fifteenth causes of action are omitted from the Third Amended Complaint.

Mills alleges that defendants Miller, Welsh and Desmond "somehow got a court order to release [his] personal mental health records" Third Amended Complaint (Dkt. # 204), P268. He also alleges that defendants Dr. Barry and Dr. Singh "not only obtained the plaintiffs [sic] confidential mental health records with out written consent but also exposed the past confidential material of [*78] the plaintiff in two Court Ordered CPL 730 evals." Id. at P271.

As a result of this conduct, Mills alleges that he is entitled to recover under the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§ 241 and 242, and New York State law. Id. at P280. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at P281.

Defendants argue that they are entitled to quasi-judicial immunity because they were acting pursuant to the orders of Judge Noonan. Defendants' Memorandum of Law (Dkt. # 378), pp. 23-24. Additionally, defendants Miller and Welsh argue that they are entitled to summary judgment because as supervisory officials they were not personally involved in this matter. Declaration of Shawn Martin, Esq. (Dkt. # 381), P79.

In Mills' criminal proceeding, Judge Noonan directed that Mills undergo a psychiatric evaluation pursuant to N.Y. Crim P. Law ("CPL") Article 730 to determine whether he was competent to stand trial. Appendix C, Vol. 24 (Dkt. # 342), Ex. 3. In order to facilitate this examination, by letter dated June 16, 2004, defendant Desmond requested an order to permit the release of Mills' mental health records to Drs. [*79] Singh and Barry, the psychiatrists retained to conduct the competency evaluation. Id. at Ex. 2; Affidavit of Nicole Desmond (Dkt. # 383), P10. Consequently, Judge Noonan issued an Order dated June 24, 2004, directing Genesee County to release Mills' records to the examining psychiatrists. Id. at Ex. 4.

N.Y. Mental Hygiene Law § 33.13(c)(1) provides that confidential medical records may be released pursuant to court order. In this instance, defendants were merely acting pursuant to Judge Noonan's order authorizing the disclosure of Mills' records. While Mills alleges that defendants Miller, Welsh and Desmond "trans-

gressed the statutorily granted authority and transgressed the original court order to have the Article 730 evaluation done" (Mills' Memorandum of Law (Dkt. # 422), p. 31), he has offered no evidence to support this allegation.

Defendant Desmond did request an order from Judge Noonan to release Mills' medical records. However, this was not a transgression of her authority, but rather because "in order to accomplish the examination. . . the release of Mr. Mills' [sic] was required." Affidavit of Nichole Desmond (Dkt. # 433), P10.

Mills also alleges that defendants "were not statutorily [*80] authorized to include [his] private files in the 730 reports, not authorized by statute to produce the reports on no [sic] court approved forms". Mills' Declaration (Dkt. # 423), P186. However, there is no indication in the report prepared by Drs. Singh and Barry that his private medical files were attached. See Appendix C, Vol. 24, Exs. 5 and 6. Moreover, even if the reports were not in the prescribed form, they were in substantial compliance with N.Y. CPL § 730.10(8) as they contained the required information. See People v. Kane, 6 A.D. 3d 876, 877, 774 N.Y.S.2d 451 (3d Dep't. 2004) ("while defendant also takes issue with the form of the reports prepared by the psychiatric experts, we do not find them deficient inasmuch as they complied with the requirements of CPL 730.10(8)"). Furthermore, these arguments are directed at defects in the reports prepared by Drs. Singh and Barry, which go to the propriety of Judge Noonan's competency determination. This does not alter the fact that Mills' mental health records were released and the competency reports were prepared pursuant to Judge Noonan's orders.

Mills argues that Judge Noonan's orders were invalid because no hearings were held on the release of his [*81] medical records and no notice was provided to Mills or his attorney. Mills' Declaration (Dkt. # 423), PP177-178, 180-185. Even assuming this to be true, defendants are entitled to immunity as to Mills' individual capacity claims [17] for their conduct which was performed pursuant to Judge Noonan's orders. See Hunter v. Clark, 2005 U.S. Dist. LEXIS 45144, 2005 WL 1130488, *2 (W.D.N.Y. 2005) (Larimer, J.) (holding that court-appointed psychiatrists were entitled to immunity for their conduct in completing competency exams and furnishing written reports; citing cases). Contrary to Mills' position (Mills' Memorandum of Law (Dkt. # 422), p. 35), there is no evidence that these defendants' acts violated clearly established statutory and constitutional law. Additionally, although Mills argues that defendants failed to plead immunity as an affirmative defense (Mills' Memorandum of Law (Dkt. # 422), p. 33), defendants' answer to the Third Amended Complaint does in fact plead immunity as an affirmative defense. Answer to the Third Amended Complaint (Dkt. # 215), PP70 and 72.

17  "Immunity, either absolute or qualified, is a *personal* defense that is available only when officials are sued in their individual capacities; '[t]he [*82] immunities [officials] enjoy when sued personally do not extend to instances where they are sued in their official capacities'" Almonte v. The City of Long Beach, 478 F. 3d 100, 106 (2d Cir. 2007) (emphasis in original).

Moreover, defendants argue that the claims against defendant Welsh, the Director of Clinical Services with Genesee County Mental Health, and defendant Miller, the Community Services Director of Genesee County Mental Health, should be dismissed because they had no personal involvement in the disputed conduct. However, defendant Miller investigated Mills' complaints regarding the competency exam and prepared a written report (Appendix G, Volume 1 (Dkt. # 142), Ex. C, p. 61.), which is sufficient to establish personal involvement. *See* Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1234 (S.D.N.Y. 2003) ("Personal involvement will be found. . . if an official acts on a prisoner's grievances or otherwise responds to them."). Nevertheless, Mills does not dispute the lack of personal involvement of defendant Welsh. Therefore, the claim against defendant Welsh should be dismissed based for lack of personal involvement.

For these reasons, I recommend that defendants' motion [*83] be granted to the extent it seeks dismissal of Mills' sixteenth cause of action.

**17. Mills' Twentieth and Twenty First Causes of Action: Destruction of Medical Logbook** [18]

18  The seventeenth, eighteenth, and nineteenth cause of action are alleged solely by Haskins.

Mills alleges that "upon information and belief Ms. Bryan destroyed pages in a medical logbook and tampered with dates in both plaintiffs' medical files - records at the Genesee County Jail", and that Superintendent Greer and Sheriff Maha failure to supervise Nurse Bryan resulted in this conduct. Third Amended Complaint (Dkt. # 204), PP308, 313. Mills contends that these actions have denied him meaningful access to the federal courts. Id. at P309.

As a result of this conduct, Mills alleges that he is entitled to recover under the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, 18 U.S.C. §§ 241, 242, and 1503, and New York State law. Id. at PP310, 316. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at PP311, 317.

Defendants argue that "there is no federal right to this notebook that was used for mundane communica-

tions between Terese Bryan and Greg Groth, P.A. Mills [*84] has been provided with his medical chart and mental health records." Defendants' Memorandum of Law (Dkt. # 378), pp. 25-26. In response, Mills argues that "the Eighth and Fourteenth Amendment is implicated when inadequate, inaccurate, and unprofessionally maintained medical records give rise to the possibility for disaster stemming from failure to properly chart the medical care received by inmates." Mills' Memorandum of Law (Dkt. # 422), pp. 35-36.

Nurse Bryan testified that she maintained a black notebook that she used as a communication log that recorded her communications with P.A. Groth and others concerning inmates whom they treated. Declaration of Shawn Martin (Dkt. # 381), Ex. C, Deposition Transcript of Terese Bryan, pp. 176-178, 324. When the notebooks were filled, they were thrown away. Id. at p. 177. As detailed by Nurse Bryan, the notebook was utilized for "mundane communication between medical personnel who were not working at the same time." Affidavit of Terese Bryan (Dkt. # 434), P10. The "notebook was not used to record medical treatment records of inmates at the jail. Mr. Mills' medical file that was maintained by the jail contains his full treatment history." Id.

Mills  [*85] has also failed to establish how Nurse Bryan's actions in destroying the notebook, even if true, denied him meaningful access to federal courts, as he has not shown that these actions "materially prejudiced a pending legal action or one that he sought to file in the courts." Smith, *supra*, 901 F. Supp. at 649.

Mills also alleges that "the jail Medical Unit had direct notice not to destroy the Black composition note book and did so intentionally." Mills' Declaration (Dkt. # 423), P188. However, even if I were to accept the premise that the alleged intentional destruction of evidence constitutes a § 1983 violation, Mills has not introduced any evidence to rebut Nurse Bryan's testimony that these notebooks were destroyed as a matter of course.

Accordingly, I recommend that Mills' twentieth and twenty-first causes of action be dismissed.

**18. Mills' Twenty-Second Cause of Action: Municipal Liability**

Mills alleges that defendant Genesee County is responsible for the actions of its employees because they have created "a policy, custom or practice that allows the actors in office to be the final decision makers" and "has allowed complete and total breakdown, systematic failure, in the judicial [*86] system of Genesee County so as the officers, agents, employees are allowed to do as they wish without proper supervision." Third Amended Complaint (Dkt. # 204), PP320-321. He alleges that "the following laws apply to municipality liability herein the

foregoing complaint": United States Constitution, Amendment 14; 29 U.S.C. § 794; 42 U.S.C. §§ 12132 and 12131(1)(A) & (B); 28 C.F.R. § 35.101, et seq.; and various New York State law claims. Id. at PP322. He seeks compensatory and punitive damages, as well as injunctive relief. Id. at PP323.

Defendants argue that because Mills is not entitled to relief on any of his claims, Genesee County is not liable. Declaration of Shawn Martin, Esq. (Dkt. # 381), P96. I agree, and recommend dismissal of Mills' twenty-second cause of action on this basis.

Moreover, Mills has not established any policy or custom warranting imposition of municipal liability. "A municipality is a 'person' to whom § 1983 applies." Rochez v. Mittleton, 839 F. Supp. 1075, 1078 (S.D.N.Y. 1993). To hold a municipality liable under § 1983, a plaintiff must "plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial [*87] of a constitutional right." Batista v. Rodriguez, 702 F. 2d 393, 397 (2d Cir. 1983). See Vippolis v. Village of Haverstraw, 768 F. 2d 40, 44 (2d Cir. 1985), cert. denied, 480 U.S. 916, 107 S. Ct. 1369, 94 L. Ed. 2d 685 (1987).

In order to prove the existence of a custom or policy, a plaintiff must present evidence of either a formal policy which is officially endorsed by the municipality, or a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials. See Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A custom or policy may also be established if the challenged conduct was by government officials responsible for establishing municipal policies. See Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). "The inference that a policy existed may. . . be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Ricciuti v. N.Y.C. Transit Authority, 941 F. 2d 119, 123 (2d Cir. 1991).

Mills alleges that "it has been established as a mater [*88] [sic] of custom or policy (1) inmates must pay for dental care; (2) inmates are locked in isolation without compliance with the own policy of the Jail or Corrections Law; (3) the jail has no adequate law library; (4) inmates only get mental health consults by a Social Worker and [sic] there is evidence in the record the County attorney endorsed such. . . ; (5) the recreation at the jail could be policy or custom endorsed by the county; (6) the refusal to provide services to psychiatric individuals in jail other then consults is a matter of policy." Mills' Declaration

(Dkt. # 423) P197. However, Mills fails to offer any evidence that this conduct was as a result of a formal policy, a persistent and widespread practice, or the result of conduct or deliberate indifference by Genesee County policymakers.

Therefore, I recommend that defendants' motion for summary judgment on Mills' twenty-second cause of action be granted.

### 19. Mills' Twenty-Third Cause of Action: State Law Clams

Mills "brings this cause of action for all NEW YORK STATE Law violations alleged as detailed in each and every cause of action herein." Third Amended Complaint (Dkt. # 204), P325. To the extent that I have recommended [*89] dismissal of Mills' federal law claims (all claims other than the retaliation claim alleged in the first cause of action), I decline to exercise supplemental jurisdiction over Mills' related state law violations pursuant to 28 U.S.C. § 1367. See Marcus v. AT&T Corp., 138 F. 3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Therefore, I recommend that all of plaintiff's state claims, with the exception of those related to his retaliation claim, be dismissed.

### CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment (Dkt. # 376) be DENIED in part and GRANTED in part. I also order that Mills' motions for appointment of counsel (Dkt. ## 449 and 467) be DENIED, to strike defendants' reply (Dkt. # 455) be DENIED, and for reconsideration (Dkt. # 456) be GRANTED. Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order [*90] in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to

2009 U.S. Dist. LEXIS 81500, *

appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (con-

cerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider [*91] the objection.

**SO ORDERED.**

DATED: March 31, 2009

/s/ Jeremiah J. McCarthy

JEREMIAH J. MCCARTHY

United States Magistrate Judge