# RUBIN & ELDRICH, P.C.
### ATTORNEYS AND COUNSELLORS AT LAW

KENNETH B. RUBIN*
SARAH D. ELDRICH*†
LESLIE I. JENNINGS-LAX
RACHEL AYLOR

59 ELM STREET
P.O. BOX 1422
NEW HAVEN, CONNECTICUT 06506-1422

SANDRA M. CALLAHAN, Paralegal
TERRI A. TAMULEVICH, Paralegal

(203) 821-3023
FAX (203) 821-3026

kbr@rubineldrich.com
sde@rubineldrich.com
ljl@rubineldrich.com
ra@rubineldrich.com

* Fellow, American Academy of
  Matrimonial Lawyers
† Fellow, International Academy of
  Matrimonial Lawyers

July 22, 2010

The Honorable Janet C. Hall
United States District Court
District of Connecticut
915 Lafayette Blvd.
Bridgeport, CT  06604

Re:  Tatum v. Oberg, et al
C.A. No. 3L08-CV-01251-JHC
Report of Court Appointed Expert

Dear Judge Hall:

On January 20, 2010, this Court appointed the undersigned, Attorney Sarah D. Eldrich, as an expert witness to assist the Court in determining whether, in the above captioned matter, the Plaintiff (Tatum) raised an issue of fact sufficient to survive summary judgment as to his claim of legal malpractice against the Defendants (Oberg, et al). In so doing the undersigned was asked to provide the Court with her findings and opinion as to whether there is a basis for Tatum's legal malpractice claim against Oberg, et al.

The parties to this action were, respectively, directed by the Court to provide the undersigned with all evidence that may be relevant to Tatum's claim of legal malpractice. Both Plaintiff and Defendants provided voluminous documents for review.

1

The Plaintiff's evidence consisted of various documents, including: Pleadings and e-mails, among other papers, relating to the underlying Dissolution of Marriage action between Kathleen Murphy and Gary Tatum; Pleadings, transcripts and e-mails, among other papers, relating to the Motion to Reopen the underlying Dissolution of Marriage action between Kathleen Murphy and Gary Tatum; Pleadings and e-mails, among other papers, relating to the appeal of the denial of the Motion to Reopen Judgment in the underlying action between Kathleen Murphy and Gary Tatum; and, other miscellaneous documents.

The Defendants provided evidence consisting of various documents, including: Pleadings in the matter of Tatum vs. Oberg, et al.; Deposition of Gary Tatum in the Matter of Tatum vs. Oberg, et al.; Documents relating to the underlying Dissolution of Marriage action between Kathleen Murphy and Gary Tatum; Documents relating to the appeal of the denial of the Motion to Reopen Judgment in the underlying action between Kathleen Murphy and Gary Tatum; Oberg's correspondence file in the matter of Murphy vs. Tatum; Oberg's written communications between she and Tatum; Written communications between Tatum and Murphy; Discovery documents received by Oberg in the matter of Murphy vs. Tatum; and, other miscellaneous documents.

In preparation for making findings and forming an opinion as to whether the Defendants committed legal malpractice, all of the documents provided by the parties were reviewed.

## I. Murphy v. Tatum

The parties to the underlying legal action, Kathleen Murphy and Gary Tatum, the Plaintiff in this action, were married in College Station, TX on July 3, 1991. There were two minor children issue of the marriage, George Murphy and Alex Murphy both born on August 28, 1998. The family lived in Texas during their marriage. During the summer 2001, Dr. Murphy

2

took the minor children to Connecticut.   On October 5, 2001, Kathleen Murphy filed an action for Legal Separation against Gary Tatum in the Superior Court for the Judicial District of Windham at Putnam.   This matter was docketed number FA-01-0077799S.   Mr. Tatum subsequently relocated to Connecticut and appeared through counsel, Norma Arel.   Thereafter, the matter was transferred to Rockville, CT and the Defendant Ford, Oberg, Manion and Houck filed an appearance on behalf of Tatum, Attorney Mary Oberg being responsible for the file and representation.

The matter of Murphy vs. Tatum went to judgment on April 22, 2004 before the Honorable Lawrence C. Klaczack, JTR.   The terms of the judgment were based on a Separation Agreement entered into by the parties on April 22, 2004, which was found to be fair and equitable and the terms of which were incorporated into the judgment.

Subsequent to the entry of the judgment, Tatum discovered that Murphy had failed to disclose at any time during the pendency of the action that she owned certain real property and thousands of dollars of savings bonds.   Further, Murphy failed to disclose these assets on her financial affidavit provided to Tatum and to the Court at the time of the final hearing on the dissolution of marriage.

Following Tatum's discovery of the fact that Murphy had undisclosed assets, he notified Oberg who filed a Motion to Reopen.   Said Motion was heard before the Honorable Stanley T. Fuger, Jr. on October 22, 2004 and October 27, 2004.   At the conclusion of the hearing, Judge Fuger found that Murphy had committed fraud in not disclosing the real property and savings bonds that she owned, but he refused to reopen the judgment on the basis that the Court could not find that there was a substantial likelihood that the result of a new trial would be different. The Court held "It's possible if this matter were to go to trial there would be a different result in

regard to property division.   It's possible the Defendant would not have entered into the stipulated agreement had he possessed all of the information that was withheld, but the Court cannot find there is a substantial likelihood that that would occur.   So the Court is convinced that there is no necessity to open or reopen the judgment as to the vast majority of the agreement." The Court went on to find "... it is clear from the testimony that's here that there are forty-three -- -- at least forty-three thousand dollars in savings bonds assets, which if the Plaintiff is to be believed, not an altogether requirement based upon the history, that the savings bonds are for the purpose of educating the children."   The Court did find that the judgment could be reopened as to the post high school education of the children.

Tatum appealed the decision denying the Motion to Reopen Judgment. On October 17, 2005 Tatum and Murphy entered into an agreement that provided there would be no further motions relative to the distribution of assets and/or the payment of alimony or the like relative to the judgment.   They further agreed that Murphy would pay Tatum the sum of $12,500 and that the bonds would be placed in a trust for the benefit of the minor children.   Murphy agreed to withdraw her pending Motion for Child Support and not to ask the Court for a child support order on or before August 28, 2006.   In consideration of the terms of the agreement the appeal was withdrawn.

## II.  Tatum vs. Oberg, et al

The matter of Tatum vs. Oberg, et al was filed with the United States District Court for the District of Connecticut in July, 2008 claiming, among other things, that Defendants Oberg and Ford, Oberg, Manioin & Houck, PC failed to provide services to Tatum in accordance with professional services equal to the degree of skill and learning commonly applied under the

circumstances then and there existing by a prudent member of the legal profession.  On January 20, 2009 Tatum filed an Amended Complaint.  His Third Claim for Relief being Malpractice.

## A.  Incomplete Discovery Claim

In paragraph 19(b) Tatum alleged that the Defendants failed to engage in discovery designed to ensure that Plaintiff's financial interests in the dissolution action were adequately protected.  In paragraph 19(d) Tatum alleged that the Defendants failed to file appropriate motions to ensure the Plaintiff's former wife fully and fairly complied with discovery.  In paragraph 19(f) Tatum alleged that the Defendants concealed discovery and/or failed to obtain discovery that would have alerted Tatum to their failure to comply with the standard of care.  In Paragraph 19(g)  Tatum alleged that the Defendants failed to respond to Tatum's requests regarding the manner in which the case proceeded.  In paragraph 20 Tatum alleged that as a result of the breach of the standard of care, he sustained economic damages.

The primary underlying issue forming the basis of Tatum's claim of legal malpractice in paragraphs 19(b), (d), (f), (g) and 20 of his Amended Complaint appears to be the failure of Oberg to conduct discovery which may have led to findings that (1) Murphy had purchased real estate, for approximately $47,000, in 2002 during the pendency of the dissolution of the marriage action between Tatum and Murphy, and (2) Murphy had at various times throughout the marriage purchased U.S. Savings Bonds with an approximate value of $35,000 all of which she continued to own at the time Murphy and Tatum entered into a separation agreement resolving their financial and property claims.  Neither of these assets was referred to in the terms for the division of the parties' property in the separation agreement.  Neither of these assets was

5

disclosed on Murphy's financial affidavit provided to Tatum and filed with the Court at the time of the final hearing for Dissolution of Marriage.[1]

In summary, the undersigned makes the following findings with respect to these issues. Following the service of the dissolution of marriage complaint by Kathleen Murphy in October 2001, Tatum's first attorney, Norma Arel, on November 2, 2001, filed a Request for Disclosure and Production as provided for by the Connecticut Rules of Court section 25-32, Mandatory Disclosure and Production. Said Request asked for the production of, among other things, "All federal and state income tax returns filed within the last three years, including personal returns..." Connecticut Rules of Court section 25-32 (b) creates a continuing duty to disclose and provide updated documents during the pendency of the action. Based on the date of filing, the initial returns to be produced would have been for the tax years 1998, 1999 and 2000. At some point prior to the end of the case the 2001 return was produced. The 2002 return was not. The action continued through April, 2004.

On numerous occasions, as seen in the e-mail correspondence between Tatum and Oberg, provided by both parties, Tatum requested that Oberg obtain the 2002 return. There is no evidence produced, other than the original request for production, that Oberg made such a request while the action was pending. In various e-mails to Oberg, Tatum voiced his concerns that Murphy was hiding assets. There is no evidence from the documents provided that Oberg

---

[1]   Although it does not absolve Defendants of their duty to complete discovery, it bears noting that Plaintiff was aware that Murphy owned various savings bonds during the course of the marriage and that such bonds were not listed on her financial affidavit at the time of the final hearing for dissolution of marriage. There is no evidence that Plaintiff ever brought this omission to Defendants' attention so that same could be explored further or otherwise subjected to further inquiry.

filed any Interrogatories to address Tatum's concern about hidden assets or took any other action in this regard.[2]

Pursuant to LaBieniec v. Baker, 11 Conn. App. 199, 202-03, 526 A.2d 1341 (1987) there is a four prong test that must be satisfied for a finding that a legal malpractice has occurred. The prongs are: (1) that there is a duty on the part of the lawyer to conform to a particular standard of conduct for Plaintiff's protection; (2) that the attorney failed to measure up to that standard; (3) that the Plaintiff suffered an actual injury; and (4) that the attorney's conduct was the proximate cause of the Plaintiff's injury. Id. See also Cook v. Williams, 2002 U.S. Dist. LEXIS 27412, at *10-11 (D. Conn. 2002).

With respect to the first prong of the test, it is this expert's opinion that it has been established that there was a breach in the standard of care. With respect to the second prong of the test, Oberg and, by extension, the firm of Ford, Oberg, Manioin and Houck, PC, failed to conform to that particular standard of conduct with respect to the request for Murphy's 2002 tax return and Tatum's concerns that she owned real property and was otherwise hiding assets. However, based on the Court's finding with respect to the Motion to Reopen Judgment, that

---

[2] The agreement, however, among other provisions, provided in Paragraph 16: "Discovery: The parties acknowledge that each has had ample opportunity to request of the other documents and information related to the assets and income of the other, and that the requested documents have been provided and reviewed by each party to their satisfaction. Each party agrees that they are satisfied with such discovery and the information contained therein, and that neither requests any further documents or information and they have directed their respective counsel not to inquire further."

This provision in the fully executed agreement bears the connotation that, ultimately, Tatum was satisfied with the disclosure he had received via Defendants' work on his case, despite the lack of production of the 2002 tax return. Nonetheless, this expert concludes that Defendants' failure to pursue the full disclosure of tax information and assets during the pendency of the dissolution of marriage action, especially in light of Plaintiff's voiced concerns regarding the same, constituted a breach of their duty, regardless of Tatum's position at the time he signed the Separation Agreement.

Murphy committed a fraud but that there was not a substantial likelihood that the result of a new trial would be different or that the Settlement Agreement into which he entered would have been substantially different, Tatum did not suffer an actual injury. Furthermore, by settling his appeal, Tatum effectively foreclosed any further relief he could obtain and made unquantifiable any damages that he may have sustained. Essentially, Tatum's agreement as to the appeal of the Motion to Reopen Judgment was in lieu of any damages that may have been suffered due to the nondisclosure. As there are no damages, the forth prong of the test is not satisfied.

## B. Additional Claims

Tatum alleges in Paragraph 19(a) of the Amended Complaint that the Defendants failed to provide him with timely and correct legal advice. There is no evidence in the documents provided that the Defendants failed to do so. In fact, the correspondence between Oberg and Tatum exhibits the contrary.

Tatum alleges in Paragraph 19(c) that he was billed for unnecessary research and drafting on issues about which Defendants were alleged to be experts, causing Plaintiff to incur unnecessary legal fees. There is nothing in the evidence provided that supports this claim. Although attorneys in the area of matrimonial law have a certain knowledge base, which was exhibited by Oberg, each case presents its own set of facts and questions of law such that research is required. The hours billed for research appeared reasonable in light of the issues with respect to the finances, property and the parenting plan for the children that were present in the underlying dissolution of marriage action.

Paragraph 19(e) alleges that the Defendants failed to properly advise Tatum as to the costs and risks associated with relying upon a motion to open judgment based upon fraud. There is no evidence in the documents provided that addresses this issue one way or the other. There

does not seem to this expert to be any apparent risk that was associated with the Motion to Reopen. Although the ruling of the Court was not in Tatum's favor, Tatum successfully retained and exercised his right to take a timely appeal from that judgment. With respect to counsel fees, as is usually the case and as was the case in relationship to the Motion to Reopen, Oberg requested that Murphy pay counsel fees to Tatum. Counsel fees are governed by CGS section 46b-62 and are left to the discretion of the Court. The award of counsel fees was not appealed by Tatum.

Paragraph 19(h) alleges that the Defendants failed to vet properly the individual used to offer an opinion on custody in the dissolution matter. The parties agreed that Dr. Donald Hiebel would conduct the custody evaluation for purposes of setting forth a parenting plan that would serve the best interests of the children. Based on this expert's knowledge, Dr. Hiebel's reputation throughout the State of Connecticut and in the Regional Family Custody Docket is that he is one of the highest caliber psychologists and custody evaluators.

Paragraph 19(i) alleges that the Defendants mislead Tatum as to the total costs associated with the dissolution action. Reviewing the retainer agreement, there is no estimate as to the cost that would be involved in the action. There is nothing in any of the documents provided that supports the Plaintiff's allegation.

Finally, paragraph 20 of the third claim for relief is that, as a result of the breach of the standard of care, Plaintiff has sustained economic damages. For all of the reasons set forth above, it is the opinion of this expert that no economic damages were sustained.

Applying the four-prong test for legal malpractice set forth in LaBieniec v. Baker; 11 Conn. App. at 202-03; and iterated above to the allegations in Paragraphs a, c, e, h and i, the undersigned expert finds that Plaintiff has met the first prong, that a duty to conform to a

particular standard of conduct for Plaintiff's protection exists.  However, Plaintiff has failed to meet the second prong of proving that Defendants failed to conform their conduct to that standard of care.  Likewise, Plaintiff has not met the third and fourth prongs of the test, in that that he has not proven the existence of an actual injury and resultant damages.

Respectfully Submitted

Sarah D. Eldrich, Esq.
Court Appointed Expert