**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GARY L. TATUM, Individually,<br>　　　Plaintiff, | : | MEMORANDUM OF LAW IN SUPPORT<br>OF MOTION FOR SUMMARY<br>JUDGMENT |
| | : | |
| 　　v. | : | |
| | : | CASE NO.:  3:08CV1251 (JCH) |
| | : | |
| MARY CHRISTINA OBERG, In her<br>individual and professional capacity, and<br>FORD, OBERG, MANION and HOUCK,<br>P.C. | : | September 22, 2010 |
| 　　　Defendants | : | |
| | : | |

**DEFENDANTS, MARY CHRISTINA OBERG AND FORD, OBERG, MANION AND**
**HOUCK, P.C.'S, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR**
**SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Pursuant to Fed. R. Civ. Proc. Rule 56 (b), and D. Conn. L. Civ. Rule 56, the defendants, Mary Christina Oberg and the law firm of Ford, Oberg, Manion and Houck, P.C. (the "defendants"), hereby move for summary judgment as to all remaining counts of plaintiff, Gary L. Tatum's, Second Amended Complaint on the basis that the plaintiff has failed to provide any evidence of actual injury and damages sufficient to sustain his legal malpractice claim.  Further, the defendants refer to and rely on their Motion for Summary Judgment and supporting Memorandum of Law filed on September 15, 2009 to the extent that it relates to the plaintiff's existing legal malpractice claim.  Additionally, the defendants move of summary judgment on the basis that the plaintiff has failed to provide any evidence of damages to support his claim for Breach of Contract.

1

## II.    BACKGROUND

### A.    Procedural Posture

On October 2, 2009, the plaintiff filed a Motion for Leave to File Amended Complaint. (See. Docket No. 107). The Plaintiff sought permission to replead all dismissed counts pursuant to the court's September 3, 2009 ruling on the Defendants' Motion to Dismiss. (Id.). On October 22, 2009, the defendants' filed an objection to the plaintiff Motion for Leave to File Amended Complaint. (See Docket No. 115). The defendants' argued that the court should deny the plaintiff's Motion as to the repled Fraud, CUTPA, and Breach of Contract claims as they would be prejudicial to the defendants' and futile as they would not survive an Federal Rule of Civil Procedure Rule 12(b)(6) Motion to Dismiss. On December 18, 2009, the court, *Hall, J.*, granted the Motion for Leave to File Amended Complaint only as to the plaintiff's repled legal malpractice claim and Paragraphs 19(f) and 19(g) of the Breach of Contract claim. (See Docket No. 128).

On December 21, 2009, the court entered an Order to Show Cause requesting the parties to show cause as to why the court should not appoint an expert witness pursuant to Federal Rule of Evidence Rule 706(a). (See Docket No. 129). On January 20, 2010, the court, over the defendants' objection, entered an order appointing Sarah D. Eldrich, Esq. as an expert for the purpose of providing an opinion as to whether there is a basis for the plaintiff's legal malpractice claim. (See Order Appoint Expert at pg 2, attached hereto as Exhibit A). The court's order appointing Attorney Eldrich directed all parties to "provide Attorney Eldrich with all evidence that may be relevant to that claim." (See Exhibit A at pg 2).

2

On January 29, 2010, the Plaintiff filed an Amended Complaint in accordance with the court's December 18, 2009 ruling granting the Plaintiff's Motion for Leave to Amend Complaint.  Plaintiff's first claim for relief alleges Breach of Contract.  The second claim for relief alleges legal malpractice.  (See Second Am. Compl.).

B.    Factual Background

In his Second Amended Complaint, Plaintiff alleges that, on or about February 12, 2002, he retained the Defendants to represent him in the dissolution of his marriage and property division.  (See Second Am. Compl. ¶10).  Plaintiff further claims that he paid a retainer of four thousand five hundred dollars ($4,500.00) in reliance upon the Defendant law firm's "implied and express representations that it would represent Plaintiff in accord with all applicable standards of professional care." (See Second Am. Compl. ¶11).

Plaintiff further claims that Attorney Oberg made several false representations to the plaintiff, including: (a) that Attorney Oberg had requested and received all relevant financial information from plaintiff's former wife, Dr. Murphy; (b) that Attorney Oberg had no ability to compel the production of information Plaintiff believed was missing, despite his concerns that his former wife would not disclose all relevant financial information; (c) that, plaintiff could recover a fair share of any undisclosed assets discovered at a later date by filing a motion to reopen the judgment based on fraud; and (d) that plaintiff would recover any undisclosed assets if the settlement agreement contained a clause providing that Plaintiff would receive "all other property" not specifically set forth in the financial affidavits.  (See Second Am. Compl. ¶12). Further, plaintiff claims Attorney Oberg knowingly made false representations in order to induce

3

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

him to enter into a proposed settlement agreement with his former wife. (See Second Am. Compl. ¶13).

In addition, plaintiff alleges that he relied on the allegedly false representations of Attorney Oberg and sustained damages as a result of that reliance. (See Second Am. Compl. ¶¶14, 16). In particular, plaintiff claims that the settlement agreement: (a) did not take into account nearly one hundred thousand dollars ($100,000) in assets allegedly concealed by plaintiff's ex-wife; (b) failed to protect plaintiff's legal right to a division of the concealed assets; and (c) adversely affected the amount of child support plaintiff was required to pay. (See Second Am. Compl. ¶¶14, 15).

On July 26, 2010, the court-appointed expert, Sarah D. Eldrich, Esq., submitted her expert report which provided her findings and opinion as to whether there is a basis for the plaintiff's legal malpractice claim against the defendant's. (See Report of S. Eldrich, Esq. at pg 1, attached hereto as Exhibit B). Attorney Eldrich's report found that the primary underlying issue with respect to Paragraphs 19(b), (c), (e), (f) and 20[1], was Attorney Oberg's failure to conduct discovery. (See Exhibit B at pg 5). The report found that with respect to the issue of conducting discovery, the defendants breached the standard of care and their conduct failed to conform to that standard of care. (See Exhibit B at pg 5). However, Attorney Eldrich found that,

> Based on the Court's finding with respect to the Motion to Reopen
> Judgment, that Murphy committed a fraud but that there was not a

---

[1] Attorney Eldrich's report refers to Paragraphs 19(b), (d), (f), and (g) of the Plaintiff's January 20, 2009 Amended Complaint. The operative Complaint is the Plaintiff's Second Amended Complaint. With the exception of the difference in subsection numbering, the allegations are the same. Therefore, the undersigned will refer to the allegations of the January 29, 2010 Second Amended Complaint throughout this memorandum.

4

> substantial likelihood that the result of a new trial would be different or that the Settlement Agreement into which he entered would have been substantially different, Tatum did not suffer an actual injury.

(See Exhibit B at pgs 7-8). In addition, Attorney Eldrich found that, "by settling his appeal, Tatum effectively foreclosed any further relief he could obtain and made unquantifiable any damages that he may have sustained." (See Exhibit B at pg 8).

In addition, Attorney Eldrich found no evidence to support the Plaintiff's remaining allegations in his legal malpractice claim. As to Paragraph 19(a), Attorney Eldrich found that there was no evidence to support the claim that the defendants failed to provide him with timely legal advice. (See Exhibit B at pg 8). As to Paragraph 19(d), Attorney Eldrich found that there was no evidence that the defendants failed to properly advise the plaintiff as to the costs and risks associated with relying upon a Motion to Open Judgment. (See Exhibit B at pgs 8-9). Finally, as to Paragraph 20, Plaintiff's claim that he suffered economic damages, Attorney Eldrich found that based on all the reasons set forth in her opinion, there was no economic damages sustained by the Plaintiff. (See Exhibit B at pg 10). Attorney Eldrich's final opinion on Plaintiff's legal malpractice claim was that although there was a breach of the applicable standard of care with respect to discovery, the plaintiff has failed to prove the existence of an actual injury and resultant damages. (See Exhibit B at pg 10).

Defendants now seek summary judgment as to all remaining counts of the Second Amended Complaint, on the basis that (1) the plaintiff has failed to provide any evidence of

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

actual uinjury and resultant damages sufficient to sustain his legal malpractice claim and (2) the

plaintiff cannot provide proof of any damages to sustain his claim for Breach of Contract.

## III.    LAW AND ARGUMENT

### A.    Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

Although the "moving party bears the burden of showing that he or she is entitled to summary

judgment, . . . such burden may be discharged by 'showing'--that is pointing out to the district

court--that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc.

v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002). The "moving party, in other words, does

not bear the burden of disproving an essential element of the nonmoving party's claim."

PepsiCo, Inc. v. Coca-Cola Co., 114 F. Supp. 2d 243, 247 (S.D.N.Y. 2000) *affirmed by* 315 F.3d

101, 105 (2d Cir. 2002).

"If the party moving for summary judgment demonstrates the absence of any genuine

issue as to all material facts, the nonmoving party must, to defeat summary judgment, come

forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid

Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002). "When the moving

party has carried its burden under Rule 56(c) . . . its opponent must do more than simply show

that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (U.S. 1986). "Instead, the nonmovant must  . . . come

6

forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely . . . on the basis of conjecture or surmise." <u>PepsiCo, Inc. v. Coca-Cola Co.</u>, 114 F. Supp. 2d 243, 247 (S.D.N.Y. 2000) (internal quotation marks omitted.) *citing* <u>Trans Sport v. Starter Sportswear</u>, 964 F.2d 186, 188 (2d Cir. 1992). Accordingly, "a party opposing summary judgment may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible. . . . or upon the mere allegations or denials of the adverse party's pleading." <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. N.Y. 1995) (Citations omitted; internal quotation marks omitted.)

Rather, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (U.S. 1986) (Emphasis in original) <u>citing</u> Fed. R. Civ. Proc. 56(e), Advisory Committee Note to 1963 Amendment of Fed. R. Civ. Proc. 56(e), 28 U. S. C. App., p. 626 (purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial"). "It follows from these settled principles that if the factual context renders respondents' claim implausible -- if the claim is one that simply makes no economic sense -- respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." <u>Id</u>.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." <u>Id</u>. And, where such is the case, summary judgment should be granted.

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

B.      The Plaintiff Has Failed To Provide Any Evidence Of Actual Injury And
        Resultant Damages Sufficient to Sustain His Legal Malpractice Claim.

To prevail in an action for legal malpractice, "the plaintiff must establish (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages. To prove causation, the plaintiff must demonstrate that he "would have been successful in pursuing [his] claim [or defense] but for the defendant's [wrongful act or] omission." Gray v. Weinstein, 110 Conn. App. 763, 773 (2008). "Damages are an essential element of a plaintiff's proof and must be proved with reasonable certainty." Preston v. Keith, 217 Conn. 12, 20 (1991). In order to sustain a legal malpractice claim, "a plaintiff must prove . . . that the client **sustained legal injury or damage** that proximately was caused by the attorney's wrongful act or omission." Lee v. Harlow, Adams and Friedman, P.C., 116 conn. App. 289, 302 (2009). Therefore, damages are a necessary element that must be established by the plaintiff in order to prove a legal malpractice claim. Id.

Notwithstanding any of the allegations of negligent conduct, the plaintiff has failed to provide any evidence to support his claim that he has suffered economic damages as a result. Pursuant to the court's January 20, 2010 order appointing Attorney Eldrich as an expert, the plaintiff was directed to provide Attorney Eldrich with "all evidence relevant to his legal malpractice claim." (See Exhibit A at pg 2). Therefore, Attorney Eldrich had all the plaintiff's evidence related to his claim for damages. With all of the plaintiff's evidence related to any damages he may have sustained, Attorney Eldrich still found that the plaintiff had not suffered any actual injury and resultant damages as a result of the defendants' alleged negligence.

8

Attorney Eldrich noted that her opinion was based on the court's ruling on the Motion to Reopen that "there was not a substantial likelihood that the result of a new trial or that the Settlement Agreement into which he entered would have been substantially different." (See Exhibit B at pg 8-10). In fact, the court, *Fuger, J.*, found,

> It's possible if this matter were to go to trial there would be a different result in regard to property division. It's possible the defendant would not have entered into the stipulated agreement had he possessed all of the information that was withheld, but the Court cannot find there is a substantial likelihood that that would occur. So the court is convinced that there is no necessity to open or reopen the judgment as to the vast majority of the agreement.

(See Exhibit C at pg 64). The only part of the judgment the court opened or reopened related to the distribution of the $43,000 in savings bonds. The court allowed the parties to modify the agreement "with an eye towards placing the savings bonds into a trust for the post high school education of [the children]." (See Exhibit C at pgs 61, 62-64, 71). Consequently, the plaintiff was not going to receive any additional funds as a result of the court's ruling.

More importantly, as provided by Attorney Eldrich, the plaintiff has successfully foreclosed any further relief he could have obtained by settling his appeal of the Motion to Reopen. (See Exhibit B at pg 8). Indeed, Attorney Eldrich noted that any damages that the plaintiff may have received was made unquantifiable. (Id.). As Attorney Eldrich's expert report further notes, "Tatum's agreement as to the appeal of the Motion to Reopen Judgment was in lieu of any damages that may have been suffered." (Id.). Therefore, Plaintiff is unable to prove the necessary elements, actual injury and resultant damages, of his legal malpractice claim and resultant damages, and, therefore, his claim must fail as a matter of law.

9

C.    <u>Plaintiff Has Failed To Provide Any Evidence That He Has Sustained Damages to Support his Claim for Breach of Contract.</u>

Plaintiff has failed to provide evidence to support his claim that he has suffered economic damages as a result of the defendants' alleged breach of contract.  The elements for a cause of action for breach of contract are (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages. <u>Bross v. Hillside Acres, Inc.</u>, 92 Conn. App. 773, 780 (2006); <u>See also</u>, <u>Tatum v. Oberg, et al</u>, 650 F. Supp. 2d 185, 192 (D. Conn. 2009).  Damages are a necessary element of a cause of action for breach of contract. <u>Shah v. Cover-it, et al</u>, 86 Conn. App. 71, 74 n. 3 (2004).  Where the plaintiff fails to provide evidence of damages where it is an essential element of a cause of action such as breach of contract, then a defendant may prevail on a Motion for Summary Judgment.  <u>Independence Ins. Serv. Co. v. Hartford Life Ins. Co.</u>, 472 F. Supp. 2d 183, 192 (2007) (Summary Judgment denied where plaintiff provided expert testimony related to damages).  However if a plaintiff is successful, the party not in breach of a contract, "may recover only for damages that are directly and proximately caused by a defendant's breach of contract . . . ." <u>McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.</u>, 93 Conn. App. 486, 504 (2006).

Plaintiff's breach of contract claim set forth in his First Claim for Relief, provides that the defendants "promised plaintiff that if concealed assets were discovered, that plaintiff could recover all of those concealed assets to the exclusion of Murphy; and failed to deliver the promised result in the Motion to Reopen." (Second Am. Compl., First Claim ¶19).  Even if the court were to believe these allegations, which are specifically denied by the defendants, there has

10

been no evidence provided to show that the plaintiff has suffered any economic damages as a result of the alleged breach.

Although the order appointing Attorney Eldrich as an expert only ordered the parties to provide evidence related to the legal malpractice claim, Plaintiff's breach of contract claim is derivative of the legal malpractice claim in so far as it relates to the outcome of the Motion to Reopen the judgement.  As set forth more fully in Subsection B above, the court denied the Motion to Reopen on the ground that there was not a substantial likelihood that the results of a new trial or the settlement agreement the plaintiff entered into would be different.  (See also Exhibit B at pg 8).  Although the plaintiff appeal this decision, "by settling the appeal [of the court's decision], [the plaintiff] effectively foreclosed any further relief he could obtain and made unquantifiable any damages that he may have sustained."  (See Exhibit B at pg 8-9).  Additionally, the plaintiff's agreement to settle the matter without following through on his appeal was in lieu of any damages that he may have suffered.  (See Exhibit B at pg 8).  Therefore, the plaintiff could not have recovered anything as a result of the hearing.

Since the plaintiff would not have been able to recover anything as a result of the hearing, it follows that even if there was a promise by the defendants' that the plaintiff could recover any concealed assets, a failure to deliver on that promise.  As stated above, the non-breaching party would only be able to recover damages that are directly and proximately caused by the breach of a contract.  See McCann Real Equities Series XXII, LLC, *supra*.  If the defendant's were able to deliver on the alleged promise, then the plaintiff would have received the assets concealed by his ex-wife.  As the Motion to Reopen found him not entitled to those assets, then he could not

11

recover them under a claim for breach of the alleged promise.  As the plaintiff is unable to prove that he has recoverable damages, the plaintiff's claim must fail as a matter of law.

## V.    CONCLUSION

On the basis of the foregoing and for the reasons more fully set forth in the defendants Motion for Summary Judgment and supporting Memorandum of Law dated September 15, 2009, the defendants respectfully request that the court grant Summary Judgment as to the plaintiff's claims for legal malpractice and breach of contract as set forth in the Second Amended Complaint dated January 28, 2010.

THE DEFENDANTS,
MARY CHRISTINA OBERG AND
FORD, OBERG, MANION AND HOUCK, P.C.

/s/: Edward N. Storck III
    Robert Cassot  (CT24094)
    Stephen O. Clancy (CT27617)
    Edward N. Storck III (CT27312)
    MORRISON MAHONEY, LLP
    One Constitution Plaza, 10th Floor
    Hartford, CT 06106
    Phone:  (860) 616-4441
    Fax:  (860) 244-3800
    Her and Its Attorneys
    Email: rcassot@morrisonmahoney.com
        sclancy@morrisonmahoney.com
        estorck@morrisonmahoney.com

12

## CERTIFICATION

I hereby certify that on September 22, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court 's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Joseph N. DeFilippo, Esq.
Tracey Lane Russo, Esq.
DeFilippo & Russo LLC
4 Research Drive, Suite 402
Shelton, CT  06484
**Counsel for Plaintiff, Gary Tatum**

/s/: Edward N. Storck III
Robert Cassot  (CT24094)
Stephen O. Clancy (CT27617)
Edward N. Storck III (CT27312)
MORRISON MAHONEY, LLP
One Constitution Plaza, 10th Floor
Hartford, CT 06106
Phone:  (860) 616-4441
Fax:  (860) 244-3800
Her and Its Attorneys
Email: rcassot@morrisonmahoney.com
sclancy@morrisonmahoney.com
estorck@morrisonmahoney.com

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

**Exhibit A**

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GARY L. TATUM                          :
    Plaintiff,                     :      CIVIL ACTION NO.
                                   :      3:08-CV-1251 (JCH)
    v.                             :
                                   :
MARY CHRISTINA OBERG, ET AL.,          :      JANUARY 20, 2010
    Defendants.                    :

### RULING APPOINTING EXPERT

On December 21, 2009, this court issued an Order to Show Cause as to why an expert should not be appointed in this case for the purpose of resolving plaintiff Gary L. Tatum's claim of legal malpractice. In the Order to Show Cause, the court stated that it was considering appointing Attorney Sarah D. Eldrich of the New Haven bar.

The defendants, Mary Christina Oberg and the law firm of Ford, Oberg, Manion and Houck, P.C., responded to the Order to Show Cause on January 4, 2010. The defendants argue that the court should not appoint an expert in this case because "the issues are uncomplicated" and because the appointment of an expert "would unfairly shift the costs of hiring an expert to the Defendants." Defendants' Response to Order to Show Cause at 1. The defendants also request, in the alternative, that the court hold an evidentiary hearing to determine Tatum's indigency. Id. at 6.

The court overrules the objections articulated in the defendants' Response to the December 21 Order to Show Cause. First, "[t]he trial court has broad discretion whether or not to appoint an expert." 4 Weinstein's Federal Evidence, 2d Ed. § 706.02[4]; see also In re Joint Eastern and Southern Dist. Asbestos Litigation, 982 F.2d 721, 750 (2d Cir. 1992); Gates v. United States, 707 F.2d 1141, 1144 (10th Cir. 1983).

1

In this case, appointment of an expert will assist the court in determining whether Tatum has raised an issue of fact sufficient to survive summary judgment as to his claim of legal malpractice against the defendants. Second, the court is unpersuaded by the argument that the defendants would bear the costs of Attorney Eldrich's services. Indeed, Attorney Eldrich has agreed to serve as an expert for the court on a <u>pro bono</u> basis. Third, the court denies the defendants' request to hold a hearing to determine Tatum's indigency.[1] Nowhere does Rule 706 provide that the court must hold such a hearing. Further, the defendants do not argue that Rule 706 contemplates such a hearing.

Pursuant to Rule 706(a), the court hereby appoints Attorney Eldrich to serve as a <u>pro bono</u> expert in this case, for the purpose of providing her opinion as to whether there is a basis for Tatum's claim of legal malpractice. The parties are directed to provide Attorney Eldrich with all evidence that may be relevant to that claim. Attorney Eldrich shall make findings as to Tatum's malpractice claim, <u>see</u> Fed. R. Evid. 706(a), and then communicate those findings to the parties to this case, as well as to the court. After Attorney Eldrich makes findings as to Tatum's claim of malpractice, either party make take her deposition, as provided in Rule 706(a).

---

[1] At a hearing that was held on December 8, 2009, Tatum's counsel represented that he sought to obtain an expert, but was unable to find an attorney willing to undertake the assignment <u>pro bono</u>. The court is grateful for Attorney Eldrich's willingness to serve <u>pro bono</u>, in the finest tradition of the legal profession.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 20th day of January, 2010.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

**Exhibit B**

MORRISON MAHONEY LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

# RUBIN & ELDRICH, P.C.
#### ATTORNEYS AND COUNSELLORS AT LAW

KENNETH B. RUBIN*
SARAH D. ELDRICH*†
LESLIE I. JENNINGS-LAX
RACHEL AYLOR

SANDRA M. CALLAHAN, Paralegal
TERRI A. TAMULEVICH, Paralegal

* Fellow, American Academy of
  Matrimonial Lawyers
† Fellow, International Academy of
  Matrimonial Lawyers

59 ELM STREET
P.O. BOX 1422
NEW HAVEN, CONNECTICUT 06506-1422

(203) 821-3023
FAX (203) 821-3026

kbr@rubineldrich.com
sde@rubineldrich.com
ljl@rubineldrich.com
ra@rubineldrich.com

July 22, 2010

The Honorable Janet C. Hall
United States District Court
District of Connecticut
915 Lafayette Blvd.
Bridgeport, CT  06604

Re:  Tatum v. Oberg, et al
C.A. No. 3L08-CV-01251-JHC
Report of Court Appointed Expert

Dear Judge Hall:

On January 20, 2010, this Court appointed the undersigned, Attorney Sarah D. Eldrich, as an expert witness to assist the Court in determining whether, in the above captioned matter, the Plaintiff (Tatum) raised an issue of fact sufficient to survive summary judgment as to his claim of legal malpractice against the Defendants (Oberg, et al).  In so doing the undersigned was asked to provide the Court with her findings and opinion as to whether there is a basis for Tatum's legal malpractice claim against Oberg, et al.

The parties to this action were, respectively, directed by the Court to provide the undersigned with all evidence that may be relevant to Tatum's claim of legal malpractice.  Both Plaintiff and Defendants provided voluminous documents for review.

1

The Plaintiff's evidence consisted of various documents, including: Pleadings and e-mails, among other papers, relating to the underlying Dissolution of Marriage action between Kathleen Murphy and Gary Tatum; Pleadings, transcripts and e-mails, among other papers, relating to the Motion to Reopen the underlying Dissolution of Marriage action between Kathleen Murphy and Gary Tatum; Pleadings and e-mails, among other papers, relating to the appeal of the denial of the Motion to Reopen Judgment in the underlying action between Kathleen Murphy and Gary Tatum; and, other miscellaneous documents.

The Defendants provided evidence consisting of various documents, including: Pleadings in the matter of Tatum vs. Oberg, et al.; Deposition of Gary Tatum in the Matter of Tatum vs. Oberg, et al.; Documents relating to the underlying Dissolution of Marriage action between Kathleen Murphy and Gary Tatum; Documents relating to the appeal of the denial of the Motion to Reopen Judgment in the underlying action between Kathleen Murphy and Gary Tatum; Oberg's correspondence file in the matter of Murphy vs. Tatum; Oberg's written communications between she and Tatum; Written communications between Tatum and Murphy; Discovery documents received by Oberg in the matter of Murphy vs. Tatum; and, other miscellaneous documents.

In preparation for making findings and forming an opinion as to whether the Defendants committed legal malpractice, all of the documents provided by the parties were reviewed.

### I. Murphy v. Tatum

The parties to the underlying legal action, Kathleen Murphy and Gary Tatum, the Plaintiff in this action, were married in College Station, TX on July 3, 1991. There were two minor children issue of the marriage, George Murphy and Alex Murphy both born on August 28, 1998. The family lived in Texas during their marriage. During the summer 2001, Dr. Murphy

Case 3:08-cv-01251-JCH Document 149 Filed 09/20/10 Page 3 of 15

took the minor children to Connecticut. On October 5, 2001, Kathleen Murphy filed an action for Legal Separation against Gary Tatum in the Superior Court for the Judicial District of Windham at Putnam. This matter was docketed number FA-01-0077799S. Mr. Tatum subsequently relocated to Connecticut and appeared through counsel, Norma Arel. Thereafter, the matter was transferred to Rockville, CT and the Defendant Ford, Oberg, Manion and Houck filed an appearance on behalf of Tatum, Attorney Mary Oberg being responsible for the file and representation.

The matter of Murphy vs. Tatum went to judgment on April 22, 2004 before the Honorable Lawrence C. Klaczack, JTR. The terms of the judgment were based on a Separation Agreement entered into by the parties on April 22, 2004, which was found to be fair and equitable and the terms of which were incorporated into the judgment.

Subsequent to the entry of the judgment, Tatum discovered that Murphy had failed to disclose at any time during the pendency of the action that she owned certain real property and thousands of dollars of savings bonds. Further, Murphy failed to disclose these assets on her financial affidavit provided to Tatum and to the Court at the time of the final hearing on the dissolution of marriage.

Following Tatum's discovery of the fact that Murphy had undisclosed assets, he notified Oberg who filed a Motion to Reopen. Said Motion was heard before the Honorable Stanley T. Fuger, Jr. on October 22, 2004 and October 27, 2004. At the conclusion of the hearing, Judge Fuger found that Murphy had committed fraud in not disclosing the real property and savings bonds that she owned, but he refused to reopen the judgment on the basis that the Court could not find that there was a substantial likelihood that the result of a new trial would be different. The Court held "It's possible if this matter were to go to trial there would be a different result in

Case 3:08-cv-01251-JCH   Document 149   Filed 09/28/10   Page 42 of 135

regard to property division.   It's possible the Defendant would not have entered into the stipulated agreement had he possessed all of the information that was withheld, but the Court cannot find there is a substantial likelihood that that would occur.  So the Court is convinced that there is no necessity to open or reopen the judgment as to the vast majority of the agreement." The Court went on to find "... it is clear from the testimony that's here that there are forty-three --- at least forty-three thousand dollars in savings bonds assets, which if the Plaintiff is to be believed, not an altogether requirement based upon the history, that the savings bonds are for the purpose of educating the children."  The Court did find that the judgment could be reopened as to the post high school education of the children.

Tatum appealed the decision denying the Motion to Reopen Judgment. On October 17, 2005 Tatum and Murphy entered into an agreement that provided there would be no further motions relative to the distribution of assets and/or the payment of alimony or the like relative to the judgment.  They further agreed that Murphy would pay Tatum the sum of $12,500 and that the bonds would be placed in a trust for the benefit of the minor children.  Murphy agreed to withdraw her pending Motion for Child Support and not to ask the Court for a child support order on or before August 28, 2006.  In consideration of the terms of the agreement the appeal was withdrawn.

## II.  Tatum vs. Oberg, et al

The matter of Tatum vs. Oberg, et al was filed with the United States District Court for the District of Connecticut in July, 2008 claiming, among other things, that Defendants Oberg and Ford, Oberg, Manioin & Houck, PC failed to provide services to Tatum in accordance with professional services equal to the degree of skill and learning commonly applied under the

4

circumstances then and there existing by a prudent member of the legal profession. On January 20, 2009 Tatum filed an Amended Complaint. His Third Claim for Relief being Malpractice.

### A. Incomplete Discovery Claim

In paragraph 19(b) Tatum alleged that the Defendants failed to engage in discovery designed to ensure that Plaintiff's financial interests in the dissolution action were adequately protected. In paragraph 19(d) Tatum alleged that the Defendants failed to file appropriate motions to ensure the Plaintiff's former wife fully and fairly complied with discovery. In paragraph 19(f) Tatum alleged that the Defendants concealed discovery and/or failed to obtain discovery that would have alerted Tatum to their failure to comply with the standard of care. In Paragraph 19(g) Tatum alleged that the Defendants failed to respond to Tatum's requests regarding the manner in which the case proceeded. In paragraph 20 Tatum alleged that as a result of the breach of the standard of care, he sustained economic damages.

The primary underlying issue forming the basis of Tatum's claim of legal malpractice in paragraphs 19(b), (d), (f), (g) and 20 of his Amended Complaint appears to be the failure of Oberg to conduct discovery which may have led to findings that (1) Murphy had purchased real estate, for approximately $47,000, in 2002 during the pendency of the dissolution of the marriage action between Tatum and Murphy, and (2) Murphy had at various times throughout the marriage purchased U.S. Savings Bonds with an approximate value of $35,000 all of which she continued to own at the time Murphy and Tatum entered into a separation agreement resolving their financial and property claims. Neither of these assets was referred to in the terms for the division of the parties' property in the separation agreement. Neither of these assets was

5

disclosed on Murphy's financial affidavit provided to Tatum and filed with the Court at the time of the final hearing for Dissolution of Marriage.[1]

In summary, the undersigned makes the following findings with respect to these issues. Following the service of the dissolution of marriage complaint by Kathleen Murphy in October 2001, Tatum's first attorney, Norma Arel, on November 2, 2001, filed a Request for Disclosure and Production as provided for by the Connecticut Rules of Court section 25-32, Mandatory Disclosure and Production. Said Request asked for the production of, among other things, "All federal and state income tax returns filed within the last three years, including personal returns..." Connecticut Rules of Court section 25-32 (b) creates a continuing duty to disclose and provide updated documents during the pendency of the action. Based on the date of filing, the initial returns to be produced would have been for the tax years 1998, 1999 and 2000. At some point prior to the end of the case the 2001 return was produced. The 2002 return was not. The action continued through April, 2004.

On numerous occasions, as seen in the e-mail correspondence between Tatum and Oberg, provided by both parties, Tatum requested that Oberg obtain the 2002 return. There is no evidence produced, other than the original request for production, that Oberg made such a request while the action was pending. In various e-mails to Oberg, Tatum voiced his concerns that Murphy was hiding assets. There is no evidence from the documents provided that Oberg

---

[1]   Although it does not absolve Defendants of their duty to complete discovery, it bears noting that Plaintiff was aware that Murphy owned various savings bonds during the course of the marriage and that such bonds were not listed on her financial affidavit at the time of the final hearing for dissolution of marriage. There is no evidence that Plaintiff ever brought this omission to Defendants' attention so that same could be explored further or otherwise subjected to further inquiry.

filed any Interrogatories to address Tatum's concern about hidden assets or took any other action in this regard.[2]

Pursuant to LaBieniec v. Baker, 11 Conn. App. 199, 202-03, 526 A.2d 1341 (1987) there is a four prong test that must be satisfied for a finding that a legal malpractice has occurred. The prongs are: (1) that there is a duty on the part of the lawyer to conform to a particular standard of conduct for Plaintiff's protection; (2) that the attorney failed to measure up to that standard; (3) that the Plaintiff suffered an actual injury; and (4) that the attorney's conduct was the proximate cause of the Plaintiff's injury. Id. See also Cook v. Williams, 2002 U.S. Dist. LEXIS 27412, at *10-11 (D. Conn. 2002).

With respect to the first prong of the test, it is this expert's opinion that it has been established that there was a breach in the standard of care. With respect to the second prong of the test, Oberg and, by extension, the firm of Ford, Oberg, Manioin and Houck, PC, failed to conform to that particular standard of conduct with respect to the request for Murphy's 2002 tax return and Tatum's concerns that she owned real property and was otherwise hiding assets. However, based on the Court's finding with respect to the Motion to Reopen Judgment, that

---

[2] The agreement, however, among other provisions, provided in Paragraph 16: "Discovery: The parties acknowledge that each has had ample opportunity to request of the other documents and information related to the assets and income of the other, and that the requested documents have been provided and reviewed by each party to their satisfaction. Each party agrees that they are satisfied with such discovery and the information contained therein, and that neither requests any further documents or information and they have directed their respective counsel not to inquire further."

This provision in the fully executed agreement bears the connotation that, ultimately, Tatum was satisfied with the disclosure he had received via Defendants' work on his case, despite the lack of production of the 2002 tax return. Nonetheless, this expert concludes that Defendants' failure to pursue the full disclosure of tax information and assets during the pendency of the dissolution of marriage action, especially in light of Plaintiff's voiced concerns regarding the same, constituted a breach of their duty, regardless of Tatum's position at the time he signed the Separation Agreement.

Murphy committed a fraud but that there was not a substantial likelihood that the result of a new trial would be different or that the Settlement Agreement into which he entered would have been substantially different, Tatum did not suffer an actual injury. Furthermore, by settling his appeal, Tatum effectively foreclosed any further relief he could obtain and made unquantifiable any damages that he may have sustained. Essentially, Tatum's agreement as to the appeal of the Motion to Reopen Judgment was in lieu of any damages that may have been suffered due to the nondisclosure. As there are no damages, the forth prong of the test is not satisfied.

### B. Additional Claims

Tatum alleges in Paragraph 19(a) of the Amended Complaint that the Defendants failed to provide him with timely and correct legal advice. There is no evidence in the documents provided that the Defendants failed to do so. In fact, the correspondence between Oberg and Tatum exhibits the contrary.

Tatum alleges in Paragraph 19(c) that he was billed for unnecessary research and drafting on issues about which Defendants were alleged to be experts, causing Plaintiff to incur unnecessary legal fees. There is nothing in the evidence provided that supports this claim. Although attorneys in the area of matrimonial law have a certain knowledge base, which was exhibited by Oberg, each case presents its own set of facts and questions of law such that research is required. The hours billed for research appeared reasonable in light of the issues with respect to the finances, property and the parenting plan for the children that were present in the underlying dissolution of marriage action.

Paragraph 19(e) alleges that the Defendants failed to properly advise Tatum as to the costs and risks associated with relying upon a motion to open judgment based upon fraud. There is no evidence in the documents provided that addresses this issue one way or the other. There

8

does not seem to this expert to be any apparent risk that was associated with the Motion to Reopen. Although the ruling of the Court was not in Tatum's favor, Tatum successfully retained and exercised his right to take a timely appeal from that judgment. With respect to counsel fees, as is usually the case and as was the case in relationship to the Motion to Reopen, Oberg requested that Murphy pay counsel fees to Tatum. Counsel fees are governed by CGS section 46b-62 and are left to the discretion of the Court. The award of counsel fees was not appealed by Tatum.

Paragraph 19(h) alleges that the Defendants failed to vet properly the individual used to offer an opinion on custody in the dissolution matter. The parties agreed that Dr. Donald Hiebel would conduct the custody evaluation for purposes of setting forth a parenting plan that would serve the best interests of the children. Based on this expert's knowledge, Dr. Hiebel's reputation throughout the State of Connecticut and in the Regional Family Custody Docket is that he is one of the highest caliber psychologists and custody evaluators.

Paragraph 19(i) alleges that the Defendants mislead Tatum as to the total costs associated with the dissolution action. Reviewing the retainer agreement, there is no estimate as to the cost that would be involved in the action. There is nothing in any of the documents provided that supports the Plaintiff's allegation.

Finally, paragraph 20 of the third claim for relief is that, as a result of the breach of the standard of care, Plaintiff has sustained economic damages. For all of the reasons set forth above, it is the opinion of this expert that no economic damages were sustained.

Applying the four-prong test for legal malpractice set forth in LaBieniec v. Baker; 11 Conn. App. at 202-03; and iterated above to the allegations in Paragraphs a, c, e, h and i, the undersigned expert finds that Plaintiff has met the first prong, that a duty to conform to a

particular standard of conduct for Plaintiff's protection exists.  However, Plaintiff has failed to meet the second prong of proving that Defendants failed to conform their conduct to that standard of care.  Likewise, Plaintiff has not met the third and fourth prongs of the test, in that that he has not proven the existence of an actual injury and resultant damages.

Respectfully Submitted

Sarah D. Eldrich, Esq.
Court Appointed Expert

**Exhibit C**

MORRISON MAHONEY LLP • COUNSELLORS AT LAW

ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103

(860) 616-4441 • JURIS NO. 404459

```
 1    FA01-0077799S              :    SUPERIOR COURT

 2    KATHLEEN J. MURPHY         :    TOLLAND JUDICIAL DISTRICT

 3    VS.                        :    ROCKVILLE, CONNECTICUT

 4    GARY L. TATUM              :    OCTOBER 27, 2004

 5

 6

 7    B E F O R E :

 8                    HONORABLE STANLEY T. FUGER, JR.

 9                      SUPERIOR COURT JUDGE

10

11

12    A P P E A R A N C E S :

13         For the Plaintiff:

14              MICHAEL BUDLONG, ESQ.

15              BUDLONG & BARRETT

16              89 Oak Street

17              Hartford, Connecticut  06106

18         For the Defendant:

19              MARY OBERG, ESQ.

20              FORD, OBERG, MANION & HOUCK

21              220 Hartford Turnpike

22              Vernon, Connecticut  06066

23         Ordering Party:

24              DANIEL J. KRISCH, ESQ., Attorney for Defendant

25              90 Gillett St., Hartford, CT  06105

26                              June C. DePolito

27                              Court Monitor
```

1    MS. OBERG:  If Your Honor wishes to hear argument on

2    that motion, I didn't — I know testimony was certainly

3    taken on that motion, Your Honor, and I'm merely pointing

4    out that that agreement did not require proof of the

5    insurance, but rather that it required that the parties

6    execute an authorization, which I'll note for the Court, I

7    don't believe either party has done at this time, but

8    that's not a provision to provide proof of the insurance.

9        THE COURT:  There's plenty enough blame to go around

10   for both parties here.

11       The following is going to constitute the ruling of

12   this Court.

13       Defendant's Exhibit One is the financial affidavit

14   prepared by Dr. Murphy.  It's clear that this financial

15   affidavit is false.  It does not list any savings bonds.

16   It does not list any property.  It does not list the

17   payment of any real property taxes.

18       There is, however, clear evidence that there are

19   savings bonds that are not listed on here.  There's clear

20   evidence that the plaintiff is the owner of real property

21   that is not listed on here.  There is clear evidence that

22   the defendant — that the plaintiff pays real estate

23   taxes and that there is no disclosure on the financial

24   affidavit as to real estate taxes.  So the Court has no

25   doubt that it has a false affidavit.

26       It's crystal clear the parties in a dissolution

27   action have the responsibility to file accurate

1   information with the Court.  These financial affidavits

2   form a substantial part of the basis upon which a Court

3   makes a decision when it's contested and may well form a

4   substantial part of any stipulated agreement that the

5   parties work out between themselves.

6       Consequently, as to the second requirement, which is

7   in *Varley vs. Varley* (phonetic), the Court will find that

8   there is clear evidence or proof of fraud.

9       Now, there's two potential persons, entities who may

10  have been defrauded by this false financial affidavit.

11  One is the defendant.  Two is the Court.

12      It's clear that the Court has a duty under

13  Connecticut General Statute 46b-66 to determine whether a

14  settlement agreement is fair and equitable under all of

15  the circumstances.

16      Judge Klaczak approved the settlement agreement.

17  However, Judge Klaczak was deprived of accurate

18  information when he approved that settlement agreement and

19  he was deprived of accurate information as a result of

20  conduct of the plaintiff in this case.

21      The Court is also convinced there's no laches on the

22  part of the defendant in filing this motion.  Whether it's

23  a motion to open or a motion to reopen, I'll let the

24  English majors deal with that.

25      The problem with fraud on the Court, and it is clear

26  in *Billington* (phonetic) at the tail end of that decision,

27  it requires a bilateral fraud, and the Court sees no

evidence that the defendant in this case participated in the false and fraudulent affidavit prepared by the plaintiff.

Consequently, it is pretty clear under *Billington* and *Baker vs. Baker* that although there has been a fraud upon the Court, it will not result in an opening, reopening of the judgment because there is no bilateral fraud.

Now, in regard to the fraud on the defendant, the key element, the key holding in *Varley* is that there must be a substantial likelihood that the result of the new trial would be different.

Now, there was not a trial in this case. There was a stipulated agreement. There has been evidence presented by the defendant that if he'd had this information, he's not certain how the property would have been divided.

Nevertheless, the defendant is not exactly in a position that provides him with great bargaining power. For at least three years, for reasons unknown to this Court, the defendant has been unemployed, despite the fact that he possesses a bachelor and masters degree and would appear to be qualified to work.

It's clear from the evidence presented in this court that the defendant has not provided support for his wife or his children. It is clear that the plaintiff in this case has been employed, has been gainfully employed and has been taking the lion's share, if not the total share, of support for herself and her children.

64

1    The requirement set forth in *Varley* requires proof

2    that there is a substantial likelihood —  likelihood —

3    that the result of the new trial would be different.  The

4    Court cannot make that finding.

5    It's possible if this matter were to go to trial

6    there would be a different result in regard to property

7    division.  It's possible the defendant would not have

8    entered into the stipulated agreement had he possessed all

9    of the information that was withheld, but the Court cannot

10   find there is a substantial likelihood that that would

11   occur.  So the Court is convinced that there is no

12   necessity to open or reopen the judgment as to the vast

13   majority of the agreement.

14   However, it is clear from the testimony that's here

15   that there are forty-three —  at least forty-three

16   thousand dollars in savings bonds assets, which if the

17   plaintiff is to be believed, not an altogether requirement

18   based upon the history, that the savings bonds are for the

19   purpose of educating the children.

20   The Court will find that the judgment may be opened

21   or reopened as to paragraph twelve dealing with the post

22   high school education of the children.  In that regard,

23   the parties may enter into negotiations to modify that

24   with an eye towards placing the savings bonds into a trust

25   such that it is clearly available for the post high school

26   education of George and Alex.  There is no reason why

27   innocent children should have to suffer.  Both parties are

71

| | | |
|---|---|---|
| 1 | FA01-0077799S | : | SUPERIOR COURT |
| 2 | KATHLEEN J. MURPHY | : | TOLLAND JUDICIAL DISTRICT |
| 3 | VS. | : | ROCKVILLE, CONNECTICUT |
| 4 | GARY L. TATUM | : | OCTOBER 27, 2004 |

5

6

7                    C E R T I F I C A T I O N

8              I hereby certify that the foregoing is a true and

9    correct transcript of the proceedings held in the above-entitled

10   case heard before the Honorable Stanley T. Fuger, Jr., Superior

11   Court Judge, Tolland Judicial District, Rockville, Connecticut on

12   the 27th day of October, 2004.

13              Dated this *15th* day of *March, 2005*

14   At Rockville, Connecticut.

15

16

17

18                              *June C. DePolito*

19                              June C. DePolito

20                              Court Monitor

21

22

23

24

25

26

27