## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GARY L. TATUM             :
     Plaintiff,           :     CIVIL ACTION NO.
                     :     3:08-CV-1251 (JCH)
     v.               :
                     :
MARY CHRISTINA OBERG, ET AL.,  :     MARCH 23, 2011
     Defendants.          :

### RULING RE: MOTION FOR SUMMARY JUDGMENT (Doc. No. 158)

## I.    INTRODUCTION

The plaintiff, Gary L. Tatum ("Tatum"), brings this lawsuit against defendants Mary Christina Oberg ("Oberg") and the law firm, Ford, Oberg, Manion and Houck, P.C. ("FOMH"), alleging breach of contract and legal malpractice.  Oberg, an attorney at FOMH, previously represented Tatum in an action to dissolve Tatum's marriage to Kathleen J. Murphy ("Murphy").  The defendants now move the court for summary judgment in their favor on Tatum's claims for malpractice and breach of contract.  For the reasons contained herein, the court grants in part and denies in part the defendants' Motion for Summary Judgment (Doc. No 158) as to Tatum's legal malpractice claim, and denies defendants' Motion for Summary Judgment as to Tatum's breach of contract claim.

## II.    PROCEDURAL HISTORY

Tatum originally brought this lawsuit against Oberg and FOMH, claiming fraud, breach of contract, legal malpractice, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA").  In a Ruling dated September 3, 2009, this court granted the defendants' Motion to Dismiss Tatum's claims for fraud and breach of contract (Doc.

-1-

No. 98) (hereinafter "September 3 Ruling").  The court also granted the Motion to Dismiss as to all but one of Tatum's claims under CUTPA. The Motion to Dismiss was denied as to Tatum's allegation under CUTPA that the defendants billed him for legal services that were never performed.  See Am. Compl., Doc. No. 69, at ¶ 22.[1]  In a hearing before the court on December 8, 2009, Tatum withdrew the remaining CUTPA claim by stipulation.  See Doc. No. 126.

In the September 3 Ruling, Tatum was given the right to replead the fraud and breach of contract claims, provided he had a factual and legal basis to do so.  On October 2, 2009, Tatum moved to file a Second Amended Complaint repleading the fraud and contract claims.  See Mot. to File Amended/Corrected Complaint, Doc. 107. The court denied Tatum's Motion for Leave to Amend his fraud claim, finding that his proposed Second Amended Complaint would not be able to survive a motion to dismiss under Rule 12(b)(6).  See Ruling (Doc. No. 128) at 4-9.  For the same reason, the court denied in part Tatum's Motion for Leave to Amend his breach of contract claim.  Id. at 9-11.  However, the court granted leave to amend the Complaint to add two allegations that Oberg and FOMH agreed to obtain "specific results" for Tatum.  Id.  The court held that these allegations constituted an actionable contract claim.  Id.

On January 29, 2010, consistent with this Ruling, Tatum filed his Second Amended Complaint, alleging breach of contract and legal malpractice.  Second Am. Compl. (Doc. No. 135).   As discussed below, on January 20, 2010, the court appointed

---

[1] Because the defendants did not move to dismiss Tatum's legal malpractice claim, that claim was not addressed in the September 3 Ruling.

Attorney Sarah Eldrich as a pro bono expert for the court to evaluate Tatum's legal malpractice claim.  Ruling Appointing Expert (Doc. No. 134).  Attorney Eldrich's expert report was submitted to the court on or about July 26, 2010.  Report of Court Appointed Expert ("Eldrich Report") (Doc. No. 149).  The defendants filed their Motion for Summary Judgment on September 22, 2010.  Defs' Mot. for Summ. J. (Doc. No. 158).[2]

## III.   FACTUAL BACKGROUND

### A.   Timeline of Events

On or about February 12, 2002, Tatum retained FOMH to represent him in proceedings to dissolve his marriage to Murphy.  Defendants' First Local Rule 56(a)(1) Statement (Doc. No. 102) at ¶ 1 (hereinafter "Defs' First 56(a)(1)").  The case was subsequently assigned to Oberg, a partner in the firm.  On April 22, 2004, Tatum and Murphy entered a settlement agreement that provided for a division of their property and custody arrangements for their twin sons (hereinafter "settlement agreement" or "agreement").  Defs' First 56(a)(1) at ¶ 4.  Tatum's representation by Oberg and FOMH ultimately lasted through June 2005.

Tatum's allegations center on the terms of his settlement agreement with Murphy as to the division of property.  Prior to April 2004, Tatum and Murphy engaged in discovery for the purpose of gauging their respective property holdings.  During discovery, Murphy turned over financial affidavits that failed to disclose the full amount

---

[2] The defendants had previously filed a Motion for Summary Judgment on September 15, 2009.  See Defs' Mot. for Summ. J., Doc. No. 100.  That Motion was subsequently terminated in light of the defendants' request that the court permit it to file a new, comprehensive motion for summary judgment following the court's ruling on Tatum's Motion to Amend his Complaint.  See Ruling Re: Mot. for Summ. J., Doc. No. 133.

of her assets.   Specifically, Murphy concealed that she (a) owned roughly $43,000 worth of U.S. Savings Bonds (hereinafter "bonds"), and (b) had purchased a parcel of real estate some time in 2002 (hereinafter "2002 real estate purchase").   Id. at ¶¶ 11, 13.  Due to Murphy's concealment of the bonds and the 2002 real estate purchase, the settlement agreement signed by Tatum and Murphy in April 2004 did not account for those holdings.

Soon after the settlement was executed, Tatum discovered, by reviewing receipts located at his residence, that Murphy had concealed her bond holdings.  Id. at ¶ 6. Tatum then "conducted an internet asset search," which uncovered the 2002 real estate purchase.  Id. at ¶ 11.  Based on these findings, on July 9, 2004, "Oberg filed a motion to reopen the property judgment . . . [and] subpoenaed Dr. Murphy's 2003 tax return." Id. at ¶ 12.  A hearing was held on Oberg's Motion to Reopen, in which the court found that Murphy had indeed submitted a "false" financial affidavit during the pre-settlement discovery process, and that the judge who initially approved the settlement agreement was consequently "deprived of accurate information."  Defs' First 56(a)(1), Ex. F at 61-62.  The court nonetheless denied the Motion to Reopen on two grounds: first, that there was no evidence of "bilateral fraud" on the court,[3] and second, that the court could not find that there was a "substantial likelihood" that the stipulated agreement between Tatum and Murphy would have been different if the additional financial information had

---

[3] Under Connecticut law, a marital judgment based upon a stipulation can be reopened if there has been a "fraud on the court."  See Billington v. Billington, 220 Conn. 212, 222-25 (1991).  A "fraud on the court," requires both parties to have intentionally concealed material information from the court.  Id. at 217.  As Murphy was the only party to the marital dissolution to commit fraud, the court could not reopen the judgment based upon a "bilateral fraud" on the court. Defs' First 56(a)(1), Ex. F at 63.

been disclosed before the settlement was executed in April 2004.[4]  Id. at 63-64.  The

court did reopen the April 2004 settlement agreement as to the "post high school

education of the children," in order to permit the savings bond assets to be placed in

trust for the children's higher education.  Id. at 64.

Tatum subsequently retained new counsel to appeal the court's denial of Oberg's

Motion to Reopen.  Defs' First 56(a)(1) at ¶ 14.  A decision on appeal was never

rendered, as Tatum and Murphy settled the matter in October 2005, with Tatum

receiving $12,500 in exchange for withdrawing the appeal.  Id.  The savings bonds were

placed in a trust for the benefit of the minor children, and Murphy agreed to withdraw

her pending Motion for Child Support and not to ask the court for a child support order

before August 29, 2006.   See Eldrich Report (Doc. No. 149) at 4.

B.    Legal Fees

The defendants assert that Tatum's April 2004 settlement agreement required

Murphy to pay Tatum's attorneys' fees for the Motion to Reopen.  Defs' First 56(a)(1), at

¶ 19.  In support of this proposition, the defendants cite an excerpt from Tatum's

deposition, in which Tatum testified that Attorney Oberg secured for Tatum the

"payment . . . in part . . . of [his] fees by [his] ex-wife," as part of the initial settlement for

divorce in April 2004.  Id., Ex. G, at 223.  However, the April 2004 settlement agreement

---

[4] "A marital judgment based upon a stipulation may be opened if the stipulation, and thus
the judgment, was obtained by fraud" on one of the parties.  See Billington, 220 Conn. at 217-
18.  However, in order to gain relief from a marital judgment secured by fraud on one of the
parties, the court must find that there is "a substantial likelihood that the result of the new trial
will be different."  Id. at 218, 222 (citing Varley v. Varley, 180 Conn. 1 (1980)).  Here, the court
concluded that there was not a substantial likelihood that the stipulated agreement between
Tatum and Murphy would have been different if Murphy had accurately disclosed her financial
information.  Defs' First 56(a)(1), Ex. F, at 63-64.

provided that Murphy would pay $3,500 to FOMH as payment of Tatum's legal fees. Id., Ex. C, at § 13.  The April 2004 settlement agreement did not create an obligation for Murphy to pay any of Tatum's subsequent legal fees, including the Motion to Reopen. Id.

        In the Plaintiff's First Local Rule 56(a)(2) Statement, Tatum admits that a portion of his legal fees were paid by Murphy, but Tatum does not admit that the legal fees for the Motion to Reopen were paid by Murphy.  Pl.'s First 56(a)(1), at ¶ 19.   At his deposition, Tatum stated that he paid $1,000 to Oberg for her work on the Motion to Reopen.  Defs' First 56(a)(1), Ex. G, at 224.  While Tatum admits that Murphy was to pay $500 toward that amount, in fact she never did due to his appeal.  Id.  Based on the foregoing, the court concludes that a genuine factual dispute exists as to whether Tatum paid fees to Oberg or FOMH for work related to the Motion to Reopen.[5]

## IV.    STANDARD OF REVIEW

        A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination,

---

        [5] The $12,500 settlement reached by Tatum and Murphy in October 2005 could have included payment of the legal fees Tatum incurred subsequent to the discovery of the concealed assets. However, the defendants have failed to establish a clear record regarding the details of this settlement.

-6-

the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.' "  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere " 'scintilla' " of evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

## V.   DISCUSSION

### A.   Legal Malpractice Claim

#### 1.   Tatum's Allegations of Legal Malpractice

Tatum claims that the defendants committed legal malpractice "in one or more of the following ways":

a.   Failing to provide Plaintiff with timely and correct legal advice;

     b.      Failing to engage in discovery designed to ensure that Plaintiff's financial interests in the dissolution action were adequately protected;

     c.      Failing to file appropriate motions to ensure that Plaintiff's former wife fully and fairly complied with discovery;

     d.      Failing to properly advise plaintiff as to the costs and risks associated with relying upon a motion to open judgment based upon fraud;

     e.      Concealing discovery and/or failing to obtain discovery that would have alerted Plaintiff to their failure to comply with the standard of care;

     f.      Failing to respond to Plaintiff's requests regarding the manner in which the case proceeded;

Second Am. Compl., Second Count, at ¶ 19.

       2.      Elements of Legal Malpractice

Connecticut law defines malpractice as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." Dixon v. Bromson and Reiner, 95 Conn. App. 294, 297 (2006) (quotation marks and citation omitted).  The elements of a legal malpractice cause of action are (1) a duty on the part of the lawyer to conform to a particular standard of conduct for the plaintiff's protection; (2) a failure by the attorney to measure up to that standard; (3) an actual injury suffered by the plaintiff; (4) for which the attorney's conduct was the proximate cause.  See LaBieniec v. Baker, 11 Conn. App. 199, 202-03 (1987).

       3.      Necessity of Expert Testimony

Under Connecticut law, the general rule is that a plaintiff bringing a claim for legal malpractice is required to "present expert testimony to establish the standard of proper professional skill or care."  Moore v. Crone,  114 Conn. App. 443, 446 (2009) (citation omitted); see also Bent v. Green, 466 A.2d 322, 325 (Conn. Super. 1983) ("The general

rule is that where the exercise of proper professional skill and care is in issue, expert testimony tending to establish the want of such skill and care is essential to recovery."). This requirement of expert testimony in legal malpractice cases "serves to assist lay people, such as members of the jury . . . to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard." Davis v. Margolis, 215 Conn. 408, 416 (1990).

Expert testimony is also required to prove that a breach has actually injured the plaintiff. See Byrne v. Grasso, 118 Conn. App. 444, 451 (2009); Beecher v. Greaves, 73 Conn. App. 561, 564 (2002). "Not only must the plaintiffs establish the standard of care, but they must also establish that the defendant's conduct legally caused the injury of which they complain." Moore, 114 Conn. App. at 446 (citation omitted). "In legal malpractice actions, the plaintiff typically proves that the defendant attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the defendant not been negligent. This traditional method of presenting the merits of the underlying action is often called the 'case-within-a-case.'" Lee v. Harlow, Adams and Friedman, P.C., 116 Conn. App. 289, 297 (2009).

4.    Tatum's Contention That Expert Testimony Is Not Required

Tatum never disclosed an expert witness nor moved the court for additional time to do so. Pursuant to this court's Scheduling Order issued on February 13, 2009 (Doc. No. 77), if Tatum intended to use any expert witnesses in this case, he was required to disclose such expert witnesses to the defense by June 1, 2009. The Scheduling Order

also provided that any such experts must have been deposed by July 1, 2009, and that "[a]ll discovery, including all discovery relating to expert witnesses, will be completed (not propounded) by August 1, 2009."  <u>See</u> Scheduling Order (Doc. No. 77) at 1.

Tatum contends that this case does not require expert testimony because an exception applies to the general rule that requires expert testimony to establish a claim of legal malpractice.  An exception to the general rule exists "where there is present such an obvious and gross want of care and skill that the neglect is clear even to a layperson."  <u>Moore</u>, 114 Conn. App. at 447 (quotation marks and citation omitted).  Tatum asserts that "[t]his is just the type of situation that was envisioned by the courts in carving out this exception to the general rule of the necessity for expert testimony in a legal malpractice case."  Pl.'s Mem. in Opp. (Doc. No. 165) at 8.

The court concludes that Tatum's position is without merit.  The general rule – that expert testimony is required to make out an actionable case of legal malpractice – applies in all but "limited" circumstances in which the attorney's misconduct "would be obvious even to a layperson."  <u>Moore</u>, 114 Conn. App. at 447-48.  These limited circumstances typically involve attorneys who "have failed to follow basic rules of procedure or have incurred default judgments for their failure to attend court hearings."  <u>Id</u>. at 48 (quotation marks omitted).  In one case, for instance, the Connecticut Appellate Court held that expert testimony was not required to establish a claim of legal malpractice against a lawyer who was hired in a summary process action and, after "assur[ing his clients] that he would 'handle' the matter, . . . took no further action whatsoever to protect their interests."  <u>Paul v. Gordon</u>, 58 Conn. App. 724, 728 (2000).

In another case, the court held that expert testimony was not required to make out a malpractice claim against an attorney who was retained to represent a client in a foreclosure action and then simply failed to attend various proceedings, leading to a default judgment in favor of the opposing party.   Dubreuil v. Witt, 80 Conn. App. 410, 419, 422 (2003).  In Dubreuil, the defendant had been found liable for legal malpractice in a bench trial before the Connecticut Superior Court.  The Appellate Court emphasized that no outside expert testimony was necessary because "there may be no expert who knows more about the practice of law before the Superior Court than a judge of that court."  Id. at 422.

The court is aware of no case that supports Tatum's contention that "[t]his is just the type of situation that was envisioned by the courts in carving out this exception to the general rule of the necessity for expert testimony in a legal malpractice case."  Pl.'s Mem. in Opp. (Doc. No. 165) at 8.  To the contrary, the main case cited by Tatum in support of this conclusory assertion, Dixon v. Bromson and Reiner, 95 Conn. App. 294 (2006), appears to directly contradict it.  In Dixon, the client retained a law firm to represent her in an action to partition real property.  Id. at 295.  While the client "sought to have the court order a partition in kind," the court ultimately ordered a partition by sale.  Id. at 295.  The client then sued the law firm, alleging that it had committed malpractice by "fail[ing] to obtain and provide appropriate surveys, studies and any other evidence to show that the property could be fairly and equitably partitioned in kind."  Id. at 296.  The trial court granted summary judgment to the law firm on the ground that the client could not establish causation without the testimony of an expert

witness, and the client failed to produce expert evidence in support of her legal malpractice claim.  <u>Id</u>.  The grant of summary judgment was affirmed on appeal; the Connecticut Appellate Court noted with approval the trial court's statement that "an observation by [the court in the partition action] . . . that evidence was not produced to support a contention does not mean that the failure to produce that evidence was the result of professional negligence by trial counsel."  <u>Id</u>. at 298.

This case is quite similar to <u>Dixon</u>, in that Tatum's legal malpractice claim is premised largely on the defendants' alleged failure to uncover the full extent of Murphy's finances through discovery prior to the April 2004 settlement agreement.  Indeed, even construing the record in Tatum's favor, there is no evidence[6] indicating that the defendants committed the type of "obvious and gross want of care and skill" that would warrant nonapplication of the general rule that expert testimony is required to bring a claim for legal malpractice.  While the discovery conducted by the defendants over the course of their representation of Tatum may not have been thorough, there is no evidence to suggest that any misconduct committed by the defendants conduct was so egregious that expert testimony would not be required under Connecticut law to establish legal malpractice.

---

[6] Notably, Tatum's Memorandum in Opposition to the defendants' Motion for Summary Judgment contains no citations to the record in this case.  The Memorandum does refer to the Second Amended Complaint several times in the section labeled "Factual History."  However, Tatum does not cite any admissible evidence in support of his contention that "there is present such an obvious and gross want of care and skill that . . . neglect is clear even to a layperson." Pl.'s Mem. in Opp., Doc. No. 165, at 5 (quoting <u>St. Onge, Stewart, Johnson, & Reens, LLC v. Medical Group, Inc.</u>, 84 Conn. App. 88, 95 (2004)).   Moreover, Tatum does not discuss any case law that sheds light on his conclusory assertion that the defendants' misconduct rises to a level at which expert testimony is not required.  <u>Id</u>. at 4-5, 8.

To give just one example, the court concludes that a jury of lay persons would not be able to conclude, without the benefit of expert testimony, that Oberg "should have conducted an extensive independent investigation into [Murphy's] banking records, and credit report" prior to the 2004 settlement agreement. Defs' First 56(a)(1), Pl.'s Answers to Interrogatories, Ex. A, at 7. As evidence in the record shows, it is generally the responsibility of the *parties* to a dissolution action to file accurate financial affidavits. Defs' First 56(a)(1), Ex. F, at 62-63 (statement of trial judge at hearing on Oberg's Motion to Reopen). Tatum himself stated in a deposition that he expected Murphy to provide him with accurate financial information. Defs' First 56(a)(1), Tatum Dep., Ex. C, at 57. The court does not discount the possibility that an attorney may be liable for malpractice in some cases for conducting discovery in a negligent manner. See Eldrich Report, at 5-8. However, construing the record in Tatum's favor, there is no evidence indicating that the defendants' negligence was even close to as egregious as that committed by the attorneys in the Paul and Debreuil cases, in which the attorneys outright abandoned their responsibilities.

The court concludes that the applicable standard of care by which the defendants' conduct must be judged in this case "is beyond the experience of an ordinary fact finder." Santopietro v. New Haven, 239 Conn. 207, 226 (1996). Expert testimony is required to evaluate Tatum's legal malpractice claim, both to evaluate whether the applicable standard of care has been met and to determine whether any breach of that standard of care proximately caused injury to Tatum in the form of an unfavorable division of assets.

5.      Findings of Court Appointed Expert

In light of the foregoing, on January 20, 2010, the court appointed Attorney Sarah D. Eldrich as a pro bono expert witness to assist the court in determining whether Tatum had raised an issue of fact sufficient to survive summary judgment as to his claim of legal malpractice against the Defendants.  See Order Appointing Expert (Doc. No. 134).  The parties were directed by the court to provide Attorney Eldrich with all evidence relevant to Tatum's claim of legal malpractice.  Id.  Attorney Eldrich reviewed "voluminous documents" submitted by the parties and submitted a formal report to the court on July 26, 2010.  See Eldrich Report (Doc. No. 149).  After Attorney Eldrich submitted her report, the parties had the opportunity to take her deposition.[7]  See Ruling Appointing Expert (Doc. No. 134) at 2.

In her expert report, Attorney Eldrich grouped Tatum's malpractice claims into the categories of "incomplete discovery" and "additional claims."  Attorney Eldrich characterized the incomplete discovery claims as: (1) failing to engage in discovery designed to ensure that Tatum's financial interests in the dissolution action were adequately protected, Second Am. Compl., Second Count, at ¶ 19(b); (2) failing to file appropriate motions to ensure that Murphy fully complied with discovery, id. at ¶ 19(c); (3) concealing discovery and failing to obtain discovery that would have alerted Tatum to defendants' failure to comply with the standard of care, id. at ¶ 19(e); and (4) failing to

---

[7] Tatum contends that because "the plaintiff has not had an opportunity to cross-examine Ms. Eldrich, the defendants' summary judgment motion should be denied." Pl.'s Mem. in Opp., Doc. No. 165, at 6.  As noted above, the parties had ample opportunity to examine Attorney Eldrich under oath regarding her findings.  The fact that Tatum chose not to avail himself of the opportunity to depose Attorney Eldrich cannot support the conclusion that summary judgment is now inappropriate.

respond to Tatum's requests regarding the manner in which the case proceeded, id. at ¶ 19(f).  Attorney Eldrich characterized Tatum's "additional claims" as: (1) the defendants' failure to provide Tatum with timely and correct legal advice, id. at ¶ 19(a), and (2) the defendants' failure to properly advise Tatum as to the costs and risks associated with a motion to open judgment based on fraud, id. at ¶ 19(d).[8]

With regard to Tatum's allegations of incomplete discovery, Attorney Eldrich opined that the defendants breached the standard of care by failing to request Murphy's 2002 tax return and by failing to address "Tatum's concerns that Murphy owned real property and was otherwise hiding assets."  Eldrich Report, at 7.  Although the first two elements of a cause of action for legal malpractice were met, Attorney Eldrich found that Tatum could not prove the third element: that he had suffered an actual injury.  Id. at 7-8.  Attorney Eldrich credited the state court's finding with respect to the Motion to Reopen Judgment that were no "substantial likelihood" that the April 2004 settlement agreement would be substantially different.  Id. at 8.  Moreover, Attorney Eldrich concluded that by settling his appeal of the Ruling denying his Motion to Reopen Judgment, "Tatum effectively foreclosed any further relief he could obtain and made unquantifiable any damages that he may have sustained."  Id.  Because no damages could be quantified, "the fourth prong of the test is not satisfied."  Id.

_____

[8] In his Second Amended Complaint, Tatum voluntarily eliminated several allegations of legal malpractice.  Because Eldrich reviewed the First Amended Complaint in connection with her expert report, that report cites to the subparagraphs in the First Amended Complaint.  In this Ruling, the court converts the expert report's citations to the corresponding subparagraphs in the Second Amended Complaint.  The court likewise omits discussion of Attorney Eldrich's findings regarding allegations that were eliminated by the Second Amended Complaint.

As for Tatum's "additional claims," Attorney Eldrich found no evidence that the defendants failed to provide timely and correct legal advice, and no evidence that the defendants failed to advise Tatum as to the costs and risks associated with relying upon a motion to open a judgment based upon fraud.  Id. at 8-9.  As such, Attorney Eldrich concluded that Tatum had failed to demonstrate the second element of these malpractice claims (that the defendants failed to conform their conduct to the applicable standard of care) and that Tatum likewise failed to prove the existence of actual injury and resultant damages.

        6.    Conclusion Regarding Legal Malpractice Claim

In this case, expert testimony was necessary to establish the standard of care, to determine whether the defendants breached that standard of care, and to determine whether a breach of the standard of care proximately caused injury to Tatum in the form of an unfavorable division of assets.  The court-appointed expert, Attorney Eldrich, found that the defendants breached the standard of care by conducting inadequate and incomplete discovery, but also found that this breach did not proximately cause injury to Tatum.   Tatum has not offered expert testimony showing that Tatum's April 2004 settlement agreement with Murphy would have been more favorable to Tatum but-for the defendants' breach of the standard of professional care.  As a consequence, Tatum cannot recover the value of any part of the assets fraudulently concealed by Murphy.

However, Tatum may be entitled to recover unreimbursed attorney's fees he incurred as a result of the defendants' breach of the standard of care.  On the record before it, the court cannot discern whether Tatum was reimbursed for attorney's fees he

incurred after discovering that Murphy had concealed assets.  Attorney Eldrich's Report does not address whether any legal fees Tatum incurred after discovering the fraudulently concealed assets constituted damages that were proximately caused by the defendants' breach of the standard of care.

As discussed above, expert testimony is ordinarily required to prove that a breach of a lawyer's standard of care has actually caused injury to the plaintiff.  See Byrne, 118 Conn. App. at 451.  This requirement serves to inform the fact finder as to what would have happened in the underlying action had the defendant not been negligent.  Lee v. Harlow, Adams and Friedman, P.C., 116 Conn. App. 289, 297 (2009).  Here, it is apparent, "even to a lay person," Moore, 114 Conn. App. at 447, that Tatum would not have incurred additional attorney's fees if the defendants had properly conducted discovery to address "Tatum's concerns that Murphy owned real property and was otherwise hiding assets."  Eldrich Report, at 7.

The court concludes that Tatum is not required to present expert testimony to prove that the defendants' breach of the standard of care caused injury to Tatum in the form of unreimbursed attorney's fees subsequent to Tatum's discovery of the concealed assets.  In so holding, the court does not imply that expert testimony is never required to demonstrate that an attorney's breach of the standard of care causes injury in the form of unreimbursed attorney's fees.

Therefore, the court grants defendants' Motion for Summary Judgment as to the part of Tatum's legal malpractice claim that alleges he is entitled to damages for a portion of the assets fraudulently concealed by Murphy.  The court denies defendants'

Motion as to the part of Tatum's legal malpractice claim that alleges he is entitled to unreimbursed attorney's fees incurred as a consequence of the defendants' breach of the standard of care.

B.    Contract Claim

Tatum's remaining claim against the defendants is for breach of contract.  Tatum alleges that he entered into an enforceable contract with the defendants in which the defendants promised Tatum that if concealed assets were discovered, Tatum would recover all of the concealed assets "to the exclusion of Murphy."  Second Am. Compl., First Count, at ¶ 19(a).   Tatum alleges that he sustained economic damages as a result of the defendants' failure to recover all of the discovered assets via the Motion to Reopen.  Id. at ¶¶ 19(b), 20.

In their Motion for Summary Judgment, defendants argue that Tatum "is unable to prove that he has recoverable damages for his breach of contract claim."  Mot. for Summ. J. (Doc. No. 159) at 12.  The defendants contend that Tatum's "breach of contract claim is derivative of the legal malpractice claim in so far as it relates to the outcome of the Motion to Reopen."  Id. at 11.  That is, the defendants maintain that because the state judge ruled on the Motion to Reopen that Tatum was not entitled to the hidden assets, Tatum did not suffer damages as a result of the alleged breach of contract.  Id. at 11-12.

This court has held that earlier iterations of Tatum's breach of contract claim were legal malpractice claims, clothed in contract language.  See Ruling (Doc. No. 128) at 9-10.  However, this court granted Tatum permission to file his Second Amended

-18-

Complaint because his revised contract claim now alleges that the defendants breached an agreement to obtain a specific result: the recovery of any concealed assets.  Id. at 9-11.  This allegation no longer "amount[s] to an allegation that Oberg and FOMH were negligent in their representation of Tatum."  Id. at 10.

The measure of damages for this contract claim is not contingent on whether the defendants' breach of the standard of care proximately caused injury to Tatum.  Rather, damages are contingent on whether the defendants' breach of the terms of the contract proximately caused injury to Tatum.  Under the agreement Tatum alleges, damages are equal to the amount of money necessary to place Tatum in the same position as if the contract had been performed.  See Ambrogio v. Beaver Road Associates, 267 Conn. 148, 155 (2003).  This is the amount of money Tatum would have recovered if the defendants had not breached their promise to recover all of the concealed assets. There is no dispute that Tatum did not receive a sum of money equal to the total value of the concealed assets that were ultimately discovered.

A disputed question of fact remains as to whether a valid contract was actually formed between Tatum and the defendants.  The defendants deny Tatum's allegation that the defendants promised Tatum that he would recovery any concealed assets that were subsequently discovered.  Defs' Mot. for Summ. J., at 10.  This disputed question of fact is appropriately decided by a jury. The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  In re Dana Corp., 574 F.3d at 151. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are

jury functions, not those of a judge." Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted). "[R]esolv[ing] all ambiguities and draw[ing] all inferences in favor of" Tatum, Loeffler, 582 F.3d at 274, the court finds that a "reasonable jury could decide" that the defendants entered into an enforceable contract with Tatum, promising the recovery of any concealed assets. See Beyer, 524 F.3d at 163. The court therefore denies defendants' Motion for Summary Judgment as to Tatum's claim for breach of contract.

## VI.    CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [**Doc. No. 159**] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted as to the part of Tatum's legal malpractice claim that alleges he is entitled to damages for a portion of the assets fraudulently concealed by Murphy. The Motion is denied as to the part of Tatum's legal malpractice claim that alleges he is entitled to unreimbursed attorney's fees incurred as a consequence of the defendants' breach of the standard of care. The Motion is denied as to Tatum's contract claim.

Pursuant to the Court's Scheduling Order, the parties' Joint Trial Memorandum is due by **April 22, 2011**. See Order (Doc. No. 106).


**SO ORDERED.**

Dated at Bridgeport, Connecticut this 23rd day of March, 2011.


                                         /s/ Janet C. Hall
                                        Janet C. Hall
                                        United States District Judge


-20-